Cody Wofsy*
Spencer Amdur*
Hannah Steinberg*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

*Motion for *pro hac vice* admission
forthcoming
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

IDAHO ORGANIZATION OF
RESOURCE COUNCILS; THE ALLIANCE
OF IDAHO; A.M.R.; L.M.C.; M.S.; W.G.C.;
and J.R.B.M.,

Plaintiffs,

v.

RAÚL LABRADOR, in his official capacity as
Attorney General of the State of Idaho; JAN M.

Case No. 1:25-cv-00178

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

BENNETTS, in her official capacity as
Prosecuting Attorney of Ada County; MATT
FREDBACK, in his official capacity as
prosecuting Attorney of Blaine County; CHRIS
BOYD, in his official capacity as Prosecuting
Attorney of Canyon County; MCCORD
LARSEN, in his official capacity as Prosecuting
Attorney of Cassia County; JANNA BIRCH, in
her official capacity as Prosecuting Attorney of
Clark County; SAM BEUS, in his official
capacity as Prosecuting Attorney of Jerome
County; STANLEY MORTENSEN, in his
official capacity as Prosecuting Attorney of
Kootenai County; CHACE SLAVIN, in his
official capacity as Prosecuting Attorney of
Lemhi County; JUSTIN COLEMAN, in his
official capacity as Prosecuting Attorney of Nez
Perce County; ETHAN RAWLINGS, in his
official capacity as Prosecuting Attorney of
Oneida County; MIKE DUKE, in his official
capacity as Prosecuting Attorney of Payette
County; BEN ALLEN, in his official capacity as
Prosecuting Attorney of Shoshone County; and
GRANT P. LOEBS, in his official capacity as
Prosecuting Attorney of Twin Falls County,

       *Defendants*.

## INTRODUCTION

1.      This action challenges House Bill 83 ("H.B. 83"), to be codified at Idaho Code §§ 18-9003-18-9013, which purports to give Idaho state and local officials unprecedented power to arrest, detain, and prosecute noncitizens in the State of Idaho.  Under this novel system, the State of Idaho has created its own immigration crimes, completely outside the federal immigration system.  State and local police will arrest noncitizens for these entry ("Illegal Entry") and re-entry ("Illegal Reentry") crimes; the Attorney General and county prosecutors will bring charges in state courts; and state judges will determine guilt and impose sentences.  The federal government has no role in, and no control over, these arrests and prosecutions.

2.      H.B. 83 violates the Supremacy Clause of the United States Constitution. Immigration is a quintessentially federal authority.  Congress has created a carefully calibrated immigration system, with detailed provisions governing people's entry into the United States and their right to remain here.  And Congress placed all the relevant tools and decision-making in the hands of *federal* officials—in keeping with the federal government's exclusive immigration powers and the sensitive foreign policy implications of these powers.

3.      H.B. 83 jettisons this system, grasping control over immigration from the federal government and giving state officers the power to prosecute immigration crimes on their own.  In doing so, H.B. 83 declares the State off-limits to entire categories of immigrants, many of whom have express federal permission to be in the United States.

4.      H.B. 83's Illegal Entry provision is also void for vagueness, because immigrants will have no way to know whether they are subject to prosecution under it—in particular, who will be considered to have "enter[ed] or attempt[ed] to enter this state at any location other than a lawful port of entry or through another manner of lawful entry."  The statute never defines "manner of

lawful entry." Furthermore, there is no common law or otherwise widely accepted definition of "manner of lawful entry" from one state into another state. In fact, there is plainly no manner of lawfully (or unlawfully) entering one U.S. state from another. Accordingly, it is unclear from the face of the Illegal Entry provision whether a noncitizen who enters Idaho directly from another neighboring state (such as Washington) has violated this provision. The Illegal Entry provision thus fails to provide a person of ordinary intelligence fair notice about what specific conduct is proscribed before imposing draconian criminal penalties. This also encourages arbitrary and discriminatory enforcement of the Illegal Entry provision by, for example, state and local law enforcement agencies.

5.      In addition, H.B. 83 violates the Commerce Clause because it impermissibly regulates people's entry into Idaho, and it imposes unacceptable burdens on interstate and foreign commerce.

6.      Plaintiffs hereby file this complaint for declaratory and permanent injunctive relief. Plaintiffs will seek a temporary retraining order and a preliminary injunction to enjoin enforcement of H.B. 83 immediately.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.      Venue is proper in the District of Idaho because a substantial portion of the relevant events occurred or will occur in the District. 28 U.S.C. § 1391(b). Defendants are sued in their official capacity. Each Defendant resides within the State of Idaho.

## PARTIES

### A. Plaintiffs

9.     Plaintiff Idaho Organization of Resource Councils ("IORC") is a non-profit organization based in Boise, Idaho.

10.     IORC is a grassroots and community-based membership organization with members located across the state of Idaho and in nearby states, such as Oregon.

11.     IORC's mission is to build grassroots power through community organization, leadership development, and civic engagement, and to advocate for the health, safety, dignity, and justice of frontline communities, including immigrant communities.

12.     IORC's programs focus primarily on monitoring active and potential legislation that affects its members and communities; advocating for legislative changes; and distributing resources to affected communities, like farmworker emergency aid and life-saving resources.

13.     IORC serves seasonal workers as well as migrant workers who travel with the seasons to harvest crops.  To do so, IORC's members travel back and forth between Idaho, Washington, Oregon, and California, crossing back into Idaho multiple times per year.

14.     For instance, under its Idaho Immigrant Resource Alliance ("IIRA") program, IORC seeks to advocate specifically for its Latine and immigrant members and the communities that they come from in Idaho.  IORC developed IIRA during the pandemic because immigrants were excluded from the federal government's relief efforts to ease the hardships felt during the pandemic.  Some of the services IORC has provided under IIRA include: $500 stimulus checks to immigrants; food baskets to struggling families; and Know Your Rights training in English and in Spanish.  IIRA is central to IORC's current work and long-term strategic plan to serve immigrants throughout Idaho.

15.     IORC's members include individuals who would be subject to prosecution under H.B. 83. They will be directly affected by the disruption, uncertainty, and fear created by H.B. 83.

16.     Many of these members entered or reentered the United States unlawfully and now have a wide range of immigration statuses and histories.  These members include Plaintiffs A.M.R., L.M.C., M.S., W.G.C., and J.R.B.M.

17.     Plaintiff The Alliance of Idaho ("the Alliance") is a non-profit organization based in Hailey, Idaho.

18.     The Alliance provides low-cost immigration legal services.

19.     The Alliance's mission is to provide immigration legal services for families in Blaine County and the surrounding communities to help people obtain lawful status in the United States, as provided for under federal law.  It is the Alliance's mission to advocate alongside its immigrant neighbors, coworkers, and friends for their dignity and a prosperous future.  The Alliance's mission stems directly from its vision that immigrants are part of the national fabric, bringing energy, skills, values, and vision that benefit everyone. The Alliance therefore works to build a community that supports fairness, equity, and justice. It envisions a society where human rights are respected and everyone has the opportunity to live a dignified life.

20.     The Alliance provides a wide array of immigration legal services.  It assists individuals with applications for relief in immigration court, such as asylum, withholding of removal, and protection pursuant to the Convention Against Torture.  The Alliance also assists with applications for immigration benefits, such as Special Immigrant Juvenile Status (SIJS), U visas, VAWA self-petitions, adjustment of status, DACA, and naturalization.

21.     The Alliance has assisted individuals with many kinds of immigration matters. It has several major programs and activities to further its mission, including programs that provide legal

representation for immigrants seeking asylum and Special Immigrant Juvenile Status as well as a program that provides consultations for immigrants in the community.

22.    The Alliance's clients include individuals who would be subject to prosecution under H.B. 83, even though they are seeking various forms of legal immigration relief, such as asylum.  The statute's limited affirmative defenses neither help nor apply to the Alliance's clients. Accordingly, the Alliance's clients, who often wait years to receive the lawful immigration benefits or relief from removal for which they are eligible, will be directly affected by the disruption, uncertainty, and fear created by H.B. 83.

23.    H.B. 83 significantly hinders the Alliance's ability to fulfill its core mission by, for example: making it much more costly and time-consuming to reach clients who are detained under H.B. 83 in state facilities located at great distances from Alliance offices, making it extremely difficult to secure evidence that can make or break the client's immigration case, limiting client communication, rendering it difficult to locate detained clients, requiring the Alliance to hire additional attorneys who are familiar with state criminal law and proceedings, and requiring additional funding and staff to meet increased demand for consultations and overhaul existing programs as a result of H.B. 83.

24.    H.B. 83 will strain already scarce resources and staff capacity, make the Alliance's work more costly and difficult, require additional funding and personnel, divert resources to entirely new lines of work, and hinder client communication and services that are central to the Alliance's activities. In summary, H.B. 83 will significantly burden the Alliance's ability to fulfill its mission through its programs and activities.

25.    Individual Plaintiff A.M.R. is a 40-year-old national of Mexico who lives in Kimberly, Idaho with his wife and three minor children, all of whom are U.S. citizens.  He is a member of

IORC.  A.M.R. entered the United States without inspection in 2005.  In 2009, he signed a document agreeing to be removed from the United States.  A.M.R. entered the United State again without inspection in 2010.  He leaves Idaho at least once per year to visit his cousins in Washington, which is where he used to live.

26.    Individual Plaintiff L.M.C. is a 35-year-old national of Mexico who lives in Jerome, Idaho with his children, all of whom are U.S. citizens.  He is a member of IORC.  L.M.C. entered the United States without inspection in 2006 and has lived in the country continuously since then.  He and his children visit places like Oregon, Nevada, and Washington for vacation about once per year.

27.    Individual Plaintiff M.S. is a national of Mexico who lives in Belle, Oregon.  She has four children, all of whom are U.S. citizens.  M.S. is a member of IORC.  She initially entered the United States without inspection in March 1992 but left the country in 1998.  M.S.'s most recent entry without inspection into the United Sates was in 2000.  She has applied for relief under the Violence Against Women Act and that process is still ongoing.  She currently works in Idaho and crosses the state border from Oregon into Idaho six days per week.

28.    Individual Plaintiff W.G.C. is a 51-year-old national of Peru who lives in Burley, Idaho, and has a 2-year-old son who is a U.S. citizen.  He is a member of IORC.  W.G.C. originally entered the United States in 2010 on a H2A visa, but after 12 years, his visa was denied in 2022.  Because his partner was expecting a child, he entered the United States without inspection in May 2023 and has not left the country since that time.  W.G.C. travels to Utah regularly to visit his son and his partner, who both live there.

29.    Individual Plaintiff J.R.B.M. is a 49-year-old national of Mexico who lives in Twin Falls, Idaho with his wife and three children, all of whom are U.S. citizens.  He is a member of IORC.

J.R.B.M. initially entered the United States without inspection in 1993 and believes he voluntarily departed that same year. He entered the United Sates without inspection again in 2003. In 2005, J.R.B.M. went to immigration court in Helena, Montana, where he was ordered removed from the United States. In 2006, his removal order was executed. He reentered the United States without inspection later that year and has not left the country since that time. He travels to California about once per year to visit his immediate family and often stays there for about one month before returning to Idaho.

### B. Defendants

30.    Defendant Raul Labrador is the Attorney General of Idaho, sued in his official capacity. The Idaho Attorney General is a proper defendant in a case challenging the enforcement of an Idaho criminal statute in any county in the state. Idaho Code §§ 67-802(7), 67-1401(7); *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004); *Almerico v. Denney*, 532 F. Supp. 3d 993, 1001 (D. Idaho 2021)

31.    Defendant Jan M. Bennetts is the Ada County Prosecuting Attorney, sued in her official capacity. Defendant Bennetts is a proper defendant because she bears primary responsibility for enforcing H.B. 83 in Ada County. Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

32.    Defendant Matt Fredback is the Blaine County Prosecuting Attorney, sued in his official capacity. Defendant Fredback is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Blaine County. Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

33.    Defendant Chris Boyd is the Canyon County Prosecuting Attorney, sued in his official capacity. Defendant Boyd is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Canyon County. Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

34.    Defendant McCord Larsen is the Cassia County Prosecuting Attorney, sued in his official capacity.  Defendant Larsen is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Cassia County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

35.    Defendant Janna Birch is the Clark County Prosecuting Attorney, sued in her official capacity.  Defendant Birch is a proper defendant because she bears primary responsibility for enforcing H.B. 83 in Clark County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

36.    Defendant Sam Beus is the Jerome County Prosecuting Attorney, sued in his official capacity. Defendant Beus is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Jerome County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

37.    Defendant Stanley Mortensen is the Kootenai County Prosecuting Attorney, sued in his official capacity.  Defendant Mortensen is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Kootenai County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

38.    Defendant Chace Slavin is the Lemhi County Prosecuting Attorney, sued in his official capacity.  Defendant Slavin is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Lemhi County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

39.    Defendant Justin Coleman is the Nez Perce County Prosecuting Attorney, sued in his official capacity.  Defendant Coleman is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Nez Perce County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

40.    Defendant Ethan Rawlings is the Oneida County Prosecuting Attorney, sued in his official capacity.  Defendant Rawlings is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Oneida County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

41.    Defendant Mike Duke is the Payette County Prosecuting Attorney, sued in his official capacity.  Defendant Duke is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Payette County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

42.    Defendant Ben Allen is the Shoshone County Prosecuting Attorney, sued in his official capacity.  Defendant Allen is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Shoshone County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

43.    Defendant Grant P. Loebs is the Twin Falls County Prosecuting Attorney, sued in his official capacity. Defendant Loebs is a proper defendant because he bears primary responsibility for enforcing H.B. 83 in Twin Falls County.  Idaho Code §§ 18-8709, 31-2227(1), 31-2604(1)-(2).

## STATEMENT OF FACTS

### C.  Legal Background: Comprehensive Federal Immigration System

44.    The federal government has exclusive power over immigration. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 394-95 (2012).

45.    Congress has created a comprehensive system of federal laws regulating and enforcing immigration in the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1101 et seq.

46.    Federal immigration statutes and the associated implementing regulations and precedential administrative law decisions form an exceptionally detailed, complex, and finely reticulated regulatory regime. Congress has frequently amended the relevant provisions of the INA, including by passing particularly significant legislation in 1952, 1965, 1980, 1986, 1990, 1996, 2000, 2001, 2005, and 2008, along with dozens of other Acts modifying the immigration regime in countless ways. Immigration legislation is proposed in every single Congress and frequently forms a point of major national debate.

47.     The INA contains complex and exclusive procedures for determining immigration and citizenship status and for determining whether an individual may lawfully enter and remain in the United States, either temporarily or permanently. *See, e.g.*, 8 U.S.C. § 1229a(a)(3). Under federal law, there is no single, readily ascertainable category or characteristic that establishes whether a particular person may or may not be permitted to enter or to remain in the United States. The answer to that question can only be reached through the processes outlined in the INA and may depend on the discretionary determinations of federal officials.

48.     Many people who enter the United States between ports of entry ultimately obtain federal authorization to remain in the United States temporarily, indefinitely, or permanently.

49.     Congress has established that entry into the United States is a crime under certain circumstances. 8 U.S.C. § 1325 ("Improper Entry by Alien") provides criminal penalties for noncitizens who, inter alia, enter the United States at any time or place other than as designated by immigration officers. 8 U.S.C. § 1326 provides criminal penalties for noncitizens who reenter the United States without authorization after entry of an order of removal.

50.     Prosecution for the federal entry and reentry crimes are matters of federal discretion. Federal agents and policymakers may choose to deploy these tools—or not—for a wide range of reasons, including national priorities, migration patterns, international relationships, and humanitarian concerns.

### D.  H.B. 83

51.     The bill takes effect on March 27, 2025.

52.     H.B. 83 creates two new state law offenses challenged here: "Illegal Entry from Foreign Nation" and "Illegal Reentry by Certain Aliens." H.B. 83 §§ 18-9003, 18-9004 (to be codified at Idaho Code §§ 18-9003, 18-9004).

53.     Each of these offenses can only be committed by an "alien" as defined under 8 U.S.C. § 1101, meaning any person who is "not a citizen or national of the United States." *Id.*; H.B. 83 §§ 18-9002(1), 18-9003(1), 18-9004(1) (to be codified at Idaho Code §§ 18-9002(1), 18-9003(1), 18-9004(1)).

54.     In addition, to be prosecuted under each of these offenses, noncitizens must have been "detained or investigated for the suspected commission of an independent crime" under Title 18 or under chapter 27, Title 37 of the Idaho Code. H.B. 83 §§ 18-9003(3), 18-9004(4) (to be codified at Idaho Code §§ 18-9003(3), 18-9004(4)).

55.     A noncitizen commits a violation of Illegal Entry if he or she "enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry." H.B. 83 § 18-9003(1) (to be codified at Idaho Code § 18-9003(1)).  The statute does not define manners of lawful entry into the state.

56.     "[A]ffirmative defense[s] to prosecution" for Illegal Entry exist if: (1) the federal government has granted the noncitizen lawful presence in the United States; (2) the federal government has granted the noncitizen asylum; (3) the noncitizen's conduct does not constitute a violation of 8 U.S.C. § 1325(a); (4) the noncitizen was not investigated for, charged with, or convicted of committing an independent state crime; or (5) the noncitizen was approved for benefits under the federal Deferred Action for Childhood Arrivals ("DACA") program between June 15, 2012 and July 16, 2021.  H.B. 83 § 18-9003(4) (to be codified at Idaho Code § 18-9003(4)).  The statute does not define "lawful presence."

57.     H.B. 83 does not provide a defense for people currently seeking asylum, other humanitarian protection, or any other relief available under federal law.

58.     A first violation of Illegal Entry is a misdemeanor punishable by imprisonment in a county jail of up to 6 months or by a fine of up to $1,000, or both. H.B. 83 § 18-9003(2) (to be codified at Idaho Code § 18-9003(2)); Idaho Code § 18-113(1). A second or subsequent violation is a felony punishable by imprisonment in state prison of up to 5 years or by a fine of up to $5,000, or both. H.B. 83 § 18-9003(2) (to be codified at Idaho Code § 18-9003(2)); Idaho Code § 18-112.

59.     H.B. 83 also creates a crime of "Illegal Reentry." This provision makes it a crime if a noncitizen "enters, attempts to enter, or is at any time found in this state" after they have been "denied admission to or excluded, deported, or removed from the United States," or "ha[ve] departed the United States while an order of exclusion, deportation, or removal is outstanding." H.B. 83 § 18-9004(1) (to be codified at Idaho Code § 18-9004(1)).

60.     An "affirmative defense to prosecution" for Illegal Reentry exists only if a noncitizen was not investigated for, charged with, or convicted of committing an independent state crime. H.B. 83 § 18-9004(5) (to be codified at Idaho Code § 18-9004(5)). The law contains no exception for people who reentered the United States with federal permission.

61.     A violation of Illegal Entry is generally a misdemeanor punishable by imprisonment in a county jail of up to 6 months or by a fine of up to $1,000, or both. H.B. 83 § 18-9004(2) (to be codified at Idaho Code § 18-9004(2)); Idaho Code § 18-113(1).  A violation, however, becomes a felony when the noncitizen's removal was due to conviction of certain crimes or was under certain provisions of the INA.  H.B. 83 § 18-9004(2) (to be codified at Idaho Code § 18-9004(2)).  A felony is punishable by imprisonment in state prison of up to 5 years or by a fine of up to $5,000, or both. Idaho Code § 18-112.

14

62.     Noncitizens charged with or convicted of Illegal Entry or of Illegal Reentry are not eligible for deferred adjudication or a withheld judgment. H.B. 83 §§ 18-9003(6), 18-9004(6) (to be codified at Idaho Code §§ 18-9003(6), 18-9004(6)).

63.     A court may not abate a prosecution under Illegal Entry or Illegal Reentry on the basis that a federal determination regarding the immigration status of the noncitizen is pending or will be initiated. H.B. 83 § 18-9005 (to be codified at Idaho Code § 18-9005).

64.     H.B. 83 applies statewide.

**E. The Effect of H.B. 83 on Plaintiffs**

65.     H.B. 83 creates a new state system to regulate immigration that completely bypasses and conflicts with the federal system. It allows state officers to arrest and detain noncitizens who are convicted of the new state crimes—all without any direction, input, or involvement whatsoever from federal officials.

66.     H.B. 83 requires state officers to make determinations of federal immigration status and to incarcerate noncitizens pursuant to these determinations. The law does not make any exception for people in the process of obtaining federal immigration status.

67.     H.B. 83 will subject thousands of immigrants who enter Idaho, including asylum seekers and immigrants applying for other federal immigration benefits and status, to criminal punishment. By subjecting these categories of immigrants to criminal punishment for entering Idaho, H.B. 83 effectively bars large categories of immigrants from entering the state, even though the federal government may eventually grant them lawful status, permanent residence, and citizenship.

68.     H.B. 83's Illegal Entry provision is also unconstitutionally vague in all of its applications for at least two reasons. First, because the statute never defines the term "manner of lawful entry" and because there is no "manner of lawful entry" between states, the illegal entry crime fails to

provide "ordinary people . . . fair notice of the conduct [it] proscribes." *See Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (internal citations and quotations omitted). Second, it authorizes or even encourages "arbitrary and discriminatory law enforcement," as local and state law enforcement have no standards or guidance to determine whether the law applies to a given individual. *See id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)).

69.     The "void-for-vagueness" doctrine requires that a penal statute, like H.B. 83, "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357 (collecting cases). The Illegal Entry provision lacks any semblance of definiteness.

70.     The original version of H.B. 83's Illegal Entry provision stated that a noncitizen committed the crime of Illegal Entry if he or she "enters or attempts to enter this state directly from a foreign nation at any location other than a lawful port of entry or through another manner of lawful entry." However, during the amendment process, the phrase "directly from a foreign nation" was struck from the Illegal Entry provision.

71.     The resulting Illegal Entry provision states that a noncitizen commits the crime of Illegal Entry if he or she "enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry." H.B. 83 § 18-9003(1) (to be codified at Idaho Code § 18-9003(1)).

72.     The Illegal Entry provision, however, does not define "manner[s] of lawful entry" into the state. Nor does the provision refer to or cite any outside statutes, rules, or regulations for a definition of manners of lawful entry.

73.    On its face, the Illegal Entry provision provides no information about what unlawful entry into the state is.  The failure to define central legal terms with multiple possible meanings renders the Illegal Entry provision impermissibly vague, as there is no way for ordinary people to understand what specific conduct is prohibited.

74.    For these reasons, the Illegal Entry provision is void for vagueness because it is "unintelligible" and "nonsensical" and provides "no discernible meaning" or "standard of conduct . . . at all." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1019 (9th Cir. 2013). Put differently, the Illegal Entry provision fails to "defin[e] a 'core' of proscribed conduct that allows people to understand whether their actions will result in adverse consequences." *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000).

75.    Because the Illegal Entry provision provides no ascertainable standard of conduct, it fails to provide fair notice of what is prohibited and what conduct can trigger the statute's harsh penalties—specifically, whether entering Idaho from another state can constitute a violation of the provision. A person considering whether to enter Idaho is effectively stuck in a definitional abyss, which could determine not only criminal culpability, but also arrest and criminal detention—a far cry from fair notice.

76.    Given the lack of clarity of the Illegal Entry provision, local and state law enforcement agencies across Idaho's forty-four counties inevitably will interpret the provision's vague and incoherent phrasing differently, leading to arbitrary and discriminatory enforcement. Police or judges will be left to decide what constitutes a manner of lawful entry into Idaho from another state. *Cf. Forbes*, 236 F.3d at 1011 (a statute that "prohibits medical experimentation but provides no guidance as to . . . the line between experiment and treatment . . . gives police, prosecutors, juries, and judges no standards to focus the statute's reach.").

77.    Even in-depth expertise in immigration law and a detailed knowledge of an individual's immigration history will not suffice to ensure that Idahoans who enter the state are safe from arrests and prosecutions under the Illegal Entry provision.

## CLASS ACTION ALLEGATIONS

78.    IORC and the Individual Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and two classes of other persons similarly situated.

79.    IORC and the Individual Plaintiffs seek to represent the following two classes: (1) The Entry Class: All noncitizens who may now or in the future enter or attempt to enter the state of Idaho at any location other than a lawful port of entry or through another manner of lawful entry; and (2) The Reentry Class: All noncitizens who may enter, attempt to enter, or be found in the state of Idaho after the person has been denied admission to or excluded, deported, or removed from the United States; or has departed from the United States while an order of exclusion, deportation, or removal was outstanding.

80.    The proposed classes satisfy the requirements of Rule 23(a)(1) because each respective class is so numerous that joinder of all members is impracticable.  Hundreds if not thousands of noncitizens will be subjected to arrest, detention, and prosecution under H.B. 83 and its implementation by Defendants.  The proposed classes also include numerous future noncitizens who will enter Idaho and will be subjected to H.B. 83.

81.    The classes satisfy the commonality requirements of Rule 23(a)(2).  The members of the respective classes are subject to a common practice: arrest, detention, and prosecution under H.B. 83 contrary to the Supremacy Clause, Commerce Clause, and/or Due Process Clause.  The suit also raises questions of law common to members of the proposed classes, including whether H.B. 83 and its implementation violate the Supremacy Clause, Commerce Clause, and Due Process

Clause as the Entry Class, and whether H.B. 83 and its implementation violate the Supremacy Clause and Commerce Clause as to the Reentry Class.

82.    The proposed classes satisfy the typicality requirements of Rule 23(a)(3), because the claims of the representative Individual Plaintiffs are typical of the claims of their respective classes. Additionally, IORC represents the claims of its members, and those members' claims are typical of the claims of the classes.  Each proposed class member, including the representative Individual Plaintiffs and IORC members, will experience or face the same principal injury (arrest, detention, and prosecution), based on the same government practice (H.B. 83 and its implementation), which is unlawful as to the respective classes because it violates the Supremacy Clause, Commerce Clause, and/or Due Process Clause.

83.    The proposed classes satisfy the adequacy requirements of Rule 23(a)(4).   The representative Plaintiffs seek the same relief as the other members of their respective classes— among other things, an order declaring H.B. 83 unlawful and an injunction preventing enforcement of H.B. 83.  In defending their rights and the rights of their members, the representative Plaintiffs will defend the rights of all proposed class members in their respective classes fairly and adequately.

84.    The proposed classes are represented by experienced attorneys from the American Civil Liberties Union Foundation Immigrants' Rights Project and the American Civil Liberties Union Foundation of Idaho.  Proposed Class Counsel have extensive experience litigating class action lawsuits and other complex systemic cases in federal court on behalf of noncitizens, including cases asserting very similar claims to the claims asserted here.

85.    The proposed classes also satisfy Rule 23(b)(2).  Defendants will act on grounds generally applicable to the classes by subjecting them to arrest, detention, and prosecution under H.B. 83.

Injunctive and declaratory relief is therefore appropriate with respect to the respective classes as a whole.

## HARMS TO PLAINTIFFS

86.     The harms of H.B. 83 will be felt acutely by IORC, whose membership includes individuals who would be subject to prosecution and to imprisonment under the law.

87.     IORC member and Individual Plaintiff A.M.R. fears that if he leaves Idaho and comes back, he will be arrested under H.B. 83.  He has been pulled over by the police two or three time in the past and fears that he may be pulled over and investigated for other possible crimes.  He also worries that officers might arrest him under H.B. 83's reentry provision if they think he was previously removed from the United States. If A.M.R. is arrested and detained under H.B. 83, he fears that he will not be able to get adequate medical care because he is a survivor of cancer and has to get frequent medical care.  He also fears that he will be separated from his family and not be able to provide for them.  A.M.R.'s wife is also a cancer survivor, and she relies on him to help with her medical care and provide for their family.  He is the primary breadwinner and his family completely relies on him to provide for their financial, emotional, and other needs.

88.     IORC member and Individual Plaintiff L.M.C. fears that if he leaves Idaho and comes back, he will be arrested under H.B. 83.  He has been pulled over by the police for various traffic violations in the past and fears that he may be pulled over and investigated for other possible crimes.  If he is arrested and detained under H.B. 83, he fears that he will be separated from his children and not be able to provide for them.  Because he has full custody of two of his children, they completely rely on him to provide for their financial, emotional, and other needs.

89.     IORC member and Individual Plaintiff M.S. fears that if she travels into Idaho for work, like she does six days a week, she will be arrested under H.B. 83.  She has been pulled over by the

police for various traffic violations in the past and fears that she may be pulled over and investigated for other possible crimes.  M.S. also fears that she might be arrested under H.B. 83's reentry provision if they think she was previously removed from the United States.  She fears that she will be detained in another state away from family.

90.    IORC member and Individual Plaintiff W.G.C. fears that if he leaves Idaho and comes back, he will be arrested under H.B. 83.  He has been pulled over by the police for various traffic violations in the past and fears that he may be pulled over and investigated for other possible crimes.  W.G.C. fears that he may not be able to see or to provide for his U.S. citizen son and his partner if prosecuted under H.B. 83.

91.    IORC member and Individual Plaintiff J.R.B.M. fears that he may be arrested under H.B. 83's reentry provision because he was previously removed from the United States.  He has been pulled over by the police for various traffic violations in the past and fears that he may be pulled over and investigated for other possible crimes.  If arrested and detained under H.B. 83, J.R.B.M. fears that he will be separated from his wife and his children.  He is the primary breadwinner and his family relies on him to provide for their financial, emotional, and other needs.

92.    The Alliance will also be harmed under H.B. 83's implementation.  Its clients include individuals who would be subject to prosecution under H.B. 83, even though they are seeking various forms of legal immigration relief, such as asylum.  The statute's limited affirmative defenses neither help nor apply to the Alliance's clients. Accordingly, the Alliance's clients, who often wait years to receive the lawful immigration benefits or relief from removal for which they are eligible, will be directly affected by the disruption, uncertainty, and fear created by H.B. 83.

93.    H.B. 83 significantly hinders the Alliance's ability to fulfill its core mission by, for example: making it much more costly and time-consuming to reach clients who are detained under

H.B. 83 in state facilities located at great distances from Alliance offices, making it extremely difficult to secure evidence that can make or break the client's immigration case, limiting client communication, rendering it difficult to locate detained clients, requiring the Alliance to hire additional attorneys who are familiar with state criminal law and proceedings, and requiring additional funding and staff to meet increased demand for consultations and overhaul existing programs as a result of H.B. 83.

94.     H.B. 83 will strain already scarce resources and staff capacity, make the Alliance's work more costly and difficult, require additional funding and personnel, divert resources to entirely new lines of work, and hinder client communication and services that are central to the Alliance's activities. In summary, H.B. 83 will significantly burden the Alliance's ability to fulfill its mission through its programs and activities.

## CLAIMS FOR RELIEF

## Claim One: Preemption; Equity

95.     Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

96.     The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof, and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."

97.     Federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law.

98.     H.B. 83 violates the Supremacy Clause because it attempts to regulate matters that are exclusively reserved to the federal government and because it operates in a field over which Congress has exercised exclusive authority.

99.     H.B. 83 further violates the Supremacy Clause because it conflicts with federal laws, contradicts federal immigration decisions, imposes burdens and penalties not authorized by and contrary to federal law, creates its own immigration classifications, and directs state officers to take unilateral immigration enforcement actions.

100.    Plaintiffs may sue to obtain injunctive relief against H.B. 83 in equity.

### Claim Two: Commerce Clause; Equity; 42 U.S.C. § 1983

101.    Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

102.    The Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause not only gives Congress this power, but also bars states from interfering with Congress's regulation of interstate and foreign commerce.

103.    H.B. 83 violates the Commerce Clause because it impermissibly regulates people's entry into Idaho and their movement across state and international borders. It therefore imposes unacceptable burdens on commerce.

104.    Plaintiffs may sue to obtain injunctive relief against H.B. 83 in equity and under § 1983.

### Claim Three: Due Process Clause; Equity; 42 U.S.C. § 1983

105.    Plaintiffs repeat and reallege all paragraphs above and incorporate them by reference as though fully set forth herein.

106.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.

107.    H.B. 83's Illegal Entry provision deprives persons it subjects to its criminal provisions of due process of law, in violation of the Due Process Clause of the Fourteenth Amendment.

108.    The Illegal Entry provision is impermissibly vague and overbroad.

109.    The Illegal Entry provision is unconstitutionally vague because it fails to provide a person of ordinary intelligence fair notice of what is prohibited, and because it authorizes and encourages arbitrary and discriminatory enforcement.

110.    The Illegal Entry provision is unconstitutionally vague because its use of the phrase "enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry" is unintelligible, nonsensical, and fails to provide any discernible meaning, clear standard of conduct, or defined core of proscribed conduct.

111.    The Due Process Clause does not permit subjecting any person in the United States to criminal penalties on this vague language because it is indeterminate, internally incoherent, and amorphous.

112.    Such vague language authorizes and encourages arbitrary and discriminatory enforcement of the Illegal Entry provision by Defendants against individuals, including members of Plaintiff IORC.

113.    Under the vague, unintelligible, nonsensical, and indiscernible phrasing of the Illegal Entry provision, Idahoans, including Plaintiffs, have no way of determining what conduct is prohibited, nor how state and local law enforcement will choose to enforce the Illegal Entry provision.

114.    Plaintiffs may sue to obtain injunctive relief against the Illegal Entry provision in equity

and under § 1983.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that the Court grant the following relief:

a.  Declare that the entry and reentry provisions of H.B. 83 are unlawful;

b.  Preliminarily and permanently enjoin Defendants from enforcing the entry and
    reentry provisions of H.B. 83;

c.  Require Defendants to direct their officers, agents, and employees to cease
    enforcement of H.B. 83's entry and reentry provisions;

d.  Grant Plaintiffs' costs of suit, reasonable attorneys' fees, and other expenses pursuant
    to 28 U.S.C. § 1988; and

e.  Grant any other and further relief that this Court may deem fit and proper.

Dated: March 27, 2025                          Respectfully submitted,

                                               /s/ Paul Carlos Southwick
                                               Paul Carlos Southwick (ISB No. 12439)
Cody Wofsy*                                     Emily Myrei Croston (ISB No. 12389)
Spencer Amdur*                                  ACLU of Idaho Foundation
Hannah Steinberg*                               P.O. Box 1897
Oscar Sarabia Roman*                            Boise, ID 83701
AMERICAN CIVIL LIBERTIES                        Tel: (208) 344-9750
UNION FOUNDATION                                psouthwick@acluidaho.org
IMMIGRANTS' RIGHTS PROJECT                      ecroston@acluidaho.org
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Omar Jadwat*

Grace Choi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

*Application for admission pro hac vice
forthcoming