Cody Wofsy*
Spencer Amdur*
Hannah Steinberg*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

*Motion for *pro hac vice* admission
forthcoming
*Attorneys for Plaintiffs*

Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ORGANIZATION OF RESOURCE COUNCILS, *et al.*,<br>    *Plaintiffs*,<br><br>    v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al.*,<br>    *Defendants*. | Case No. 1:25-cv-00178<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

   A. Congress's Pervasive Regulation of Immigration............................................................ 1

   B. Idaho H.B. 83........................................................................................................... 2

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT ...................................................................................................................... 4

   I. H.B. 83 is Preempted. ............................................................................................. 4

   A. H.B. 83 Intrudes on the Exclusively Federal Field of Entry ......................................... 5

   B. H.B. 83 Conflicts with the Federal Immigration System.............................................. 9

   II. H.B. 83 Violates the Commerce Clause ................................................................... 12

   III. H.B. 83 is Unconstitutionally Vague ...................................................................... 14

   IV. Plaintiffs Will Suffer Irreparable Injury Absent an Injunction ..................................... 16

   V. The Balance of Equities and Public Interest Support an Injunction................................. 17

   VI. The Court Should Issue Relief to a Provisionally Certified Class. .................................. 18

   VII. A Statewide Injunction Is Necessary to Provide Complete Relief to Plaintiffs. .............. 18

   VIII. Bond Should Be Waived ...................................................................................... 20

CONCLUSION................................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................... 22

## INTRODUCTION

Idaho is the latest state to pass a law that attempts to wrest control of immigration from the federal government. Courts across the country have enjoined similar laws in three other states, and Idaho's law, H.B. 83, violates the Supremacy Clause and Commerce Clause for the same reasons. *See, e.g.*, *United States v. Texas*, 97 F.4th 268 (5th Cir. 2024); *United States v. Iowa*, 126 F.4th 1334 (8th Cir. 2025); *United States v. Oklahoma*, 739 F. Supp. 3d 985 (W.D. Okla. 2024). But H.B. 83 also introduces new problems because it is unconstitutionally vague. H.B. 83 criminalizes the act of entering Idaho from another state through a means other than a "manner of lawful entry," H.B. 83 § 18-9003(1), but it is universally understood that there are no means of lawfully or unlawfully entering one U.S. state from another. This Court should enjoin H.B. 83—just as every court faced with these laws has done.

## BACKGROUND

### A.  Congress's Pervasive Regulation of Immigration

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of [noncitizens]." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Congress created a pervasive system to regulate entry into and continued presence in the United States in the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. §§ 1101, 1151-1382. On the criminal side, unlawful entry and reentry into the country (as well as various related crimes) are federal offenses, with charges brought at the discretion of federal officials and prosecuted in federal court. *Id.* §§ 1321-29. On the civil side, Congress has specified categories of noncitizens who may be denied admission to the United States, including those who enter between ports of entry. *Id.* § 1182. Congress has established several alternative procedures to decide whether a person who entered without inspection will be removed, including full removal proceedings with

trial-like processes subject to administrative and judicial appeals, *id.* § 1229a, and expedited

removal proceedings, a shortened process applicable to recent border crossers, *id.* § 1225(b)(1).

Congress also enacted numerous protections that are available despite unlawful entry, including

asylum, visas for victims of crime and trafficking, cancellation of removal, and classification as a

Special Immigrant Juvenile for noncitizens under 21 years of age, all of which may lead to

permanent residency and citizenship. *Id.* §§ 1101(a)(15)(U), 1101(a)(15)(T), 1101(a)(27)(J),

1158(a)(1), 1229b(b), 1231(b)(3). Given the complexities of the immigration system, federal

discretion and control are vital. *See Arizona*, 567 U.S. at 396 ("A principal feature of the removal

system is the broad discretion exercised by immigration officials.").

### B.  Idaho H.B. 83

H.B. 83 severely intrudes on this federal system by creating two new state crimes. First, a

noncitizen violates the "Illegal Entry" provision if that person "enters or attempts to enter this

state at any location other than a lawful port of entry or through another manner of lawful entry."

H.B. 83 § 18-9003(1), 68th Leg., 1st Reg. Session (Idaho 2025) (enacted). The noncitizen must

have been "detained or investigated for the suspected commission of an independent crime"

under Title 18 or chapter 27, Title 37 of the Idaho Code. *Id.* §§ 18-9003(3), 18-9004(4). The

determination of citizenship status does not occur at the time of arrest and is made by the

custodial authority as part of the booking process. *Id.* § 18-9008(1). Affirmative defenses are

available if: (1) the federal government has granted the noncitizen lawful presence, asylum, or

benefits under the federal Deferred Action for Childhood Arrivals ("DACA") program; (2) the

noncitizen's conduct does not constitute a violation of 8 U.S.C. § 1325(a); or (3) the noncitizen

was not investigated for, charged with, or convicted of an independent state crime. *Id.* § 18-

9003(4). These affirmative defenses are not evaluated at the time of arrest or detention.

2

Moreover, there is no defense for people who are seeking asylum or any other relief under federal law. A first violation is a misdemeanor punishable by up to 6 months in county jail, a fine of up to $1,000, or both, while a subsequent violation is a felony punishable by up to 5 years in state prison, a fine of up to $50,000, or both. *Id.* § 18-9003(2); Idaho Code §§ 18-112, 18-113(1).

H.B. 83 also creates a crime for "Illegal Reentry," which a noncitizen violates if that person "enters, attempts to enter, or is at any time found in this state" after they have been "denied admission to or excluded, deported, or removed from the United States," or have "departed the United States while an order of exclusion, deportation, or removal is outstanding." H.B. 83 § 18-9004(1). The only affirmative defense is for noncitizens who were not investigated for, charged with, or convicted of committing an independent state crime. *Id.* § 18-9004(5). Unlike the federal reentry crime, there is no defense available if a noncitizen was located outside the United States and the U.S. Attorney General expressly consented to their reapplying for admission, or they were not required under the INA to obtain such advance consent. *Cf.* 8 U.S.C. § 1326(a)(2). A violation of "Illegal Reentry" is a misdemeanor punishable by up to 6 months in county jail or up to a $1,000 fine, but a violation becomes a felony—punishable by up to 5 years in state prison or a fine of up to $50,000—when the noncitizen's removal was due to a conviction of certain crimes or was under certain provisions of the INA. *Id.* § 18-9004(2); Idaho Code §§ 18-112, 18-113(1). With respect to both crimes, noncitizens are not eligible for deferred adjudication or a withheld judgment, H.B. 83 §§ 18-9003(6), 18-9004(6), and a court may not abate the prosecution on the basis that a federal determination regarding the immigration status of the noncitizen is pending or will be initiated, *id.* § 18-9005.

This suit was filed on March 27, 2025 by Individual Plaintiffs, who face arrest, detention, and prosecution under H.B. 83; Idaho Organization of Resource Councils (IORC), an

organization whose members face the same dangers; and the Alliance of Idaho, which will experience substantive harm due to H.B. 83. Ruiz Decl. ¶¶ 12-17; Lopez Decl. ¶¶ 18-34; A.M.R. Decl. ¶¶ 9-12; L.M.C. Decl. ¶¶ 9-10; M.S. Decl. ¶¶ 11-13; W.G.C. Decl. ¶¶ 7-8; J.R.B.M. Decl. ¶¶ 9-11.

## STANDARD OF REVIEW

The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction should issue where Plaintiffs can demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018). A preliminary injunction is also warranted when a plaintiff raises only "serious questions" on the merits so long as "the balance of hardships tips sharply in [plaintiffs'] favor." *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1103 n.4 (9th Cir. 2016) (citation omitted).

## ARGUMENT

### I.    H.B. 83 is Preempted.

H.B. 83 sets out to establish an Idaho-specific immigration system where state police, prosecutors, and judges will punish entry and reentry without federal control. But entry and continued presence are quintessentially federal fields that Idaho may not regulate because they are central to the federal government's exclusive immigration authority and Congress's comprehensive immigration scheme. Moreover, H.B. 83 conflicts with federal law in numerous ways, as it usurps federal discretion and control over sensitive immigration decisions and instead gives state officials unilateral control.

4

### A. H.B. 83 Intrudes on the Exclusively Federal Field of Entry

Courts may infer field preemption from a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it.'" *Arizona*, 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Here, both alternatives are satisfied.

"Policies pertaining to the *entry* of aliens and their right to remain here are entrusted exclusively to Congress." *Arizona*, 567 U.S. at 409 (quoting *Galvan v. Press,* 347 U.S. 522, 531 (1954)) (emphasis added, cleaned up). Ever since Congress began systematically regulating immigration, the Supreme Court has been crystal clear: Regulation of entry into the United States is an exclusively federal matter from which the States are excluded. *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875) ("The passage of laws which concern the admission of citizens and subjects of foreign nations to our shores belongs to Congress, and not to the States."); *Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal government."); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) ("The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States [and] the period they may remain," and "the states are granted no such powers"); *Plyler v. Doe*, 457 U.S. 202, 228 n.23 (1982) (recognizing that "the State has no direct interest in controlling entry into this country, that interest being one reserved by the Constitution to the Federal Government" and noting "the exclusive federal control of this Nation's borders").[1]

---

[1] *See also Hines v. Davidowitz*, 312 U.S. 52, 62 (1941) (noting the "continuous recognition by this Court" of "the supremacy of the national power . . . over immigration"); *De Canas v. Bica*, 424 U.S. 351, 354 (1976) ("Power to regulate immigration is unquestionably exclusively a federal power.").

That unbroken line of precedent is grounded in the principle that immigration powers are "inherent in [the] sovereignty" of the United States as a nation. *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *see also Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893); *Arizona*, 567 U.S. at 394-95. States, by contrast, are not endowed with such "powers of external sovereignty." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 316-18 (1936).[2] The Ninth Circuit has thus recognized "an overwhelmingly dominant federal interest in the field" of "entry, movement, and residence of [noncitizens] within the United States." *Valle del Sol*, 732 F.3d at 1026 (citation omitted); *see also Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1264 (11th Cir. 2012) (similar) (hereinafter "*GLAHR*"); *Texas*, 97 F.4th at 278-79 (striking down similar Texas law and explaining that "the entry, admission, and removal of noncitizens . . . is *exclusively* a federal power").

Consistent with this dominant federal interest, Congress, through the INA, has enacted a "pervasive" framework to regulate individuals' entry and presence in the United States, and particularly individuals who enter the United States without authorization—the same people H.B. 83 is attempting to regulate. *Arizona*, 567 U.S. at 399; H.B. 83 § 18-9003(1). The Ninth Circuit has accordingly recognized "[t]he comprehensive nature" of federal statutes criminalizing the transportation of noncitizens. *Valle del Sol*, 732 F.3d at 1024-26 (recognizing that "[f]ederal governance of immigration and [noncitizen] status is extensive and complex"); *see also Texas*, 97 F.4th at 286 (holding similar Texas law field preempted based on "detailed statutory scheme" governing the "unlawful entry and reentry of noncitizens," which indicates that Congress "occupies [the] entire field"); *Lozano v. City of Hazleton*, 724 F.3d 297, 315 (3d Cir. 2013) (the

---

[2] The federal government's exclusive authority derives from multiple constitutional sources, including its "power to establish a uniform Rule of Naturalization, its power to regulate Commerce with foreign Nations, and its broad authority over foreign affairs," *Toll v. Moreno*, 458 U.S. 1, 10 (1982) (cleaned up, citations omitted); *see also Hines*, 312 U.S. at 62.

INA contains a "comprehensive scheme").

"The [INA's] 'central concern' is the 'entry and stay of aliens' in the United States." *Texas*, 97 F.4th at 280 (citing *DeCanas v. Bica*, 424 U.S. 351, 359 (1976)). It contains detailed rules about who can enter the country. *See, e.g.*, 8 U.S.C. §§ 1153, 1184. For people who enter the country without authorization, the federal scheme contains a variety of enforcement mechanisms: Congress has criminalized entry and re-entry between ports of entry, as well as efforts to assist or facilitate entry between ports. *See* 8 U.S.C. §§ 1325, 1326, 1323, 1324, 1327, 1328, 1329. Congress has provided a detailed set of standards and procedures to determine when people who enter without inspection may be arrested and detained by federal officials. *See, e.g.*, *id.* §§ 1225(b), 1226(a)-(c), 1182(d)(5)(A). And Congress has frequently amended this scheme, including multiple significant amendments to the provisions most relevant here. *See United States v. Texas*, 719 F. Supp. 3d 640, 665 (W.D. Tex. 2024) (noting history of "countless statutes and treaties"). The federal entry scheme is as complex and "pervasive" as it gets, and it therefore leaves "no room for the States to supplement it." *Arizona*, 567 U.S. at 399.

The Supreme Court and the Ninth Circuit have held similar state attempts to regulate basic immigration matters to be field preempted. In *Arizona*, the Court invalidated Section 3 of Arizona's law, which criminalized failure to carry a federal noncitizen registration form, because Congress had already occupied that field, which implicated the federal government's external sovereign authority. *Id.* at 400-03. Everything *Arizona* said about noncitizen registration applies with even greater force "to the sensitive topic of noncitizens entering the country." *Texas*, 97 F.4th at 283. The federal entry scheme squarely addresses an aspect of the federal government's external sovereignty and is at least as pervasive as the alien registration laws—if not significantly more so. And, as with registration, if a state entry law "were valid, every State could give itself

independent authority to prosecute federal [entry] violations, diminishing the Federal Government's control over enforcement[,] detracting from the integrated scheme of regulation created by Congress," and allowing prosecution "even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies." *Arizona*, 567 U.S. at 402 (cleaned up); *Texas*, 97 F.4th at 292; *Valle del Sol*, 723 F.3d at 1025-26 (holding that Arizona law that prohibited, *inter alia*, transporting an undocumented person was field preempted); *see also GLAHR*, 691 F.3d at 1264 (similar); *United States v. Alabama*, 691 F.3d 1269, 1285-87 (11th Cir. 2012) (similar); *Farmworker Ass'n of Florida v. Moody*, 734 F.Supp.3d 1311, 1332 (S.D. Fla. 2024) (similar) (hereinafter "*FWAF*"). Because H.B. 83 also attempts to regulate within the field of the "entry, movement, and residence of aliens within the United States," it is likewise preempted under *Arizona* and under *Valle del Sol*.

In a preempted field like this, even state laws that have "the same aim as federal law and adopt[] its substantive standards" are invalid, because the "basic premise of field preemption" is clear: "States may not enter, *in any respect*, an area the Federal Government has reserved for itself." *Arizona*, 567 U.S. at 402 (emphasis added); *see Valle del Sol*, 732 F.3d at 1026 (holding that the State was prohibited from enacting concurrent state legislation related to the "entry, movement and residences of [noncitizens] within the United States") (citation omitted). And here, there is a "further intrusion upon the federal scheme," *Arizona*, 567 U.S. at 402-03, because H.B. 83's state entry crime imposes penalties that are more severe than those permitted under federal law. *Compare* H.B. 83 § 18-9003(2); Idaho Code § 18-112 (maximum imprisonment of 5 years) *with* 8 U.S.C. § 1325(a) (maximum imprisonment of 2 years). These mismatches with federal law "simply underscore the reason[s] for field preemption." *Arizona*, 567 U.S. at 403.

In sum, when it comes to regulating noncitizens' entry, the case for field preemption is

straightforward. "Congress established a comprehensive framework to identify *who* may enter, *how* they may enter, *where* they may enter, and *what* penalties apply for those who enter unlawfully." *Texas*, 97 F.4th at 283; *see also Valle del Sol*, 732 F.3d at 1026 (citing "comprehensive nature" of federal statutes criminalizing noncitizen conduct related to transporting and harboring). As a result of this pervasive scheme, no state has successfully set up its own state-law alternative immigration system. H.B. 83 is field preempted.

### B.  H.B. 83 Conflicts with the Federal Immigration System

In addition to field preemption, H.B. 83 is conflict preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (cleaned up). This is true for several related reasons.

*First*, H.B. 83 violates *Arizona*'s core teaching that states cannot act unilaterally to regulate immigration "without any input from the federal government." *Id.* at 408. Letting Idaho unilaterally prosecute entry and reentry violations here would allow it to "achieve its own immigration policy," *id.*—a result that *Arizona* repeatedly rejects. Section 6 of the challenged Arizona law allowed state officers to make warrantless arrests of possibly removable noncitizens. The Court held that the provision was preempted because it allowed "unilateral state action" that disregarded the "significant complexities involved in enforcing federal immigration law" and usurped the federal government's ability to exercise discretion and weigh competing humanitarian, foreign policy, and other considerations. *Id.* at 407-10. Section 3—the registration scheme discussed above—was similarly preempted because it allowed unilateral state prosecutions. *Id.* at 402. Such "independent authority to prosecute" would "diminish the federal government's control over enforcement," upend the "careful framework Congress adopted," and "frustrate federal policies." *Id.* (cleaned up). Thus, the through line of the entire *Arizona* decision

9

is that federal law does not allow "unilateral state action" in immigration enforcement. *Id.* at 410. And if unilateral *arrests* alone were enough for preemption in *Arizona*, then unilateral arrests, detention, and prosecution under H.B. 83 must be preempted as well, as many courts around the country have held. *See Texas*, 97 F.4th at 293-94 (state entry and reentry crimes preempted); *Iowa*, 126 F.4th at 1346-49 (similar); *Oklahoma*, 739 F. Supp. 3d at 997-1004 (similar).

*Second,* H.B. 83 frustrates Congress's statutory scheme by preventing federal authorities from balancing a range of interests in deciding how to process noncitizens who enter the United States. A "principal feature" of the immigration system is the "broad discretion" Congress gave to federal officials. *Arizona*, 567 U.S. at 396. Specifically, Congress has provided federal Executive Branch officials a range of tools to address noncitizens who enter without legal authorization, like criminal charges under 8 U.S.C. §§ 1325 or 1326. *See Arizona*, 567 U.S. at 395-96, 409. "By allowing state prosecution of the same activities in state court, [the State] has conferred upon its prosecutors the ability to prosecute those . . . [noncitizens] in a manner unaligned with federal immigration enforcement priorities." *Valle del Sol*, 732 F.3d at 1027. Such federal discretion is critical because it "implicates not only 'normal domestic law enforcement priorities' but also 'foreign-policy objectives,'" *United States v. Texas*, 599 U.S. 670, 679 (2023) (quoting *AADC*, 525 U.S. at 490-91), and "immediate human concerns," *Arizona*, 567 U.S. at 395-96. But H.B. 83 takes away this critical federal discretion. Whereas the "INA provides the federal government discretion to decide whether to initiate criminal proceedings or civil immigration proceedings once a noncitizen is apprehended," Idaho's scheme "blocks this exercise of discretion," leaving the federal government with "no voice" in the matter. *Texas*, 97 F.4th at 289. The law casts aside the "federal concerns [and] priorities that Congress has explicitly granted" the Executive to establish with respect to enforcement of the

10

Nation's immigration laws. *Valle del Sol*, 732 F.3d at 1027 (citation omitted).

  *Third*, there are multiple "inconsistenc[ies] between" H.B. 83's entry and reentry crimes "and federal law," *Arizona*, 567 U.S. at 402-03. Indeed, H.B. 83 "sweeps more broadly than its federal counterpart." *Valle del Sol*, 732 F.3d at 1028. As to H.B. 83's illegal entry crime, although federal law prohibits a noncitizen from entering the United States between ports of entry, 8 U.S.C. § 1325, "[o]nce inside the territory . . . it is not (and has never been) a federal crime . . . to migrate into another state." *GLAHR*, 691 F.3d at 1266. H.B. 83's illegal entry crime, however, makes it a crime to enter Idaho. H.B 83's reentry crime is also broader than 8 U.S.C. § 1326: a noncitizen is not subject to prosecution under federal law if they obtained federal "consent" to seek admission to the United States or were not required to obtain such advance consent. 8 U.S.C. § 1326(a)(2)(A)-(B). So, for example, a previously-removed noncitizen may request and obtain federal consent to return to the United States through a number of different avenues, like parole or a family- or employment-based visa. *See, e.g.*, 8 C.F.R. § 212.2. That person would be exempted from federal prosecution under § 1326(a)(2)(A), but would be subject to arrest, prosecution, and detention by Idaho. H.B. 83 thus impermissibly prohibits conduct permitted by federal law. *See Arizona*, 567 U.S. at 406 (explaining that where "Congress decided it would be inappropriate to impose criminal penalties on" certain noncitizens, a "state law to the contrary is an obstacle to the regulatory system Congress chose"); *Valle del Sol*, 732 F.3d at 1028 ("By seeking to punish conduct that Congress chose not to punish, the [state] statute clearly poses an obstacle to the accomplishment of the full purposes and objectives of Congress"); *see also GLAHR*, 691 F.3d at 1266 (similar); *Alabama*, 691 F.3d at 1288 (similar). The inconsistencies between H.B. 83 and federal law are also underscored by  H.B. 83's detention scheme, which requires a maximum sentence of 5 years—3 years longer than the maximum

sentence for the equivalent federal crime. *See* 8 U.S.C. § 1325(a). Based on these

inconsistencies, H.B. 83 is conflict preempted. *See Valle del Sol*, 732 F.3d at 1028-29.

     *Finally*, H.B. 83 overrides Congress's intent by granting state officials authority to make

decisions regarding a noncitizen's immigration status. "The federal government alone . . . has the

power to classify non-citizens." *Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726

F.3d 524, 536 (5th Cir. 2013). Given the "significant complexities involved in enforcing federal

immigration law," Congress has entrusted the process to "federal officers who have received

training." *Arizona*, 567 U.S. at 408, 409. Yet, H.B. 83 places state officials in the "impermissible

position" of enforcing state law "based on their immigration status [determinations] without

federal direction and supervision." *Farmers Branch, Tex.,* 726 F.3d at 532 (citing *Arizona*, 567

U.S. at 406-07). Indeed, under H.B. 83, state officials untrained in immigration law must decide,

*inter alia*, whether "the federal government has granted the [noncitizen] . . . [l]awful presence in

the United States." H.B. 83 § 18-9003(4)(a)(i). That term has no general meaning in immigration

law that applies to the question of whether a noncitizen should be permitted to enter or remain in

the United States. And with no federal "definition that would be applicable" in this context, H.B.

83 "open[s] the door to conflicting state and federal rulings." *Farmers Branch, Tex.*, 726 F.3d at

533, 536. H.B. 83 similarly requires state officials to make other determinations about federal

immigration law that may conflict with federal determinations. *See, e.g.*, H.B. 83 § 18-

9003(4)(b) (whether exceptions to 8 U.S.C. § 1326(a) apply); § 18-9004(1)(a)-(b) (whether

someone was "denied admission" or departed "while an order of exclusion, deportation, or

removal is outstanding"). H.B. 83 is thus clearly preempted.

## II.    H.B. 83 Violates the Commerce Clause

     The Constitution provides that Congress may "regulate Commerce with foreign Nations,

and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. The

Commerce Clause also has a dormant component that prevents a State "from retreating into

economic isolation" by passing laws that discriminate against interstate commerce. *Dep't of*

*Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (citation omitted); *see Ore. Waste Sys., Inc. v.*

*Dep't of Env't Quality of Ore.*, 511 U.S. 93, 99 (1994). "The clearest example of [such]

legislation is a law that overtly blocks the flow of interstate commerce at a State's borders." *City*

*of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978); *see also Baldwin v. G.A.F. Seelig, Inc.*,

294 U.S. 511, 521 (1935) (states cannot "set a barrier to traffic between one state and another").

The Supreme Court has thus repeatedly invalidated laws that constitute an "attempt by one State

to isolate itself from a problem common to many by erecting a barrier against the movement of

interstate trade." *City of Philadelphia*, 437 U.S. at 627-28 (collecting cases).

 "[P]recedents firmly establish[] that the federal commerce power surely encompasses the

movement in interstate commerce of *persons* as well as commodities." *United States v. Guest*,

383 U.S. 745, 758-59 (1966) (emphasis added). Thus, it is interstate commerce for a person to

travel from one state to another. *Covington & C. Bridge Co. v. Commonwealth of Kentucky*, 154

U.S. 204, 218 (1894) (explaining that "to travel in person from Cincinnati to Covington"

constitutes interstate commerce); *Hoke v. United States*, 227 U.S. 308, 320 (1913) (similar).

Recognizing that the movement of persons into and out of a state is interstate commerce,

the Supreme Court held in *Edwards v. California* that the Commerce Clause was violated where

California attempted to "fenc[e] out indigent immigrants"—that is, people seeking to move there

from out of state. *City of Philadelphia*, 437 U.S. at 627 (citing *Edwards*, 314 U.S. 160, 173-74

(1941)). There, California "assert[ed] that the huge influx of migrants into California in recent

years has resulted in problems of health, morals, and especially finance." *Edwards*, 314 U.S. at

173. California thus contended "that a State may close its borders to the interstate movement of

paupers." Respondent's Br., 1941 WL 52964, at *2 (1941). But the Supreme Court concluded

that California's statute violated the Commerce Clause's "prohibition against attempts on the

part of any single State to isolate itself from difficulties common to all of them by restraining the

transportation of persons and property across its borders." *Edwards*, 314 U.S. at 173.

So too here. H.B. 83 "overtly blocks the flow of interstate commerce at a State's

borders," *City of Philadelphia*, 437 U.S. at 624, by banning certain noncitizens from the State of

Idaho. Because H.B. 83 discriminates against interstate commerce by banning certain categories

of immigrants from entering Idaho, the law is "virtually *per se* invalid" under the Commerce

Clause. *Ore. Waste Sys., Inc.*, 511 U.S. at 99. H.B. 83 thus violates the Commerce Clause. *See*

*United States v. Texas*, 719 F. Supp. 3d at 678 (concluding that similar law violated the Dormant

Commerce Clause "because it regulates the movement of noncitizens across [a] border").

### III.    H.B. 83 is Unconstitutionally Vague

The Due Process Clause prohibits a law that is too vague to provide "ordinary people . . .

fair notice of the conduct [it] proscribes[,]"or so standardless that it authorizes or even

encourages "arbitrary and discriminatory law enforcement . . . ." *Sessions v. Dimaya*, 584 U.S.

148, 156 (2018) (cleaned up). Where a statute like H.B. 83 "imposes criminal sanctions, a more

demanding standard of scrutiny applies." *Valle del Sol*, 732 F.3d at 1019 (cleaned up). H.B. 83

violates these principles because it fails to provide ordinary citizens with notice of the conduct it

prohibits and invites arbitrary and discriminatory enforcement.

Originally, H.B. 83's Illegal Entry provision provided that a noncitizen committed that

crime where they "enter[] or attempts to enter this state directly from a foreign nation at any

location other than a lawful port of entry or through another manner of lawful entry." H.B. 83 §

14

18-9002 (1), 68th Leg., 1st Reg. Session (Idaho 2025) (unenacted). This provision was thus

focused upon entries from Canada into Idaho. However, during the amendment process, the

legislature struck the phrase "directly from a foreign nation." As a result, a noncitizen violates

H.B. 83's Illegal Entry provision if that person "enters or attempts to enter this state at any

location other than a lawful port of entry or through another manner of lawful entry." H.B. 83 §

18-9003(1) (to be codified at Idaho Code § 18-9003(1)).

No longer tied to entry from Canada, it is impossible to know which entries violate the

Illegal Entry provision. The provision does not define what constitutes a "manner of lawful

entry" into the state, nor does the provision refer to or cite any outside statutes, rules, or

regulations for a definition. This is for good reason: there is plainly no manner of lawfully (or

unlawfully) entering one U.S. state from another. There is no "reasonable and readily apparent"

construction that can save the Illegal Entry provision from unconstitutional vagueness. *Boos v.*

*Barry*, 485 U.S. 312, 330 (1988); *see Gooding v. Wilson*, 405 U.S. 518, 520-21 (1972). Rather,

the provision "sweep[s] so broadly as to render criminal a host of what might otherwise be

considered ordinary activities." *Sackett v. Env't Prot. Agency*, 143 S.Ct. 1322, 1342 (2023).

Because its key term—"manner of lawful entry" between states—has "no discernible

meaning," the Illegal Entry provision is "unintelligible" and "nonsensical" and provides no

"standard of conduct . . . at all." *Valle del Sol*, 732 F.3d at 1019-21. Without any real guideposts,

the statute fails to "defin[e] a 'core' of proscribed conduct that allows people to understand

whether their actions will result in adverse consequences." *Forbes v. Napolitano*, 236 F.3d 1009,

1011 (9th Cir. 2000). This puts a person considering whether to enter Idaho in a definitional

abyss, with no way to know if their conduct will trigger arrest, detention, and prosecution.

Given this lack of clarity, local and state law enforcement agencies across Idaho's forty-four counties inevitably will interpret the provision's vague phrasing differently, leading to arbitrary and discriminatory enforcement. Police or judges will be left to decide what is a manner of lawful entry into Idaho. *Cf. Forbes*, 236 F.3d at 1013 (statute that "prohibits medical experimentation but provides no guidance as to . . . the line between experiment and treatment . . . gives police, prosecutors, juries, and judges no standards to focus the statute's reach.").

H.B. 83's vagueness is especially intolerable given the criminal penalties it imposes: up to 6 months' imprisonment for an initial violation and up to 5 years' imprisonment for a subsequent violation. *See* H.B. 83 § 18-9003(2); Idaho Code §§ 18-112, 18-113; *Johnson*, 576 U.S. at 602 (more stringent vagueness analysis for criminal laws); *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 498-499 (1982) (same); *McDonnell v. United States*, 579 U.S. 550, 576 (2016) ("[W]e cannot construe a criminal statute on the assumption that the Government will 'use it responsibly.'") (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)). Thus, H.B. 83's illegal entry crime is unconstitutionally vague.

## IV.    Plaintiffs Will Suffer Irreparable Injury Absent an Injunction

Absent an injunction, the Individual Plaintiffs and IORC's members will suffer irreparable harm by being placed at risk of arrest, prosecution, and detention under a state statute preempted by federal law, while the Alliance will suffer irreparable injury because it will be unable to pursue its organizational mission. Ruiz Decl. ¶¶ 12-17; Lopez Decl. ¶¶ 18-34; A.M.R. Decl. ¶¶ 9-12; L.M.C. Decl. ¶¶ 9-10; M.S. Decl. ¶¶ 11-13; W.G.C. Decl. ¶¶ 7-8; J.R.B.M. Decl. ¶¶ 9-11. It is well-established that "the threat of state prosecution for crimes that conflict with federal law" and "ongoing harms to . . . organizational missions as a result of [a preempted] statute" each constitute irreparable harm for purposes of a preliminary injunction. *Valle del Sol*, 732 F.3d

16

at 1029; *see also, e.g.*, *FWAF*, 734 F. Supp. 3d at 1338; G*eorgia Latino All. for Hum. Rts. v. Deal*, 793 F. Supp. 2d 1317, 1340 (N.D. Ga. 2011); *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 878 (N.D. Tex. 2008).

## V.   The Balance of Equities and Public Interest Support an Injunction

The balance of equities tips decisively in favor of the Plaintiffs, and an injunction is strongly in the public interest. When the Defendants are governmental actors, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In contrast to the real and severe harms faced by Plaintiffs, "it is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol*, 732 F.3d at 1029; *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990) (states faced no injury from injunction of preempted regulation); *Colo. Motor Carriers Ass'n v. Town of Vail*, No. 23-CV-2752, 2023 WL 8702074, at *11 (D. Colo. Dec. 15, 2023) ("the Town does not have a strong interest in enforcing a law that is reasonably likely to be found constitutionally infirm" under preemption principles).

The public interest also clearly favors an injunction. States' "[f]rustration of federal statutes and prerogatives [is] not in the public interest." *Alabama*, 691 F.3d at 1301; *Texas*, 719 F. Supp 3d. at 699 (Texas cannot assert "a legitimate [public] interest in enforcing an unconstitutional law."); *Iowa*, 126 F.4th at 1353 (similar); *Oklahoma*, 739 F. Supp. 3d at 1006 (similar) (citation omitted). That is particularly so where state action invades federal domains. *See, e.g.*, *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013). Additionally, H.B. 83 will erode the public trust that law enforcement has worked to create with migrant communities and that is integral to public safety. *See Texas*, 719 F. Supp 3d. at 698 (concluding that, by making noncitizens susceptible to arrest, similar illegal entry law

would make "noncitizen crime victims less likely to report violent crimes"); *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 270 (S.D.N.Y. 2020) (enjoining public charge rule due to its chilling effect on immigrants seeking services).

## VI.    The Court Should Issue Relief to a Provisionally Certified Class.

Plaintiffs, who have concurrently filed a motion for class certification establishing their compliance with the requirements of Rule 23, reincorporate those arguments here and request the Court issue provisional class certification. *See* Pls.' Mem. ISO Mot. for Class Certification, Dkt. 3-1. Provisional class certification depends on and is in service of the associated preliminary relief; the provisional class is tailored to the relief sought and its certification expires alongside the relief. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time."). The Court should grant provisional class certification and extend preliminary relief in this case to all members of the provisional class, as is common in these circumstances. *See Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012), (courts in the Ninth Circuit "routinely grant provisional class certification for purposes of entering injunctive relief"), *aff'd*, 501 F. App'x 713 (9th Cir. 2012); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 n.4 (9th Cir. 2020)(approving class certification for purposes of entering injunctive relief); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-43 (9th Cir. 2012) (no abuse of discretion in granting provisional class certification).

## VII.    A Statewide Injunction Is Necessary to Provide Complete Relief to Plaintiffs.

Even if the Court does not grant provisional class certification, a statewide injunction should be issued as it is "necessary to provide complete relief to the plaintiffs." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (internal quotation marks omitted); *see*

*also Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (relief extends no further than "necessary to redress the plaintiff's injuries") (Gorsuch, J., concurring) (cleaned up).

The Ninth Circuit held that a statewide injunction is required to provide complete relief where individuals and a membership organization challenged a statewide policy, multiple law enforcement agencies implemented that policy, and a limited injunction would have required officers to determine plaintiff status or membership on the fly during fast-moving interactions like traffic stops. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996). That is exactly the case here. Plaintiff IORC has dozens of members across the state facing enforcement from dozens of local law enforcement agencies. Ruiz Decl. ¶¶10-17; *cf. Labrador v. Poe*, 144 S. Ct. at 921 (Gorsuch, J., concurring) (involving only two minor children and their parents). As in *Easyriders*, a limited injunction would require officers to evaluate plaintiff status and membership in *every* roadside stop. Police, prosecutors, and likely this Court would have to resolve disputes about membership, proof of membership, arrest guidelines, and countless other issues. And because there will be situations where an officer does not understand the injunction or IORC's membership practices, or where members cannot instantly prove membership, a limited injunction would inevitably result in erroneous arrest and detention of members, preventing complete relief. Moreover, because the Individual Plaintiffs are proceeding pseudonymously and dozens of law enforcement agencies will be enforcing this law, it would be impossible to craft a limited injunction that would allow them to obtain relief without compromising their anonymity. *See Koe v. Noggle*, 688 F. Supp. 3d 1321, 1362 (N.D. Ga. 2023) (granting statewide relief for this reason). Nor would it be possible to craft a limited injunction that provides complete relief to the Alliance, which has clients who will be subject to prosecution under H.B. 83 and will need to undertake new consultations with hundreds of community

members now subject to prosecution. Lopez Decl. ¶¶ 19, 26, 31.[3] Because it is not possible to provide complete relief to Plaintiffs without a statewide injunction, statewide relief is justified.

In addition, the need for statewide relief is strong in immigration preemption cases. Statewide relief advances the purpose of preemption—to protect Congress's prerogatives and ensure "uniformity in immigration policy." *See E. Bay Sanctuary Covenant*, 993 F.3d at 681 (in immigration preemption cases, the Ninth Circuit has "consistently recognize[d] the authority of district courts to enjoin unlawful policies on a universal basis"); *Valle del Sol Inc.*, 732 F.3d 1006, 1029 (affirming statewide injunction). Thus, the Court should issue statewide relief.

## VIII.    Bond Should Be Waived

Plaintiffs seek an injunction of unconstitutional conduct by a governmental entity. Because there is no risk of monetary harm to Defendants if they are eventually found to be wrongfully enjoined, Rule 65(c) bond is neither appropriate nor necessary and should be waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

## CONCLUSION

For the foregoing reasons, the Court should issue a temporary restraining order to a provisionally certified class and set a hearing to consider the motion for a preliminary injunction.

Dated: March 27, 2025                    Respectfully submitted,

                                          */s/ Paul Carlos Southwick*
                                          Paul Carlos Southwick (ISB No. 12439)

---

[3] A court in this district recently denied statewide relief where one hospital sued and suggested that it would not have capacity to accept transfers from other hospitals and that administrability issues would arise because doctors would have to follow different rules at different hospitals. *St. Luke's Health Sys., Ltd. v. Labrador*, No. 1:25-cv-00015-BLW, ECF No. 49, at 57-58 (D. Idaho Mar. 20, 2025). The court concluded that the additional strain on the hospital's resources and administrability issues were "small and indirect harms." *Id.* at 57. By contrast, here, the Plaintiffs—including the putative class and organization's members—would face direct harms without statewide relief, including police stops, detentions, and immigration consequences.

Cody Wofsy*
Spencer Amdur*
Hannah Steinberg*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
cwofsy@aclu.org
samdur@aclu.org
hsteinberg@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

*Application for admission pro hac vice
forthcoming

## CERTIFICATE OF SERVICE

I CERTIFY that on March 27, 2025, I served a copy of the foregoing documents by mail and by electronic mail and initiated same-day in person service to the following persons:

Raul Labrador, Attorney General of Idaho
700 W. Jefferson Street
Boise, ID 83720-0010
james.craig@ag.idaho.gov

Jan M. Bennetts, Ada County Prosecuting
Attorney
200 W. Front St, Rm 3191
Boise, ID 83702
Adacountyprosecutor@adacounty.id.gov

Matt Fredback, Blaine County Prosecuting
Attorney
219 1st Ave. South, Suite 201
Hailey, ID 83333
mfredback@co.blaine.id.us

Chris Boyd, Canyon County Prosecuting
Attorney
1115 Albany St.
Caldwell, ID 83605
ccpareception@canyoncounty.id.gov

McCord Larsen, Cassia County Prosecuting
Attorney
1459 Overland Ave 3rd Floor
Burley, ID 83318
mlarsen@cassia.gov

Janna Birch, Clark County Prosecuting
Attorney
477 Shoup Ave, Suite 109
Idaho falls, ID 83402
JBirch@co.clark.id.us

Sam Beus, Jerome County Prosecuting
Attorney
233 W. Main
Jerome, ID 83338
pros@co.jerome.id.us

Stanley Mortensen, Kootenai County
Prosecuting Attorney
501 Government Way
Coeur d'Alene, ID 83814
smortensen@kcgov.us
kcpareports@kcgov.us

Chace Slavin, Lemhi County Prosecuting
Attorney
200 Fulton Street, Suite 104
Salmon, ID 83467
Efile.lemhipros@lemhicountyidaho.org

Justin Coleman, Nez Perce County
Prosecuting Attorney
1113 F. Street
Lewiston, ID 83501
justincoleman@co.nezperce.id.us

Ethan Rawlings, Oneida County Prosecuting
Attorney
30 North 100 W
Malad City, ID 83252
swhite@oneidaid.us

Mike Duke, Payette County Prosecuting
Attorney
1115 1st Ave. N.
Payette, ID 83661
prosecutingattorney@payettecounty.org

Ben Allen, Shoshone County Prosecuting
Attorney
700 Bank Street, Suite 200
Wallace, ID 83873
prosecutor@co.shoshone.id.us

Grant P. Loebs, Twin Falls County
Prosecuting Attorney
425 Shoshone St. N., Third Floor
Twin Falls, ID 83301
Inbox.pros@tfco.org

//

22

Dated: March 27, 2025                    Respectfully submitted,

                                         */s/ Paul Carlos Southwick*
                                         Paul Carlos Southwick (ISB No. 12439)
                                         ACLU of Idaho Foundation