UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ORGANIZATION OF RESOURCE COUNCILS; THE ALLIANCE OF IDAHO; A.M.R.; M.S.; W.G.C.; J.R.B.M.; and L.M.C., <br><br> Plaintiffs, <br><br> v. <br><br> RAUL LABRADOR, in his official capacity as Attorney General of the State of Idaho; JAN BENNETTS, in her official capacity as Prosecuting Attorney of Ada County; BLAINE COUNTY PA MATT FREDBACK, in his official capacity as Prosecuting Attorney of Blaine County; CHRIS BOYD, in his official capacity as Prosecuting Attorney of Canyon County; McCORD LARSEN, in his official capacity as Prosecuting Attorney of Cassia County; CLARK COUNTY PA JANNA BIRCH, in her official capacity as Prosecuting Attorney of Clark County; SAMUEL SPENCER BEUS, in his official capacity as Prosecuting Attorney of Jerome County; KOOTENAI COUNTY PA STANLEY MORTENSEN, in his official capacity as Prosecuting Attorney of Kootenai County; CHACE SLAVIN, in his official capacity as Prosecuting Attorney of Lemhi County; JUSTIN COLEMAN, in his official capacity as Prosecuting Attorney of Nez Perce County; ETHAN RAWLINGS, in his official capacity as Prosecuting Attorney of Oneida County; MIKE DUKE, in his official capacity as Prosecuting Attorney of Payette County; BENJAMIN ALLEN, in his official capacity as Prosecuting Attorney of Shoshone County; and GRANT LOEBS, in his official capacity as Prosecuting Attorney of Twin Falls County, <br><br> Defendants. | Case No. 1:25-cv-00178-AKB <br><br> **EX PARTE TEMPORARY RESTRAINING ORDER** |

**EX PARTE TEMPORARY RESTRAINING ORDER - 1**

Pending before the Court is Plaintiffs' Motion for Temporary Restraining Order, Provisional Class Certification, and Preliminary Injunction. (Dkt. 3). Plaintiffs ask the Court to enjoin Defendants, who include the Attorney General of the State of Idaho and the elected prosecuting attorneys for every county in Idaho, from enforcing Idaho's Immigration Cooperation and Enforcement Act (the "Idaho ICE Act" or "the Act"), Idaho Code §§ 18-9001 – 18-9013. Because oral argument would not significantly aid the Court's decision-making process, the Court decides the motion based on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

The Court finds Plaintiffs' complaint and supporting declarations establish the requisite basis for entry of a temporary restraining order ("TRO") preserving the status quo until the Court can hold a preliminary injunction hearing. (Dkts. 3, 3-2 through 3-8). The declarations clearly show immediate and irreparable injury will result before Defendants can be heard in opposition, and Plaintiffs' attorney has certified in writing his efforts to give notice. *See* Fed. R. Civ. P. 65(b)(1)(A), (B). Although Plaintiffs have not specifically requested an ex parte TRO, the constraints of the Court's schedule preclude it from delaying a ruling to allow Defendants to respond. Accordingly, the Court enters the TRO ex parte. *See* Fed. R. Civ. P. 65(b)(1) (providing "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorneys").

## BACKGROUND

The Idaho Legislature enacted the Idaho ICE Act, effective today, March 27, 2025, which creates two new state law offenses: "illegal entry from foreign nation" and "illegal reentry by certain aliens." I.C. §§ 18-9003, 18-9004. The Act's statement of purpose states that the legislation "fulfills Idaho's commitment to support the Trump administration in the identification, detainment, and deportation of dangerous illegal aliens founds in Idaho." Statement of Purpose RS32052/H0083. The Act applies to

EX PARTE TEMPORARY RESTRAINING ORDER - 2

"aliens" as defined by 8 U.S.C. § 1101, which provides an alien is any person who is "not a citizen or national of the United States." I.C. § 18-9002(1).

A noncitizen commits a violation of illegal entry "if the person enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry." I.C. § 18-9003(1). The first offense is a misdemeanor and the second offense is a felony. I.C. § 18-9003(2). Law enforcement may enforce a violation of illegal entry "only when a person is detained or investigated for suspected commission of an independent crime under title 18, Idaho Code." I.C. § 18-9003(3).

A noncitizen commits a violation of illegal reentry "if the person enters, attempts to enter, or is at any time found in this state after the person: (a) [h]as been denied admission to or excluded, deported, or removed from the United States; or (b) [h]as departed from the United States while an order of exclusion, deportation, or removal is outstanding." I.C. § 18-9004(1). Like the offense of illegal entry, law enforcement may enforce a violation of illegal reentry "only when a person is detained or investigated for suspected commission of an independent crime under title 18, Idaho Code." I.C. § 18-9004(4).

Plaintiffs filed a Class Action Complaint for Declaratory and Injunctive Relief against Defendants (Dkt. 1). Immediately upon the Idaho ICE Act becoming effective, Plaintiffs filed a motion seeking a TRO, provisional class certification, and a preliminary injunction. (Dkt. 3). Plaintiffs include five noncitizens who allegedly travel back and forth between Idaho and other states; the Idaho Organization of Resource Councils (IORC), an organization whose members include noncitizen, seasonal migrant workers that travel between Idaho and other states; and The Alliance of Idaho ("Alliance"), an organization which provides low-cost immediate legal services, including to clients which it alleges would be subject to prosecution under the Idaho ICE Act. Plaintiffs allege, among other things, that the Act is unconstitutional because it violates the Supremacy Clause, the Commerce Clause, and the Due Process Clause.

**EX PARTE TEMPORARY RESTRAINING ORDER - 3**

## ANALYSIS

### A. Legal Standard

Under Rule 65 of the Federal Rules of Civil Procedure, a party may obtain injunctive relief before final judgment in certain limited circumstances. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); Fed. R. Civ. P. 65. Both are extraordinary remedies that should be awarded only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. 7, 22 (2008). A key difference between a TRO and a preliminary injunction is a TRO's duration. A TRO typically does not last for more than fourteen (14) days without good cause, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n.1 (D. Or. 2018). Thus, the consideration required by a TRO determination is not meant to replace the "thorough consideration contemplated by full proceedings pursuant to a preliminary injunction." *Oby v. Clear Recon Corp.*, 2016 WL 3019455, at *1 (E.D. Cal. May 26, 2016).

For either, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. 7; *Leitter v. Armstrong*, No. 1:10-CV-361-BLW, 2010 WL 3735674, at *2 (D. Idaho Sept. 15, 2010) *citing Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). When the government is a party, the factors regarding public interest and equities merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The movant must carry her burden "by a clear showing." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

The Court may apply a "sliding scale" standard, "allowing a stronger showing of one element to offset a weaker showing of another." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (2011)). Under this approach, an injunction is proper where "serious questions going to the merits" and a hardship balance "tips sharply toward the plaintiff can support issuance of an injunction." *Alliance for the Rockies*, 632 F.3d at 1132; *see also N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024). *Id.* A "serious question" is one that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024).

A preliminary injunction can take two forms. The first, a "prohibitory" injunction, logically "prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotation marks and citation omitted). In contrast, a "mandatory" injunction, "goes well beyond simply maintaining the status quo [ ] and is particularly disfavored" because it "orders a responsible party to take action." *Marlyn Nutraceuticals*, 571 F.3d at 879. The relevant "status quo" for purposes of an injunction "refers to the legally relevant relationship *between the parties* before the controversy arose." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (emphasis in original); *see also Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 514 (9th Cir. 1984) (for purposes of injunctive relief, the status quo means "the last uncontested status which preceded the pending controversy") (cleaned up).[1]

---

[1] *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) ("The status quo to be preserved by a preliminary injunction [] is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the last uncontested status between the parties which preceded the controversy.") (cleaned up); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (cleaned up).

**EX PARTE TEMPORARY RESTRAINING ORDER - 5**

Finally, the Court recognizes "a Plaintiff's ability to demonstrate a likelihood of success on the merits, or serious question going to the merits, is the most important element of a preliminary injunction." *Roe by & through Roe v. Critchfield*, 2023 WL 5146182, at *4 (D. Idaho Aug. 10, 2023) (cleaned up). "This showing, however, is only *preliminary* because the parties have typically not engaged in any discovery by the time a preliminary injunction motion is filed. A TRO that precedes a PI, such as this, is even more removed from the merits and substance of the case." *Id.* In other words, a TRO request asks the Court "to make a pre-preliminary call on the prospects of Plaintiffs' claims." *Id.*

### B. Likelihood of Success on the Merits

Plaintiffs[2] allege the Act "violates the Supremacy Clause because it attempts to regulate matters that are exclusively reserved to the federal government and because it operates in a field over which Congress has exercised exclusive authority." (Dkt. 1 at ¶ 98). The Court concludes Plaintiffs are likely to succeed on the merits of this claim.

The Supreme Court has previously held that "the Government of the United States has broad, undoubted power over the subject of immigration and the status of [noncitizens]." *Arizona v. United States*, 567 U.S. 387, 394 (2012). Consistent with this power, Congress enacted the Immigration and Nationality Act (INA), 8 U.S.C. § 1101, *et seq.*, which provides a comprehensive framework regulating the entry, presence, and removal of noncitizens. *Patel v. Garland*, 596 U.S. 328, 331 (2022) ("Congress has comprehensively detailed the rules by which noncitizens may enter and live in the United States. When noncitizens violate those rules, Congress has provided procedures for their removal."); *DeCanas v. Bica*, 424 U.S. 351, 353 (1976) (noting INA is "comprehensive federal statutory scheme for regulation of immigration"). "States are precluded from regulating conduct in a field that Congress, acting within

---

[2] As an initial matter, Plaintiffs allege and appear to have standing to assert their challenges to the Idaho ICE Act.

**EX PARTE TEMPORARY RESTRAINING ORDER - 6**

its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399.

Idaho is not the first state to enact legislation for purposes of devising its own immigration enforcement scheme. Previously, Iowa, Oklahoma, and Texas have enacted such laws which criminalize the presence of noncitizens within their state boundaries and which are very similar to the Idaho ICE Act. *See United States v. Iowa*, 126 F.4th 1334, 1340-41 (8th Cir. 2025) (addressing Iowa Senate File 2340 which criminalizes presence within its boundaries of noncitizens who illegally reentered United States); *United States v. Texas*, 97 F.4th 268 (5th Cir. 2024) (addressing Texas Senate Bill 4 establishing offenses of illegal entry and illegal reentry identical to offenses in Idaho ICE Act); *United States v. Oklahoma*, 739 F. Supp. 3d 985 (W.D. Okla. 2024) (addressing Oklahoma House Bill 4156 imposing state criminal penalties on noncitizens who enter Oklahoma without authorization to enter United States).

In each of these cases, the presiding courts concluded federal law likely preempts the states' efforts to criminalize unauthorized entry of noncitizens into the state. For example, the Fifth Circuit noted that "for nearly 150 years, the Supreme Court has held that the power to control immigration—the entry, admission, and removal of noncitizens—is *exclusively* a federal power." *Texas*, 97 F.4th at 278-79. Addressing offenses identical to the Act's illegal entry and illegal reentry offenses, the Fifth Circuit concluded that "Texas [was] likely to succeed on the merits of the preemption issue." *Id.* at 279; *see also Iowa*, 126 F.4th at 1352 ("The United States has clearly shown that its facial challenge is likely to succeed on the merits because every application of the Act stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."); *Oklahoma*, 739 F. Supp. 3d at 999 ("[T]here is 'strong support for the conclusion that Congress has legislated comprehensively in the field of noncitizen entry and reentry that it left no room for supplementary state legislation.").

**EX PARTE TEMPORARY RESTRAINING ORDER - 7**

Based on the analyses and legal authorities cited in these decisions and on Plaintiffs' submissions in support of their motion, the Court concludes there is a strong likelihood they will prevail on the merits of their claim that federal law preempts the Idaho ICE Act. Because the Court reaches this conclusion, it does not address the likelihood of success of Plaintiffs' other claims.

### C. Irreparable Harm

Plaintiffs argue that "absent an injunction, the [noncitizen] Plaintiffs and IORC's members will suffer irreparable harm by being placed at risk of arrest, prosecution, and detention under a state statute preempted by federal law, while the Alliance will suffer irreparable injury because it will be unable to pursue its organizational mission." (Dkt. 3-1 at p. 16). Based on a review of the noncitizens' declarations submitted in support of Plaintiffs' motion, the Court agrees they will suffer irreparable harm if Idaho law enforcement were to begin enforcing the Idaho ICE Act. Each attests that he or she regularly travels between Idaho and other states, including some on a very frequent basis, and that they are subject to being stopped by Idaho law enforcement for traffic violations. (Dkts. 3-4 at ¶¶ 8-9; 3-5 at ¶¶ 8-9; 3-6 at ¶¶ 10-11; 3-7 at ¶¶ 6-7; 3-8 at ¶¶ 8-9).

### D. Balance of Equities and Public Interest

Plaintiffs argue that the balance of equities and public interest favor injunctive relief. The Court agrees. The State will not suffer any likely injury from a temporary delay in the enforcement of the Idaho ICE Act. As noted above, the federal government has controlled immigration enforcement for almost 150 years and a federal immigration enforcement scheme is already in place and being enforced. This fact eliminates any emergent need to commence enforcing a state immigration law which is likely unconstitutional.

Based on the foregoing, the Court concludes Plaintiffs have established the requirements for a TRO under Rule 65. That TRO will remain in effect for **fourteen (14)** days until the Court holds a

preliminary injunction hearing. That hearing will occur on **April 10, 2025, at 10:00 a.m.** All other issues are deferred until the Court rules on Plaintiffs' motion for a preliminary injunction.

**IT IS HEREBY ORDERED:**

1. The Court **GRANTS**, in part, Plaintiffs' Motion for Temporary Restraining Order, Provisional Class Certification, and Preliminary Injunction. (Dkt. 3). Specifically, the Court enters a TRO preserving the status quo by prohibiting Defendants and their officers, agents, employees, attorneys, and any person who are in active concert or participation with them from enforcing the Idaho ICE Act, including §§ 18-9003 and 18-9004. This TRO shall last **fourteen (14)** days.

DATED: March 27, 2025

*Amanda K. Brailsford*
**Amanda K. Brailsford**
U.S. District Court Judge