Raúl R. Labrador
Attorney General

James E. M. Craig, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

Brian V. Church, ISB #9391
Lead Deputy Attorney General
Gader Wren, ISB #12108
Deputy Attorney General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

IDAHO ORGANIZATION OF RE-
SOURCE COUNCILS; THE ALLI-
ANCE OF IDAHO; A.M.R.; L.M.C;
M.S.; W.G.C.; and J.R.B.M.,

*Plaintiffs*,

v.

RAÚL LABRADOR, in his official capac-
ity as Attorney General of the State of
Idaho, *et al.*,

*Defendants*.

Case No. 1:25-cv-00178-AKB

**MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION TO
DISMISS UNDER RULE 12(b)(1)
AND 12(b)(6)**

## INTRODUCTION

Plaintiffs include five individuals who admit they have illegally entered or reentered the United States and are continuing to commit a federal crime by remaining in the country. Yet they have asked the Court to use its equitable powers to help them remain in the country in defiance of federal immigration law by enjoining an Idaho statute criminalizing the same conduct as the federal law they have violated. These Plaintiffs have no right to be in Idaho or to enlist the Court's assistance in helping them avoid detection. They do not come to the Court with clean hands, and neither do the two organizations seeking to help them continue to avoid the appropriate immigration consequences.

But the Plaintiffs' suit has other problems too, each of which independently justifies dismissal. On standing, the facts contained in the Complaint do not allege that the Individual Plaintiffs have even violated the provisions they challenge, or that they hope to engage in any conduct affected with a constitutional interest—as required for a pre-enforcement challenge. The organizational plaintiffs also lack standing—one organization asserts standing on behalf of its members without naming any member who has been harmed, and the other is a law firm arguing that it has somehow been injured by the law changing in a way that would bring it more clients. And as explained at the preliminary injunction hearing, the Plaintiffs still lack a cognizable legal theory for any of their claims.

The Court should dismiss Plaintiffs' Complaint under Rule 12(b)(1) or 12(b)(6).

## BACKGROUND

The Idaho Legislature enacted the ICE Act, which is designed to benefit Idaho citizens by curbing the negative effects of illegal immigration. Mindful of federal immigration law and

related case law, the ICE Act "mirror[s] federal objectives and incorporate[s] federal immigra-tion classifications." *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017).

Hours after the passage of the ICE Act, Plaintiffs filed suit seeking to enjoin the Act. Plaintiffs are five individuals who are admittedly illegal aliens ("Individual Plaintiffs") and two organizations, the Alliance of Idaho (the "Alliance") and the Idaho Organization of Resource Councils ("IORC"). Plaintiffs named as defendants Attorney General Raúl Labrador and pros-ecuting attorneys from 13 counties ("Defendants").

The same day Plaintiffs filed this lawsuit, the Court issued a TRO enjoining Defendants from enforcing the entirety of the ICE Act. Dkt. 16. On April 10, 2025, the Court heard oral arguments on Plaintiffs' motion for preliminary injunction. At that hearing, the Plaintiffs clar-ified that they challenge only two provisions of the ICE Act: Idaho Code § 18-9003 (the "En-try Provision") and § 18-9004 (the "Reentry Provision"). After the hearing, the Court extended the TRO, enjoining only the challenged provisions. The Court further indicated that an order related to Plaintiffs' preliminary injunction motion was forthcoming. Dkt. 43.

## LEGAL STANDARD

Under Rule 12(b)(1), Courts must ensure that they have jurisdiction. *Davis v. Fed. Elec-tion Comm'n*, 554 U.S. 724, 732 (2008). When a plaintiff lacks standing, the court lacks jurisdic-tion. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998).

Under Rule 12(b)(6), a court may dismiss a complaint "based on the lack of a cogniza-ble legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). In addition, a court may dismiss a com-plaint under Rule 12(b)(6) based on an affirmative defense where "on the face of the

complaint" the affirmative defense is an "obvious bar to securing relief." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

### ARGUMENT

### I. Plaintiffs Lack Standing Because They Cannot Demonstrate an Injury-in-Fact Fairly Traceable to Defendants' Conduct.

To establish standing, a party "must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

For a pre-enforcement challenge, the Supreme Court has set out an additional three-prong test to show that an injury is likely. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014); *see also Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). This test requires the plaintiff to allege that: (1) he intends "to engage in a course of conduct arguably affected with a constitutional interest"; (2) the intended future conduct is "arguably proscribed by the challenged statute"; and (3) "the threat of future enforcement is substantial." *Peace Ranch*, 93 F.4th at 487 (cleaned up). The *Driehaus* test incorporates the considerations set forth in *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). *See Peace Ranch*, 93 F.4th at 487. Under *Thomas*, courts should consider "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." 220 F.3d at 1139.

**A. Individual Plaintiffs Lack Standing to Challenge the Entry Provision Because They Have Not Alleged Facts Demonstrating They are Subject to Prosecution.**

Individual Plaintiffs appear to allege that they will be subject to prosecution under the Entry Provision by virtue of their illegal immigration status. Dkt. 1. But they have not alleged facts showing that they fall within the statute's ambit, and therefore fail to allege an injury.

Under the Entry Provision "[a] person who is an alien commits an offense if the person enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry." Idaho Code § 18-9003(1). That entry must also violate 8 U.S.C. § 1325(a), which does not penalize movement from one state to another. Idaho Code § 18-9003(4)(b). Thus, according to the plain text of the statute, this provision applies only in two circumstances: (1) when an alien crosses the Canadian border into the state of Idaho and does not do so at a port of entry or through another lawful manner, and (2) when an alien enters the state of Idaho by aircraft directly from a foreign country and does not enter through a port of entry or through another lawful manner.[1]

Here, none of Individual Plaintiffs have alleged that they have entered Idaho at the Canadian border or directly from a foreign country by aircraft. *See* Dkt. 1 at ¶¶ 25–29. Rather, Individual Plaintiffs have alleged only that they are foreign nationals who entered the United States without inspection—the Complaint is entirely silent on their method or location of entry. *Id.* Individual Plaintiffs therefore have not met their "burden of alleging specific facts

---

[1] This reading is confirmed by the very title of the Entry Provision: "ILLEGAL ENTRY FROM FOREIGN NATION." *See Nelson v. Evans*, 166 Idaho 815, 821, 464 P.3d 301, 307 (2020) (noting under Idaho law that courts interpreting a statute can look to its title if text is unclear); *see also Planned Parenthood of Idaho, Inc. v. Wasden,* 376 F.3d 908, 925 (9th Cir. 2004) (state principles of statutory interpretation apply) (citation omitted).

sufficient to" establish standing, and the Court should dismiss the challenge to the Entry Provision. *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 821 (9th Cir. 2002).

**B.    Four Individual Plaintiffs Lack Standing to Challenge the Reentry Provision Because They have not Illegally Reentered the United States.**

Under the Reentry Provision, an alien is guilty of illegal reentry if he has reentered or attempted to reenter the state of Idaho after he "[h]as been denied admission to or excluded, deported, or removed from the United States; or [h]as departed from the United States while an order of exclusion, deportation, or removal is outstanding." Idaho Code §§ 18-9004(a)–(b). But four of the five Individual Plaintiffs—A.M.R., L.M.C., M.S., and W.G.C.—have not alleged that they were denied admission to, excluded or deported from the United States, or that they left the United States while orders of exclusion, deportation, or removal were outstanding against them. Dkt. 1 at ¶¶ 25-28. Accordingly, those Plaintiffs have not alleged facts sufficient for this Court to find standing to challenge the Reentry Provision either.

**C.    Individual Plaintiffs Cannot Satisfy the Three-Prong *Driehaus* Test in Their Claims Against Both Challenged Provisions.**

***1.    No constitutional interest is implicated by Individual Plaintiffs' course of conduct.***

In the Complaint, Individual Plaintiffs never assert an intent to engage in a course of conduct arguably affected with a constitutional interest. Nor could they—there is nothing constitutional about their desire to remain in the country illegally.

Plaintiffs have previously argued that "federalism principles" or the Supremacy Clause are constitutional interests affected by their intended course of conduct. *See* Dkt. 40 at 2. But these are not interests that Plaintiffs can invoke for standing—they have nothing to do with the conduct that Individual Plaintiffs intend to engage in.

To be sure, a *state* could rely on such interests. States have broad constitutional author-ity to exercise powers not delegated to the federal government, including, for example, the power to tax. U.S. CONST. amend. X. So in *Kentucky v. Yellen*—previously cited by Plaintiffs as authorizing standing to raise a pre-enforcement challenge based on "federalism principles"—when Kentucky and Tennessee sued the federal Treasury Secretary arguing that a federal law prohibiting states from enacting tax cuts was unconstitutional, the Sixth Circuit held that the states' desire to enact tax cuts showed that they "intended to engage in a course of conduct arguably affected with a constitutional interest" based on "federalism principles." 54 F.4th 325, 328, 336 (6th Cir. 2022). That is because "states have a powerful sovereign prerogative under federalism principles to control their own internal taxation policies." *Id.* at 336. The same is not true here—Individual Plaintiffs have no powerful sovereign prerogative because they are not sovereigns.

Like "federalism principles," it is not enough for non-sovereigns' course of conduct to implicate the Supremacy Clause. It is well-settled that "the Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (citation omitted). And "[u]nder [*Driehaus*], the statute at issue must ostensibly prohibit the exercise of a specific constitutional right." *Splonskowski v. White*, 714 F. Supp. 3d 1099, 1104 (D.N.D. 2024) (citing 573 U.S. at 159). Thus, the Supremacy Clause cannot serve as the basis for meeting the first *Driehaus* prong either.

Defendants recognize that a judge from this district rejected this understanding of *Driehaus*, erroneously finding that challenging a state law under the Supremacy Clause is enough for "standing purposes," even if the interaction between state and federal law has

nothing to do with the plaintiff's conduct. *St. Luke's Health Sys., Ltd. v. Labrador*, No. 1:25-cv-00015-BLW, 2025 WL 888840, at *5 (D. Idaho Mar. 20, 2025) (Winmill, J.). As support, the court cited, but misinterpreted *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013).

      In *Valle del Sol*, a pastor sued Arizona asking the court to enjoin a statute that criminalized the transportation and harboring of illegal aliens. 732 F.3d at 1012. In her complaint, the pastor "importantly" asserted that she "provides shelter to persons who seek sanctuary in her church." *Id.* at 1015. The court then held, without reference to the Supremacy Clause, that the pastor had standing to challenge the law in a pre-enforcement context. *Id.* (citing *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979)) ("[I]t is not necessary that [the plaintiff] first expose himself to actual arrest or a prosecution to be entitled to challenge [the] statute that he claims deters the exercise of *his constitutional rights*.") (emphasis added). And while the court did not specifically state which constitutional right was at play, the clear import, given the court's emphasis on the pastor's assertion related to providing sanctuary at her church, is that the pastor intended to engage in a course of conduct arguably related to her free exercise rights under the First Amendment. *See id.* Accordingly, *Valle del Sol* does not stand for the proposition that the Supremacy Clause can serve as a basis for satisfying the first *Driehaus* prong.

      This understanding of *Valle del Sol* is reinforced by at least two Supreme Court cases. *First*, in *Driehaus*, when the Court announced its three-prong pre-enforcement standing test, it cited several cases illustrating when a challenger's course of conduct was arguably affected with a constitutional interest. *Driehaus*, 573 U.S. 149, 158–60. In those cases, the challenger demonstrated that his or her intended course of conduct affected individual constitutional rights, not that the Constitution was implicated by the challenged state law's relationship with

federal law. *Id.*; *Steffel v. Thompson*, 415 U.S. 452, 455 (1974) (First and Fourteenth Amendment rights); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 309 (1979) (First Amendment rights); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 388 (1988) (First Amendment rights); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 8 (2010) (First and Fifth Amendment rights).

*Second*, in *All. for Hippocratic Med.*, the Supreme Court clarified that "[a] citizen may not sue based only on an asserted right to have the Government act in accordance with law." 602 U.S. at 381 (cleaned up). And while *All. for Hippocratic Med.* was not a pre-enforcement challenge, its directive that citizens may not sue to force the government to act in accordance with the law sounds in general standing principles—namely that the plaintiffs must have suffered or must imminently suffer an injury. *See, e.g., Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

Taken together, these cases make clear that if a plaintiff does not plan to engage in a course of conduct arguably affected by a constitutional interest—meaning a constitutional right—then that plaintiff cannot meet the *Driehaus* requirements. Moreover, a plaintiff cannot bring a pre-enforcement challenge when a state law might be preempted, or, to put it differently, to force the state to "act in accordance with law." *Id.*

### 2. Plaintiffs have not shown an intent to engage in conduct arguably proscribed by the challenged statute or—relatedly—a credible threat of enforcement.

Under both the Entry and the Reentry Provisions, law enforcement officers do not have authority to enforce the Act unless a person "is detained or investigated for suspected commission of an independent crime under title 18, Idaho Code, excluding this chapter, or

under chapter 27, title 37, Idaho Code." Idaho Code § 18-9004(4); § 18-9003(3). Title 18 covers a multitude of independent crimes, and Chapter 27 of title 37 is the Uniform Controlled Substances Act.

In their Complaint, Plaintiffs have not asserted that they are imminently likely to be investigated or detained for suspected commission of a crime under title 18 or title 37. *See* Dkt. 1 at ¶¶ 25-29. Rather, Plaintiffs merely identify County Prosecutors and speculate that someday these Prosecutors might bring charges against them under the challenged provisions. But no County Prosecutor can bring charges or even threaten to enforce the statutes against the Plaintiffs because there are no facts alleged in the Complaint that any of the Plaintiffs have been or will be subjected to investigation or detention for an independent crime.

Absent some specific allegation of independent criminal activity, it is inappropriate for courts to engage in "speculation and conjecture" or "anticipate whether and when" one will be "charged with a crime." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). Rather, courts must "assume that respondents will conduct their activities within the law." *Id.* Plaintiffs' speculation that they might at some point be investigated is just that—speculation, and that is not sufficient for standing purposes.

That means there is no present threat that the law will be enforced against the Plaintiffs based on the conduct they have alleged they will engage in, which does not include any independent illegal activity. Nor have there otherwise been "specific warning[s] or threat[s] to initiate proceedings"—Plaintiffs have not alleged that any of the Defendants has done anything at all, let alone anything that would give rise to a threat to enforce the ICE Act. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quoting *Thomas*, 220 F.3d at 1139). There is only

"the mere existence of a proscriptive statute," which is not enough to satisfy the third *Driehaus* prong. *Id.*

### D.  IORC Lacks Associational Standing.

For associational standing, an organization must show that (1) one or more of its members qualify for Article III standing; (2) the interests at stake in the case "are germane to the organization's purpose"; and (3) the organization's claim and relief requested do not require the individual members to participate in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). To meet the first prong, an organization must assert "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

Here, IORC cannot invoke associational standing because it has not identified a single member (by pseudonym or otherwise) who has been injured by the ICE Act or is likely to be injured. Dkt. 1 at ¶¶ 15, 16. IORC generically asserts that its members "would be subject to prosecution under H.B. 83," but never names any such member. Dkt. 1 at ¶¶ 15, 16. IORC may believe it is enough that there is a *chance* one of its members will be affected, but the Supreme Court has been clear that the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Summers*, 555 U.S. at 498–99.

### E.  The Alliance Lacks Organizational Standing.

"Organizations may have standing to sue on their own behalf for injuries they have sustained." *All. for Hippocratic Med.*, 602 U.S. at 393. "In doing so, however, organizations must

satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 393–94. "Like an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." *Id.* at 394 (cleaned up). Nor would a "setback to the organization's abstract social interests" be enough to establish organizational standing. *Id.*

In support of its motion for preliminary injunction, the Alliance argued that it was harmed by having to divert resources as a result of H.B. 83. *See* Dkt. 3-1 at 16–17; Dkt. 40 at 5–7; *see also* Dkt. 1 ¶¶ 23–24. But the Supreme Court has clarified, it is not enough for "an organization [to] divert[] its resources in response to a defendant's actions," for that would allow an organization to "spend its way into standing." *All. for Hippocratic Med.*, 602 U.S. at 394.[2]

The Alliance has also argued that it has standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)—as that case was explained by *All. for Hippocratic Med.*—because H.B. 83 "impaired their ability to provide services and achieve their organizational mission." 602 U.S. at 393–96. In *Havens*, an organization engaged in housing counseling and referral services had standing to sue an apartment owner that had given false information about apartment availability to impede black renters from seeking occupancy. 602 U.S. at 395. The organization had been injured because the false information had "directly affected and interfered with [its] core

---

[2] The Ninth Circuit reiterated that point in *Arizona All. for Retired Americans v. Mayes*, explaining that *All. for Hippocratic Med.* overruled the "frustration-of-mission and diversion-of-resource [standing] theories." 117 F.4th 1165, 1177 (9th Cir. 2024). And while the Ninth Circuit has granted *en banc* reconsideration in that case and vacated the opinion, *see* 130 F.4th 1177 (9th Cir. 2025), the analysis contained in the panel opinion remains persuasive.

business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* The Court cautioned that *Havens* was an "unusual case" that the Court has been "careful not to extend . . . beyond its context." *Id.*

Here, however, there has been no interference with Alliance's core business activities. Alliance is a law firm that provides legal advice and representation to non-citizen clients, including those at risk of legal consequences for violating immigration law. Dkt. 1, at ¶¶ 20–22. The Entry and Reentry Provisions do not regulate Alliance's relationship with its clients; rather, it is a simple exercise of a state's police power to define crimes, which Alliance can inform its clients about. But that's not an interference with Alliance's core business activity. The situation is not like a retailer receiving "defective goods"—it's like a retailer receiving functioning goods and then complaining that it has to sell them. *All. for Hippocratic Medicine*, 605 U.S. at 395. If Alliance is injured by the law changing in a way that provides it more opportunities for work, then news outlets, publishers of legal reporters, and law professors could sue any time the law changes. There is no reason to "extend" *Havens* to this "context." *Id.* at 396; *see Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (not an organizational injury for staff attorney to perform ordinary job duty of answering a phone call).

Moreover, even if the Alliance could show that it had sustained an injury, it cannot show that its injury is caused by the challenged provisions or by any action of the Defendants, or that its requested relief will redress its claimed injury. Any increased expenses associated with more clients are based upon Alliance's independent decisions as to which clients it chooses to represent. None of the Defendants are able to make those decisions for the Alliance, and the challenged law does not govern which clients the Alliance may or may not accept.

Nothing in the challenged provisions "force[s] [the Alliance] to choose between suffering an injury and diverting resources to counteract the injury." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 n.4 (9th Cir. 2010).

### F.  Most of the County Prosecutors Lack Any Connection to Plaintiffs.

Plaintiffs named 13 County Prosecutors as Defendants: the elected prosecutors in the counties of Ada, Blaine, Canyon, Cassia, Clark, Jerome, Kootenai, Lemhi, Nez Perce, Oneida, Payette, Shoshone, and Twin Falls.[3] Yet Plaintiffs have not pleaded facts to show how at least 10 of these 13 County Prosecutors might cause Plaintiffs' injuries, or how relief ordered against at least 10 of the 13 Defendant County Prosecutors would redress those injuries.

Under the traditional standing test, the second element demands that "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). The third element demands that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up). These two requirements are "flip sides of the same coin." *All. for Hippocratic Med.*, 602 U.S. at 380 (cleaned up).

Individual Plaintiffs are residents of Twin Falls County (A.M.R and J.R.B.M.), Jerome County (L.M.C.), Cassia County (W.G.C.), and the State of Oregon (M.S.). There is no substantial threat of enforcement from the Twin Falls, Jerome, and Cassia Prosecutors, as detailed

---

[3] Prosecuting Attorneys are independent constitutional officers, provided for in Article V, section 18 of the Idaho Constitution. They are elected by voters in their respective counties. Their primary duties are to independently oversee prosecution of crimes committed within the boundaries of their respective counties and to provide legal services to county elected officials officers, and departments. *See* Idaho Code § 31-2604.

above, which certainly undercuts any argument of causation. *See Peace Ranch*, 93 F.4th at 490. But even more problematic: none of the Individual Plaintiffs allege facts that tie them to any of the other counties for which they have named Prosecutors. *See* Dkt. 1 ¶¶ 25–29.

Consider, for example, Kootenai, Nez Perce, and Shoshone counties in North Idaho. None of the Plaintiffs allege facts demonstrating any reason why Defendants in these northern counties—several hundred miles away from Plaintiffs—would cause Plaintiffs' alleged injuries. Nor are there facts showing how an order running against the Kootenai, Nez Perce, and Shoshone County Prosecutors could redress any alleged injury. The same goes for Prosecutors in East Idaho, in Clark County, Lemhi County, and Oneida County.

None of this differs for Central Idaho County Prosecutors in Ada, Blaine, Canyon, and Payette either. Although IORC says it is based in Ada, Dkt. 1 ¶ 9, it as an organization would not be prosecuted under the Idaho ICE Act, and there are no facts alleged tying the Ada County Prosecutor to persons IORC says are its members or to any of the Individual Plaintiffs. The same is true of the Alliance, who says it is based in Blaine County, Dkt. 1 ¶ 17.

It is almost as if Plaintiffs randomly threw 13 darts at a map of Idaho and then chose to sue the County Prosecutors in the counties on which the darts landed. That does not establish standing. The Plaintiffs have failed to allege facts under the traceability and redressability prongs of standing as to the Ada, Blaine, Canyon, Clark, Kootenai, Lemhi, Nez Perce, Oneida, Payette, and Shoshone County Prosecutors, and all 10 should be dismissed from this case.

## II. The Unclean Hands Doctrine Precludes Plaintiffs from Obtaining Equitable Relief Relating to Their Illegal Conduct.

Plaintiffs seek only equitable relief from this Court, but their complaint on its face shows why they are not entitled to such relief. The unclean hands doctrine "closes the doors

of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). A party need not have acted unlawfully, rather, the party need only have committed a "willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct." *Id.* at 815. The doctrine "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).

   *National Coalition of Latino Clergy, Inc. v. Henry* serves as an instructive model for this case. No. 07-CV-613-JHP, 2007 WL 4390650, at *1 (N.D. Okla. Dec. 12, 2007). There, Oklahoma similarly enacted a law intended "to combat the perceived illegal immigration problems faced by the state." The law made "certain instances of transporting, concealing, harboring or sheltering an illegal alien" a crime. *Id.* Organizations and illegal aliens challenged the constitutionality of the law, but the Court applied the unclean hands doctrine to bar the illegal aliens' claims. *Id.* at *9. The court noted that the illegal aliens "admit[ted] their violation of federal law," asked the court to "file suit anonymously, so as to avoid detection by the federal law enforcement agencies," and made "no attempt to validate their unlawful presence in this country." *Id.* The court correctly observed that the illegal alien plaintiffs sought no more than to use the court "as a vehicle for their continued unlawful presence in this country," and "[t]o allow these Plaintiffs to do so would make this Court an 'abetter of iniquity.'" *Id.* (quoting *Precision Instr. Mfg. Co.*, 324 U.S. at 814).

   Here, even if Individual Plaintiffs could demonstrate standing, their claims should be

barred by the unclean hands doctrine. Like the illegal alien plaintiffs in *Nat'l Coal. of Latino Clergy*, Individual Plaintiffs admit to violating federal immigration law, admit that they are in current violation of federal immigration law, request to proceed anonymously so as to hide their identity from law enforcement, and previously asked this Court to bar enforcement of the provisions providing for the sharing of information with the DHS.[4] Yet they are seeking to use this Court "as a vehicle for their continued unlawful presence in this country." *Id.* "[T]he proper remedy for the injuries alleged by [the Individual Plaintiffs]—all of whom are in willing violation of federal immigration law—is not judicial intervention, rather, it is simple compliance with federal immigration law." *Id.* at *8. The Court should not permit such inequity and should bar Plaintiffs from obtaining equitable relief.

Similarly, because the IORC's and the Alliance's claims depend upon the claims of their members and clients who are in violation of federal immigration law, the unclean hands doctrine extends to them too.

## III. Plaintiffs' Claims Fail Because They Lack a Cognizable Legal Theory.

Defendants have fully briefed in their opposition to Plaintiffs' motion for a preliminary injunction why Plaintiffs' legal theories are deficient as a matter of law. *See* Dkt. 36 at 11–17. They incorporate those arguments here, summarizing and clarifying them as follows.

### A. The Challenged Provisions are not Preempted by Federal Law.

Plaintiffs first claim that the challenged provisions are preempted, both as a matter of

---

[4] As noted in the background section of this brief, Plaintiffs originally asked this Court to temporarily enjoin the entire ICE Act, which the Court did. But this was error, given that Plaintiffs only targeted the challenged provisions, as they conceded at the preliminary injunction hearing, and the Court so limited its extended TRO following the argument.

field preemption and conflict preemption. Both arguments fail.

**Field preemption.** Field preemption occurs when Congress takes exclusive control over a particular issue. *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1113–14 (9th Cir. 2022). The Supreme Court and the Ninth Circuit have only held that two sub-fields of immigration are field preempted: "alien registration," *Arizona v. United States*, 567 U.S. 387, 401 (2012), and alien harboring, *Valle del Sol Inc.*, 732 F.3d at 1026. That means the remainder of immigration is not field preempted. *See Arizona Dream Act Coal.*, 855 F.3d at 972. Neither of the challenged provisions regulate alien registration or harboring, so they are not field preempted.

**Conflict preemption.** Conflict preemption exists only where it is "impossib[le]" to comply with both state and federal law, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (cleaned up). Specific to immigration, there is no conflict preemption where "state regulations . . . mirror federal objectives and incorporate federal immigration classifications." *Arizona Dream Act Coal.*, 855 F.3d at 972 (citing *Plyler v. Doe*, 457 U.S. 202, 225–26 (1982)).

The challenged provisions do not stand as an obstacle to federal objectives; rather, they mirror and reinforce federal objectives by criminalizing the same conduct federal law already proscribes.[5] Plenty of state criminal laws work similarly, like state RICO laws, but those laws are not preempted. *Compare* 18 U.S.C. §§ 1961-1968, *with* Idaho Code § 18-7803; *cf. Merchants*

---

[5] Unlike other challenged laws, the ICE Act does not authorize its judges to order the removal of an alien or require the alien to depart Idaho. *See United States v. Iowa*, 126 F.4th 1334, 1340–41 (8th Cir. 2025), *United States v. Texas*, 97 F.4th 268, 294 (5th Cir. 2024), *United States v. Oklahoma*, 739 F. Supp. 3d 985, 994–95 (W.D. Okla. 2024).

*Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1492 (9th Cir. 1995) ("state and federal laws proscribing identical conduct do not conflict with or displace each other").

Plaintiffs attempt to gin up conflict by arguing that the Entry Provision does not recognize a defense for aliens who are seeking (but not yet been granted) "asylum, other humanitarian protection, or any other relief available under federal law," and the Reentry Provision does not provide a defense for aliens "who return to the United States with federal permission." Dkt. 1 at ¶¶ 57, 60. These limited circumstances provide no basis for a preemption challenge to the entirety of the ICE Act. *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (facial vagueness challenge standard). Further, asylum and relief from removal do not provide a defense to *past* crimes, but only govern whether an alien is allowed to remain in the United States on a forward looking basis. As mentioned above, Idaho's law does not allow an Idaho judge to order an alien to be removed from the U.S. or to leave Idaho. But in any event, Idaho Code § 18-9013(2) specifically directs that "[t]he provisions of this chapter shall be construed and implemented in a manner consistent with federal laws and regulations and interpretive case law governing immigration and civil rights." Put differently, where federal law creates an affirmative defense or exception to the crimes of entry or reentry, those defenses and exceptions apply to the challenged provisions.

## B.  The Challenged Provisions do not Implicate the Dormant Commerce Clause.

Plaintiffs' second challenge raises the dormant Commerce Clause. "[T]he dormant Commerce Clause's fundamental objective [is] preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997). The provision therefore prevents

laws that afford "differential treatment [to] in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338–39 (2007) (citations omitted).

Unlike the challenged provision in *Edwards v. California*, 314 U.S. 160, 165-66 (1941), which was a protectionist statute that treated non-California residents different than California residents, the challenged provisions in the instant case have nothing to do with the economic protectionism that the dormant Commerce Clause seeks to prohibit. They do not differentiate between those living in Idaho and those who don't, and there is no preferential treatment for Idaho residents. In fact, the challenged provisions have nothing to do with economic activity *at all*—they're about unlawful immigration. States are free to exercise their police powers despite potential consequences for foreign affairs, *Medellin v. Texas*, 552 U.S. 491, 497–98 (2008), and regulating the presence of unlawful individuals "is not a regulation of commerce," but an exercise of "police [powers] . . . which rightfully belonged to the states." *Mayor of New York v. Miln*, 36 U.S. 102, 132 (1837).

Besides, even if the challenged provisions did regulate economic activities, they "appl[y] only to the movement-*cum*-commerce that Congress has affirmatively prohibited." *United States v. Texas*, 97 F.4th 268, 332 (5th Cir. 2024) (Oldham, J., dissenting). The dormant Commerce Clause is predicated on the idea that the federal government should regulate interstate commerce, and not states, so "there is no basis for concluding that the dormant Foreign Commerce Clause applies to commerce that violates federal law." *Id.*

### C.  Plaintiffs Cannot Meet Their Burden on the Facial Vagueness Claim.

Plaintiffs' facial vagueness claim fails on the merits as well. "Outside the First

Amendment context, a plaintiff alleging facial vagueness must show that the enactment is impermissibly vague in all its applications." *Valle del Sol*, 732 F.3d at 1020 (citation omitted). "[A] statute is only facially void for vagueness if it is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Id.* (cleaned up).

Plaintiffs challenge the Entry Provision's definition of the offense of illegal entry from a foreign nation, which provides that "[a] person who is an alien commits an offense if the person enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry." Idaho Code § 18-9003(1). Port of entry is defined. Idaho Code § 18-9002(9). And "through another manner of lawful entry" simply refers to another manner of lawful entry recognized by federal law. *See, e.g.,* 8 C.F.R. § 235.1(g) (describing lawful entry at a place "other than at a port-of-entry."); *see also* Idaho Code § 18-9003(4). An alien who enters Idaho from Canada via a lawful port of entry does not commit the offense of illegal entry from a foreign nation. An alien who walks into Idaho from Canada, but does not enter via "a lawful port of entry or through another manner of lawful entry," does commit the offense of illegal entry from a foreign nation. These clear examples show why the vagueness claim fails.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

DATED: April 17, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *James E. M. Craig*
JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense

*Attorney for Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on April 17, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Cody Wofsy*<br>cwofsy@aclu.com | Spencer Amdur*<br>samdur@aclu.org |
| Paul Carlos Southwick<br>psouthwick@acluidaho.org | Hannah Steinberg*<br>hsteinberg@aclu.org |
| Emily Myrei Croston<br>ecroston@acluidaho.org | Oscar Sarabia Roman*<br>osarabia@aclu.org |
| Grace Choi*<br>gchoi@aclu.org | Omar Jadwat*<br>ojadwat@aclu.org |
| *Attorneys for Plaintiffs* | *\* pro hac vice* |

/s/ *James E. M. Craig*
JAMES E. M. CRAIG