RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

BRIAN V. CHURCH, ISB #9391
Lead Deputy Attorney General
GADER WREN, ISB #12108
Deputy Attorney General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Certain Defendants¹*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ORGANIZATION OF RE-SOURCE COUNCILS; THE ALLI-ANCE OF IDAHO; A.M.R.; L.M.C; M.S.; W.G.C.; and J.R.B.M., <br><br> *Plaintiffs*, <br><br> v. <br><br> RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00178-AKB <br><br> **MEMORANDUM IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT UNDER RULE 12(b)(1) AND 12(b)(6) [DKT. 47]** |

---

¹ A listing of represented Defendants appears on the signature page to this brief.

## INTRODUCTION

The Court should dismiss Plaintiffs' Amended Complaint because it still fails to grant the Court jurisdiction and fails to state a claim as a matter of law, even considering the reasoning of the Court's recent preliminary injunction decision. Plaintiffs include five individuals who admit they have illegally entered or reentered the United States and are in continuing violation of federal immigration law by remaining in the country. Yet they have asked the Court to use its equitable powers to help them remain in the country in defiance of federal law by enjoining an Idaho statute criminalizing the same conduct prohibited by federal law. These Plaintiffs have no right to be in Idaho or to enlist the Court's assistance in helping them avoid detection. They do not come to the Court with clean hands, and neither do the two organizations seeking to help them continue to avoid the appropriate immigration consequences.

Prior to the Court's recent preliminary injunction decision, the Attorney General and the original 13 County Prosecutor Defendants ("Defendants" for this motion) had moved to dismiss Plaintiffs' initial complaint. *See* Dkt. 44. Rather than oppose that motion, Plaintiffs—as they were permitted to do—filed their Amended Complaint, Dkt. 47, mooting the Defendants' original Motion to Dismiss. *See, e.g., Heit v. Livingston*, No. 2:23-cv-00507-BLW, 2024 WL 1329903, at *1 (D. Idaho Mar. 28, 2024). The Amended Complaint simply adds more defendants who, like Defendants here, have done nothing to threaten Plaintiffs with enforcement of the ICE Act. The Amended Complaint does not address the factual or legal deficiencies raised by Defendants' original motion to dismiss. But rather than repeat the arguments raised in their prior motion to dismiss brief, Defendants incorporate the prior brief's arguments, and will focus in this brief on the Court's reasoning in the preliminary injunction decision, clarifying

the Defendants' prior arguments where necessary. After considering these arguments, the Court should dismiss the Amended Complaint under Rule 12(b)(1) and Rule 12(b)(6).

## BACKGROUND

The Idaho Legislature enacted the ICE Act, which is designed to benefit Idaho citizens by curbing the negative effects of illegal immigration. Mindful of federal immigration law and related case law, the ICE Act "mirror[s] federal objectives and incorporate[s] federal immigration classifications." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017). Plaintiffs have made clear that they challenge only two provisions of the ICE Act: Idaho Code § 18-9003 (the "Entry Provision") and § 18-9004 (the "Reentry Provision").

Plaintiffs are five individuals who are admittedly illegal aliens ("Individual Plaintiffs") and two organizations, the Alliance of Idaho (the "Alliance") and the Idaho Organization of Resource Councils ("IORC"). Plaintiffs initially named as defendants Attorney General Labrador and 13 County Prosecutors, the Defendants here. After first granting a TRO, Dkt. 16, the Court entered a preliminary injunction enjoining the challenged provisions. Dkt. 84.

After Defendants filed a motion to dismiss, Dkt. 44, Plaintiffs filed their Amended Complaint, naming as defendants the remaining 31 County Prosecutors.[2] Beyond this, the Amended Complaint adds allegations regarding the number of aliens illegally present in Idaho, Dkt. 47-1 at 16–17; adds allegations regarding a non-party sheriff, *id.* at 17; and asks that the relief entered extend to others in active concert with the 45 defendants, *id.* at 27.

---

[2] This brief is only filed by Attorney General Labrador and the original 13 County Prosecutors.

## LEGAL STANDARD

Under Rule 12(b)(1), courts must ensure that they have jurisdiction. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008). When a plaintiff lacks standing, the court lacks jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998).

Under Rule 12(b)(6), a court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). Dismissal under Rule 12(b)(6) is appropriate where "on the face of the complaint" an affirmative defense is an "obvious bar to securing relief." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

## ARGUMENT

### I. Plaintiffs Lack Standing Because They Cannot Demonstrate an Injury-in-Fact Fairly Traceable to Defendants' Conduct.

To establish standing, a party must show an injury in fact, caused by the defendant, that would be redressed by the Court. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

For a pre-enforcement challenge, the Supreme Court has set out an additional three-prong test to show that an injury is likely. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014); *see also Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). This test requires the plaintiff to allege that: (1) he intends "to engage in a course of conduct arguably affected with a constitutional interest"; (2) the intended future conduct is "arguably proscribed by the challenged statute"; and (3) "the threat of future enforcement is substantial." *Peace Ranch*, 93

F.4th at 487 (cleaned up). The *Driehaus* test incorporates the considerations set forth in *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (*en banc*). *See Peace Ranch*, 93 F.4th at 487. Under *Thomas*, courts should consider "[1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." 220 F.3d at 1139.

### A. Individual Plaintiffs Lack Standing to Challenge the Entry Provision Because They Have Not Alleged Facts Demonstrating They are Subject to Prosecution.

Individual Plaintiffs appear to allege that they will be subject to prosecution under the Entry Provision by virtue of their illegal immigration status. Dkt. 47. But they have not alleged facts showing that they fall within the statute's ambit, and therefore fail to allege an injury.

Under the Entry Provision "[a] person who is an alien commits an offense if the person enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry." Idaho Code § 18-9003(1). The Entry Provision, however, recognizes an affirmative defense where the alien's conduct "does not constitute a violation of 8 U.S.C. 1325(a)." Idaho Code § 18-9003(4)(b). Under the cited provision, 8 U.S.C. § 1325(a), movement from one state to another is not illegal. Thus, under the plain text of the statute and construing the statute as a whole, and giving due regard to the title of the crime: illegal entry from a foreign nation, this provision applies only in two circumstances: (1) when an alien crosses the Canadian border into the state of Idaho and does not do so at a port of entry or through another lawful manner, and (2) when an alien enters the state of Idaho by

aircraft directly from a foreign country and does not enter through a port of entry or through another lawful manner.[3]

The Court in its preliminary injunction decision expressed that Defendants were simply trying to avoid an absurd result with this interpretation, suggesting that the Entry provision barred an alien "even one who is legally in the United States" from "entering Idaho via a federal highway such as Interstate 84, 15, and 90, among other avenues." Dkt. 84 at 27. But the Court's analysis overlooks Idaho Code § 18-9003(4)(b), which confirms that the crime must be illegal entry from a foreign country, and the title of the statute which confirms the same. In Idaho, statutes must be construed as a whole. *Verska v. St. Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (citation omitted).

Here, none of Individual Plaintiffs have alleged that they have entered Idaho at the Canadian border or directly from a foreign country by aircraft. *See* Dkt. 47 at ¶¶ 25–29. Thus, Individual Plaintiffs have not met their "burden of alleging specific facts sufficient to" establish standing. *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 821 (9th Cir. 2002).

## B.  Four Individual Plaintiffs Lack Standing to Challenge the Reentry Provision Because They have not Illegally Reentered the United States.

Under the Reentry Provision, an alien is guilty of illegal reentry if he has reentered or attempted to reenter the state of Idaho after he "[h]as been denied admission to or excluded, deported, or removed from the United States; or [h]as departed from the United States while

---

[3] This reading is confirmed by the very title of the Entry Provision: "ILLEGAL ENTRY FROM FOREIGN NATION." *See Nelson v. Evans*, 166 Idaho 815, 821, 464 P.3d 301, 307 (2020) (noting under Idaho law that courts interpreting a statute can look to its title if text is unclear); *see also Planned Parenthood of Idaho, Inc. v. Wasden,* 376 F.3d 908, 925 (9th Cir. 2004) (state principles of statutory interpretation apply) (citation omitted).

an order of exclusion, deportation, or removal is outstanding." Idaho Code §§ 18-9004(a)–(b).
But four of the five Individual Plaintiffs—A.M.R., L.M.C., M.S., and W.G.C.—have not al-
leged that they were denied admission to, excluded or deported from the United States, or that
they left the United States while orders of exclusion, deportation, or removal were outstanding
against them. Dkt. 47 at ¶¶ 25–28. They lack standing to challenge the Reentry Provision.

The Court's prior decision appears to agree that L.M.C. and W.G.C. lack standing. *See*
Dkt. 84 at 39. But the Court seems to suggest that A.M.R. and M.S. have standing even though
they "are unsure of their prior removal status." *Id.* But simply because a plaintiff is "unsure"
if the law applies does not give rise to a claim against Defendants where a plaintiff must allege
both that his conduct is proscribed and that there is a substantial threat of enforcement against
him. *Peace Ranch*, 93 F.4th at 487 (citations omitted). Even "at the pleadings stage, the plaintiff
must allege sufficient facts that, taken as true, demonstrate each element of Article III stand-
ing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (cleaned up). An alle-
gation that one is "unsure" of important facts necessary to establish standing is insufficient.

### C. Individual Plaintiffs Cannot Satisfy the Three-Prong *Driehaus* Test in Their Claims Against Both Challenged Provisions.

#### 1. *No constitutional interest is implicated.*

The first prong of *Driehaus* requires a plaintiff to allege an intention to engage in a
course of conduct arguably affected with a constitutional interest. The Court has suggested
that the Individual Plaintiffs meet the first *Driehaus* prong because they have "alleged a 'con-
stitutional interest' in not being prosecuted under an allegedly federally preempted law." Dkt.
84 at 9. In addition, the Court opined it was sufficient for Individual Plaintiffs to assert that
the Entry Provision "violates the Due Process Clause because it is void for vagueness." *Id.* In

short, the Court appears to hold that simply alleging that a state's law violates the Supremacy Clause or the Due Process Clause is sufficient for the first *Driehaus* prong.

Yet the first *Driehaus* prong is focused on the interaction between the alleged conduct and a constitutional right. *Splonskowski v. White*, 714 F. Supp. 3d 1099, 1104 (D.N.D. 2024) (citing 573 U.S. at 159) ("Under [*Driehaus*], the statute at issue must ostensibly prohibit the exercise of a specific constitutional right."). The Ninth Circuit's recently-published opinion in *Kumar v. Koester*, 131 F.4th 746 (9th Cir. 2025) is instructive. The plaintiffs, practicing Hindus (who were professors), challenged their employer's policy which prohibited discrimination based on ethnicity, including caste. 131 F.4th at 748–50. The plaintiffs alleged that the policy violated due process because it was vague and that the persons subject to the policy lacked notice of what it prohibited. *Id.* at 752. But it wasn't the fact that the plaintiffs alleged that the policy was vague that satisfied the first prong of *Driehaus*. It was the fact that the plaintiffs were "practicing Hindus. Practicing one's religion is a protected First Amendment activity that satisfies the first prong." *Id.* (citing *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59–60 (9th Cir. 2024); *Driehaus* 573 U.S. at 162). The Ninth Circuit reiterated this point for the plaintiffs' Free Exercise Claim. *Kumar,* 131 F.4th at 754 ("As explained above, Appellants satisfied the first *Driehaus* prong because practicing their religion is a constitutionally protected activity.").

As *Kumar* demonstrates, Plaintiffs must allege a course of conduct that is arguably affected with a constitutional interest. At one point, the Court appeared to reference the fact that Plaintiffs want to travel in Idaho and could be stopped by law enforcement, investigated, and arrested under the ICE Act. Dkt. 84 at 8. However, noncitizens, like the Individual Plaintiffs, lack a constitutionally-protected right to travel, *e.g., Kent v. Dulles*, 357 U.S. 116, 125 (1958),

and as the Court elsewhere recognized, the Plaintiffs are not asserting that the Individual Plaintiffs' conduct is protected by the right to travel, Dkt. 84 at 6.

The Court also suggested that "[c]ourts . . . have routinely reviewed plaintiffs' challenge to state prosecutions under the Supremacy Clause." Dkt. 84 at 7 (citing *Kansas v. Garcia*, 589 U.S. 191, 195 (2020)). But the fact that the Supreme Court can exercise certiorari jurisdiction over a state court conviction (i.e., a post-enforcement challenge) is irrelevant to whether Individual Plaintiffs here have alleged an intention to engage in constitutionally-protected conduct, as required by *Driehaus* and *Peace Ranch* for a *pre-enforcement* challenge such as this. Obviously, in a post-enforcement challenge there are different constitutional interests at play than those present in pre-enforcement challenge in which the plaintiff may never actually be prosecuted.

The Court's suggestion that "[t]he Ninth Circuit has previously concluded a plaintiff has standing to challenge a state criminal statute as preempted by federal law under the Supremacy Clause" ignores a key point of the cited case. Dkt. 84 at 7. In *Valle del Sol*, a pastor sued Arizona asking the court to enjoin a statute that criminalized the transportation and harboring of illegal aliens. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1012 (9th Cir. 2013). The pastor "importantly" asserted that she "provides shelter to persons who seek sanctuary in her church." *Id.* at 1015. The court then held, without reference to the Supremacy Clause, that the pastor had standing to challenge the law in a pre-enforcement context. *Id.* (citation omitted). The court stated that "it is not necessary that [the plaintiff] first expose himself to actual arrest or a prosecution to be entitled to challenge [the] statute that he claims deters the exercise of *his constitutional rights*." *Id.* (emphasis added). The clear import, given the court's emphasis on the pastor's assertion related to providing sanctuary at her church, is that the pastor intended

to engage in a course of conduct arguably related to her free exercise rights under the First Amendment. *See id.* As in *Kumar*, clearly it was the pastor's First Amendment rights that were arguably affected by the law. Accordingly, *Valle del Sol* does not stand for the proposition that the Supremacy Clause can serve as a basis for satisfying the first *Driehaus* prong.[4]

This understanding of *Valle del Sol* is reinforced by at least two Supreme Court cases. *First*, in *Driehaus*, the Court cited several cases illustrating when a challenger's course of conduct was arguably affected with a constitutional interest. *Driehaus*, 573 U.S. 149, 158–60. In those cases, the challenger demonstrated that his or her intended course of conduct affected individual constitutional rights, not that the Constitution was implicated by the challenged state law's relationship with federal law. *Id.*; *Steffel v. Thompson*, 415 U.S. 452, 455 (1974) (First and Fourteenth Amendment rights); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 309 (1979) (First Amendment rights); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 388 (1988) (First Amendment rights); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 8 (2010) (First and Fifth Amendment rights).

*Second*, in *Alliance for Hippocratic Medicine*, the Supreme Court clarified that "[a] citizen may not sue based only on an asserted right to have the Government act in accordance with law." 602 U.S. at 381 (cleaned up). And while *Alliance for Hippocratic Medicine* was not a pre-enforcement challenge, its directive that citizens may not sue to force the government to act

---

[4] Neither does *California Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021). *See* Dkt. 84 at 8 (citing *Bonta*). There the Ninth Circuit, in a pre-*Peace Ranch* decision, examined whether there was "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement" and specifically considered the three *Thomas* factors to determine if there was a genuine threat of prosecution—nowhere did the Ninth Circuit examine whether the conduct at issue was affected with a constitutional interest.

in accordance with the law sounds in general standing principles—namely that the plaintiffs must have suffered or must imminently suffer an injury. *See, e.g., Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

Taken together, these cases make clear that if a plaintiff does not plan to engage in a course of conduct arguably affected by a constitutional interest—meaning a constitutional right—then that plaintiff cannot meet the *Driehaus* requirements. Moreover, a plaintiff cannot bring a pre-enforcement challenge when a state law might be preempted, or, to put it differently, to force the state to "act in accordance with law."

### 2. Plaintiffs have not shown an intent to engage in conduct arguably proscribed by the challenged statute or—relatedly—a credible threat of enforcement.

The second prong of *Driehaus* requires that the plaintiffs allege that their course of conduct is arguably proscribed by the statute. The Court suggested that Individual Plaintiffs met this requirement simply because the ICE Act's independent crime requirement—Idaho Code § 18-9004(4), § 18-9003(3)—"is very broad and does not make prosecution of the Individual Plaintiffs any less likely." Dkt. 84 at 10. In particular, the Court referenced that although traffic violations weren't encompassed, crimes such as "causing a public nuisance, driving without privileges, or even littering" are. *Id.* at 11 (citations omitted).

In their Amended Complaint, Plaintiffs have not asserted that they are imminently likely to be investigated or detained for suspected commission of a crime under title 18 or title 37, let alone any of the examples given by the Court. *See* Dkt. 47 at ¶¶ 25–29. Rather, Plaintiffs

merely identify County Prosecutors and speculate that someday these Prosecutors might bring charges. But no County Prosecutor can bring charges or even threaten to enforce the ICE Act because there are no facts alleged in the Amended Complaint that any of the Plaintiffs have been or will be subjected to investigation or detention for an independent crime.

Absent specific allegations of independent criminal activity, it is inappropriate for courts to engage in "speculation and conjecture" or "anticipate whether and when" one will be "charged with [a] crime." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). Rather, courts must "assume that respondents will conduct their activities within the law." *Id*. Plaintiffs' speculation that they might at some point be investigated is not sufficient for standing purposes.

The Court rejected Defendants' argument on this point, relying on the *Valle del Sol* case. Dkt. 84 at 10. The Court stated that the ICE Act's independent crime "requirement is very broad and does not make prosecution of the Individual Plaintiffs any less likely." *Id*. Importantly, however, "standing is determined by the facts that exist at the time the complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001), *as amended* (Aug. 15, 2001). "Post-filing events are not relevant to the standing inquiry." *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1169 (E.D. Cal. 2012).

With those important constitutional requirements in mind, it is clear that none of the Defendants are able to "threaten" to enforce the law against any of the Plaintiffs as of the date the complaint was filed, or even as we sit here today. This is because there are *no* allegations that any of the Plaintiffs have been, are currently being, or are under threat of being detained or investigated for an independent crime. Based on the facts alleged in the Complaint, as determined when the Complaint was filed, it was legally impossible for any of the Defendants to

enforce the law against any of the Plaintiffs, and therefore the Defendants cannot possibly have "threatened" to enforce the law against the Plaintiffs.

The third prong of *Driehaus* asks whether plaintiffs have alleged a credible threat of enforcement of the challenged law. The Court recounted that this suit was brought, and it enjoined the ICE Act, "within hours after it became effective." Dkt. 84 at 12. It then used Defendants' arguments concerning irreparable harm to suggest the generic proposition that Defendants will enforce the law—and considered the fact that "Defendants have had ample opportunity to disavow their intent to enforce the Act." *Id.* But this does not take into account the fact that the Defendants are legally unable to prosecute the Plaintiffs, and legally unable to "threaten" to enforce the act because there are no allegations that the Plaintiffs are being detained or investigated for an independent crime, or are likely to be.

The Court's analysis appears to suggest that simply because a newly-enacted law is on the books and simply because Defendants are elected officials who might generally have the power to prosecute, those facts are sufficient for there to be credible threat of prosecution. But this does not accord with the *Thomas* formulation of examining whether there is a credible threat of prosecution. Plaintiffs have not alleged that any Defendant has done anything at all, let alone anything that would give rise to a threat to enforce the ICE Act. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022). There is only "the mere existence of a proscriptive statute," which does not even apply based on the facts, or more accurately lack of facts, alleged in the Complaint. This is not enough to satisfy either the second or third *Driehaus* prongs. *Id.*

### D. IORC Lacks Associational Standing.

For associational standing, an organization must show three elements, including that

one or more of its members qualify for Article III standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The organization must assert "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

The Court relied on its conclusion that Individual Plaintiffs had standing to also suggest that IORC had standing. Dkt. 84 at 13–14. But as argued above, Individual Plaintiffs lack standing. The IORC has not identified a single member (by pseudonym or otherwise) who has been injured by the ICE Act or is likely to be injured. Dkt. 47 at ¶ 15. IORC generically asserts that its members "would be subject to prosecution under H.B. 83," but never names any such member. *Id.* The Supreme Court has been clear that the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Summers*, 555 U.S. at 498–99.

### E.  The Alliance Lacks Organizational Standing.

"Organizations may have standing to sue on their own behalf for injuries they have sustained." *All. for Hippocratic Med.*, 602 U.S. at 393; *see also id.* at 393–94 (setting forth elements of organizational standing). Standing is not satisfied simply by a litigant's strong interest in the matter or its strong opposition. *Id.* at 394 (cleaned up). Nor would a "setback to the organization's abstract social interests" be enough to establish organizational standing. *Id.*

This Court has already indicated that whether the Alliance has standing is "questionable." Dkt. 84 at 15. If the Alliance's injury is simply an increase in "advocacy" expenses, that is insufficient to confer standing. *Id.* But that is exactly what the Alliance alleges. Dkt. 47 at ¶¶ 17–24. Alliance is a law firm that provides legal advice and representation to non-citizen

clients. *Id.* at ¶¶ 17–20. The Alliance argues that the Entry and Reentry Provisions will increase its cost because its clients will be subject to prosecution and this will increase costs. *Id.* at ¶¶ 21–22. But any increased expenses associated with its clients are based upon Alliance's independent decisions as to which clients it chooses to represent. Neither Defendants nor the challenged provisions govern which clients the Alliance accepts.

### F.  Most of the 13 Original County Prosecutors Lack Any Connection to Plaintiffs.

The Court has not addressed why any of the original 13 County Prosecutor Defendants are proper parties to this suit.[5] Yet Plaintiffs have not pleaded facts to show how at least 10 of these 13 County Prosecutors might cause Plaintiffs' injuries, or how relief ordered against at least 10 of the original 13 Defendant County Prosecutors would redress those injuries.

The second element of standing requires "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). The third element demands that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up). These elements are "flip sides of the same coin." *All. for Hippocratic Med.*, 602 U.S. at 380 (cleaned up).

Individual Plaintiffs are residents of Twin Falls County (A.M.R and J.R.B.M.), Jerome County (L.M.C.), Cassia County (W.G.C.), and the State of Oregon (M.S.). Dkt. 47 at ¶¶ 25–29. There is no substantial threat of enforcement from the Twin Falls, Jerome, and Cassia

---

[5] Prosecuting Attorneys are independent constitutional officers, provided for in Article V, section 18 of the Idaho Constitution. They are elected by voters in their respective counties. Their primary duties are to independently oversee prosecution of crimes committed within the boundaries of their respective counties and to provide legal services to county elected officials officers, and departments. *See* Idaho Code § 31-2604.

Prosecutors, as detailed above, which undercuts any argument of causation. *See Peace Ranch*, 93 F.4th at 490. But even more problematic: Individual Plaintiffs do not allege facts that tie them to any of the other counties for which they have named Prosecutors. *See* Dkt. 47 ¶¶ 25–29.

Consider, for example, Kootenai, Nez Perce, and Shoshone counties in North Idaho. None of the Plaintiffs allege facts demonstrating any reason why Defendants in these northern counties—several hundred miles away from Plaintiffs—would cause Plaintiffs' alleged injuries. Nor are there facts showing how an order running against the Kootenai, Nez Perce, and Shoshone County Prosecutors could redress any alleged injury.[6] The same goes for Prosecutors in East Idaho, in Clark County, Lemhi County, and Oneida County.

None of this differs for Central Idaho County Prosecutors in Ada, Blaine, Canyon, and Payette either. Although IORC says it is based in Ada, Dkt. 47 ¶ 9, it as an organization would not be prosecuted under the Idaho ICE Act, and there are no facts alleged tying the Ada County Prosecutor to persons IORC says are its members or to any of the Individual Plaintiffs. The same is true of the Alliance, who says it is based in Blaine County, Dkt. 47 ¶ 19.

The Plaintiffs have failed to allege facts under the traceability and redressability prongs of standing as to at least 10 County Prosecutors, and all should be dismissed from this case.

## II. The Unclean Hands Doctrine Precludes Plaintiffs from Obtaining Equitable Relief Relating to Their Illegal Conduct.

Plaintiffs seek only equitable relief from this Court, but their complaint on its face shows why they are not entitled to such relief. The unclean hands doctrine "closes the doors

---

[6] While the Amended Complaint adds allegations regarding the Kootenai County Sheriff, he is not a party to this suit, and Plaintiffs have not tied the allegations to the Kootenai County Prosecutor.

of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

This Court found in its preliminary injunction decision that the unclean hands doctrine did not apply because although Plaintiffs are in "violation of federal immigration law, their misconduct does not relate to the equitable relationship between Plaintiffs and Defendants in this case." Dkt. 84 at 17 (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). But this misapplies the unclean hands doctrine. In *Keystone*, the Supreme Court declared that courts should not close their doors when the "plaintiff's misconduct, whatever its character, . . . has no relation to anything involved in the suit." 290 U.S. at 245. The focus is not on the relationship between the plaintiff and the defendant, but whether the plaintiff's misconduct is related to the relief they seek.

Here, Plaintiffs' misconduct is unquestionably related to the relief they seek—they have been and currently are in violation of federal immigration law, and now hope to use this Court as a vehicle to continue their illegal presence by enjoining the challenged provisions. *Nat'l Coal. of Latino Clergy, Inc. v. Henry*, No. 07-CV-613-JHP, 2007 WL 4390650 (N.D. Okla. Dec. 12, 2007). The Court should apply the unclean hands doctrine.

The Court suggested *Valle del Sol* involved plaintiffs who were in violation of federal law. Dkt. 84 at 17. But that is not so. *Valle del Sol* involved a pastor and a church who challenged an Arizona law because the law infringed on their Free Exercise rights. 732 F.3d at 1015 (the challenged law impacted the pastor's ability to provide shelter to persons who sought sanctuary in her church). This case does not undermine Defendants' unclean hands argument.

### III. Plaintiffs' Claims Fail Because They Lack a Cognizable Legal Theory.

Defendants have fully briefed in their opposition to Plaintiffs' motion for a preliminary injunction why Plaintiffs' legal theories are deficient as a matter of law. *See* Dkt. 36 at 11–17. They incorporate those arguments here, summarizing and clarifying them as follows.

### A.   The Challenged Provisions are not Preempted by Federal Law.

Plaintiffs first claim that the challenged provisions are preempted, both as a matter of field preemption and conflict preemption. The Court found that the challenged provisions were both field and conflict preempted. But this conclusion is misplaced.

**Field preemption.** Field preemption occurs when Congress takes exclusive control over a particular issue. *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1032 (9th Cir. 2024). The Supreme Court and the Ninth Circuit have only held that two sub-fields of immigration are field preempted: "alien registration," *Arizona v. United States*, 567 U.S. 387, 401 (2012), and "alien harboring," *Valle del Sol Inc.*, 732 F.3d at 1026. Thus, the remainder of immigration is not field preempted. *See Ariz. Dream Act Coal.*, 855 F.3d at 972. Neither of the challenged provisions regulate alien registration or harboring, so they are not field preempted.

**Conflict preemption.** Conflict preemption exists only where it is "impossib[le]" to comply with both state and federal law, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (cleaned up). Specific to immigration, there is no conflict preemption where "state regulations . . . mirror federal objectives and incorporate federal immigration classifications." *Ariz. Dream Act Coal.*, 855 F.3d at 972 (citing *Plyler v. Doe*, 457 U.S. 202, 225–26 (1982)).

The challenged provisions do not stand as an obstacle to federal objectives; rather, they

mirror and reinforce federal objectives by criminalizing the same conduct federal law already proscribes. Importantly, unlike the challenged laws in other cases from across the country, the ICE Act does not authorize its judges to order the removal of an alien or require the alien to depart Idaho. *See United States v. Iowa*, 126 F.4th 1334, 1340–41 (8th Cir. 2025), *United States v. Texas*, 97 F.4th 268, 294 (5th Cir. 2024), *United States v. Oklahoma*, 739 F. Supp. 3d 985, 994–95 (W.D. Okla. 2024).

The Court found that because the challenged provisions had the same aim as federal law, and because they impose "additional state law penalties for conduct Congress has already proscribed," they were preempted. Dkt. 84 at 23. But if that were the case, a host of state criminal laws would be preempted. This would include crimes like state RICO laws because they ultimately have the same aim as their federal counterparts—but those laws are clearly not preempted. *Compare* 18 U.S.C. §§ 1961–1968, *with* Idaho Code § 18-7803; *cf. Merchs. Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1492 (9th Cir. 1995) ("state and federal laws proscribing identical conduct do not conflict with or displace each other"). Similarly, under the Court's reasoning, every states' human tracking law would be unconstitutional as being preempted by the federal Victim of Trafficking and Violence Protection Act of 2000. After all, both federal and state human trafficking laws are aimed at combating trafficking in persons by punishing human traffickers. *Compare* Victims of Trafficking and Violence Protection Act of 2000, Public Law 106-386 *with* Idaho Code § 18-8601 *et. seq.*

The Court also suggests that the challenged provisions are preempted because they stand as "a serious obstacle to accomplishing and executing Congress' objective in granting broad discretion to federal officials in matters of immigration." Dkt. 84 at 24. But the

challenged provisions do not strip federal officials of discretion. Unlike other states' statutes regulating entry and reentry, Idaho does not provide its law enforcement agents with deportation authority, nor does it empower judges to enter orders of deportation. The discretion for federal officials to determine whether to deport aliens thus remains wholly intact.

### B.  The Challenged Provisions do not Implicate the Dormant Commerce Clause.

Plaintiffs' second challenge raises the dormant Commerce Clause, which the Court has yet to address. *See* Dkt. 84. "[T]he dormant Commerce Clause's fundamental objective [is] preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997). It prevents laws that afford "differential treatment [to] in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338–39 (2007) (citations omitted).

Unlike the challenged provision in *Edwards v. California*, 314 U.S. 160, 170–171 (1941), the challenged provisions have nothing to do with the economic protectionism that the dormant Commerce Clause seeks to prohibit. They do not differentiate between those living in Idaho and those who do not, and there is no preferential treatment for Idaho residents. The challenged provisions have nothing to do with economic activity *at all*—they are about unlawful immigration. States are free to exercise their police powers despite potential consequences for foreign affairs, *Medellin v. Texas*, 552 U.S. 491, 497–98 (2008), and regulating the presence of unlawful individuals "is not a regulation of commerce," but an exercise of "police [powers] . . . which rightfully belonged to the states." *Mayor of New York v. Miln*, 36 U.S. 102, 132 (1837).

Besides, even if the challenged provisions did regulate economic activities, they "appl[y]

only to the movement-*cum*-commerce that Congress has affirmatively prohibited." *United Statesv. Texas*, 97 F.4th at 332(Oldham, J., dissenting). The dormant Commerce Clause is predicated on the idea that the federal government, not states, should regulate interstate commerce so "there is no basis for concluding that the dormant Foreign Commerce Clause applies to commerce that violates federal law." *Id.*

### C.  Plaintiffs Cannot Meet Their Burden on the Facial Vagueness Claim.

Plaintiffs' facial vagueness claim fails on the merits as well. They must show that the Entry Provision is vague in all its applications. *Valle del Sol*, 732 F.3d at 1020 (citation omitted). A statute is facially vague when "no standard of conduct is specified at all." *Id.* (cleaned up).

As discussed above, the Court's criticism of the Defendants' interpretation failed to account for both the title of the statute and another provision of Idaho Code § 18-9003, provision (4)(b). Because an alien does not violate 8 U.S.C. § 1325(a) by simply entering Idaho from another state, he also does not violate the Entry Provision. The Idaho Supreme Court has said that "*any* doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *State v. Pizzuto*, 171 Idaho 100, 105, 518 P.3d 796, 801 (2022) (emphasis added). In this case, that means this Court should apply the interpretation provided by Defendants because it saves the statute from constitutional infirmities.

Even taking the Court's interpretation as true, there are a core of circumstances identified by the statute—illegal entry from Canada or another foreign nation into Idaho—where the statute is not impermissibly vague. Plaintiffs cannot meet the facial vagueness standard.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

DATED: May 6, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *James E. M. Craig*
JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense

*Attorney for Defendants Attorney General Raúl Labrador, Ada County Prosecutor Jan Bennetts, Blaine County Prosecutor Matt Fredback, Canyon County Prosecutor Chris Boyd, Cassia County Prosecutor McCord Larsen, Clark County Prosecutor Janna Birch, Jerome County Prosecutor Sam Beus, Kootenai County Prosecutor Stanley Mortensen, Nez Perce County Prosecutor Justin Coleman, Payette County Prosecutor Mike Duke, Shoshone County Prosecutor Ban Allen, Twin Falls County Prosecutor Grant Loebs, Oneida County Prosecutor Ethan Rawlings and Lemhi County Prosecutor Chace Slavin*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY THAT on May 6, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Cody Wofsy* | Spencer Amdur* |
| cwofsy@aclu.com | samdur@aclu.org |
| | |
| Paul Carlos Southwick | Hannah Steinberg* |
| psouthwick@acluidaho.org | hsteinberg@aclu.org |
| | |
| Emily Myrei Croston | Oscar Sarabia Roman* |
| ecroston@acluidaho.org | osarabia@aclu.org |
| | |
| Grace Choi* | Omar Jadwat* |
| gchoi@aclu.org | ojadwat@aclu.org |
| | |
| *Attorneys for Plaintiffs* | *\* pro hac vice* |

/s/ *James E. M. Craig*
JAMES E. M. CRAIG