Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Hannah Steinberg*
Cody Wofsy*
Spencer Amdur*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
hsteinberg@aclu.org
cwofsy@aclu.org
samdur@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

*Admitted pro hac vice*

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ORGANIZATION OF RESOURCE COUNCILS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00178-AKB <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................ 1

    I. The Court correctly concluded that Plaintiffs have standing. ..................................................... 1

    II. The Court should again reject Defendants' unclean hands argument. ..................................... 7

    III. Plaintiffs have stated valid claims. ........................................................................................ 7

CONCLUSION ............................................................................................................................. 9

Defendants' motions to dismiss, Dkts. 86-1 ("Mot."), 90-1 ("2nd Mot."),[1] recycle arguments that were already thoroughly rejected by this Court in its preliminary injunction order. Dkt. 84 ("PI Order"). But this motion is judged on an even stricter standard. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiffs must merely "state a claim to relief that is plausible on its face"). This Court should again reject Defendants' arguments.

## ARGUMENT

**I.     The Court correctly concluded that Plaintiffs have standing.**

As they did in their opposition to Plaintiffs' motion for preliminary injunction, Defendants focus much of their briefing on standing. But the Court correctly concluded that Individual Plaintiffs, who are threatened with prosecution under H.B. 83's illegal entry and reentry crimes, have standing to challenge those crimes under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), and that Idaho Organization of Resource Councils (IORC), whose members are similarly threatened, has standing for the same reasons. PI Order 4-16.

Defendants assert that Individual Plaintiffs lack a constitutional interest because the conduct at issue must involve exercising a constitutional right. Mot. 6-10. But in a thorough analysis, including of several of Defendants' cited cases, PI Order 6, this Court explained that courts, including the Ninth Circuit, have routinely allowed plaintiffs faced with prosecution under a preempted state law to bring challenges like this one. PI Order 7-8 (citing cases); *see*

---

[1] Defendants have filed three motions to dismiss, two of which are currently pending. Following the filing of Defendants' first motion to dismiss, Plaintiffs amended their complaint to add the remaining county prosecutors, mooting that motion to dismiss. The original Defendants—the Attorney General and 13 county prosecutors—then filed a motion to dismiss on May 6. Dkt. 86. On May 14, almost all of the new Defendants—the additional county prosecutors—filed their own motion to dismiss. Dkt. 90. Because the two pending motions to dismiss make many of the same arguments, this opposition addresses both motions to dismiss together. For ease of reference, this opposition uses the term "Defendants" interchangeably to refer to the original Defendants and the new Defendants.

1

*Valle del Sol v. Whiting*, 732 F.3d 1006, 1017 (9th Cir. 2013) (holding that plaintiff facing prosecution under preempted state law had standing to challenge it).

Defendants assert that the Ninth Circuit reviewed the challenge in *Valle del Sol* because it was brought by a pastor who was asserting her free exercise rights. Mot. 8-9.[2] But the Ninth Circuit's review in *Valle del Sol* hinged on no such thing—the Ninth Circuit instead reviewed the preemption challenge because the pastor "ha[d] established a credible threat of prosecution under this statute, which she challenges on constitutional grounds." 732 F.3d at 1015. And in any event, the Ninth Circuit has routinely reviewed pre-enforcement preemption challenges. *See, e.g.*, *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (reviewing challenge to preempted state law). Like the laws involved in these cases, H.B. 83 essentially criminalizes undocumented people simply going about their daily lives—and as previously explained, they have a constitutional interest in doing so free from a law that is preempted and unconstitutionally vague. *See* PI Order 8; *see also Murphy v. NCAA*, 584 U.S. 453, 479 (2018) (explaining that the Supremacy Clause confers a "right to be free from" preempted state legislation).[3]

Defendants additionally argue that Individual Plaintiffs' intended future conduct is not arguably proscribed by H.B. 83, but none of their arguments preclude standing here. First, Defendants rely again on the law's independent crime requirement. Mot. 11-12; 2nd Mot. 6-8.

---

[2] Contrary to Defendants' arguments, Mot. 9, *Susan B. Anthony* cited First Amendment case law because that case involved a First Amendment challenge. Nor did *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), overrule Ninth Circuit precedents finding pre-enforcement standing in preemption and vagueness cases.

[3] *Kumar v. Koester*, 131 F.4th 746 (9th Cir. 2025) cited by Defendants, Mot. 7-9, is not to the contrary. Notably, the plaintiffs brought Free Exercise and Establishment Clause claims in addition to a vagueness claim, 131 F.4th at 751, so the Ninth Circuit naturally relied on the plaintiffs' free exercise rights in finding a constitutional interest. Indeed, *Kumar* never holds that the interests asserted by Plaintiffs here would be insufficient for standing. And as explained above, the Ninth Circuit has routinely reviewed pre-enforcement preemption and vagueness challenges.

But as this Court explained in rejecting Defendants' argument, PI Order 10-11, *Valle del Sol* held that an independent crime requirement did not defeat standing, 732 F.3d at 1016. Defendants contend that *Valle del Sol* is distinguishable because the Ninth Circuit also held the independent crime clause to be unconstitutionally vague. 2nd Mot. 7-8. But the Ninth Circuit's analysis of the independent crime clause's breadth did not rely on the fact that the court also found it vague. *See Valle del Sol*, 732 F.3d at 1016 ("assuming the statute includes a predicate criminal offense requirement" and concluding that standing still existed because "the breadth of the supposed predicate . . . defeats any claim that the provision narrows the scope of the law sufficiently to deprive [the plaintiff] of standing").

Additionally, as the Court explained, PI Order 10-11, and contrary to Defendants' argument, 2nd Mot. 7-8, H.B. 83's independent crime requirement is even broader than the independent crime clause involved in *Valle del Sol* because the noncitizen[4] need not have committed a crime—the noncitizen only needs to be investigated for a crime. Though Defendants assert that Titles 18 and 37 of the Idaho Code do not cover every federal or state crime, 2nd Mot. 7-8, Title 18 is the Idaho Code's main section on "Crimes and Punishments" and includes a wide-ranging list of crimes that could be as minor and ubiquitous as public nuisance, littering, or driving without privileges. *See* PI Order 11 (citing I.C. §§ 18-3906; 18-5901, 18-8001). Nor do Defendants dispute that a visual inspection or series of questions could constitute investigation. In short, this supposed limitation on arrest is no limitation at all.

Second, Defendants argue that the illegal entry crime does not criminalize entries between states. Mot. 4-5; 2nd Mot. 4. In support of this argument, Defendants specifically

---

[4] Plaintiffs use the term "noncitizens" to describe the population affected by these provisions despite the fact that the term includes noncitizen nationals who are not affected by the law, because that population is incredibly small and virtually nonexistent in Idaho. *See* Dkt. 42 at 7-8.

3

emphasize the statutory header and the affirmative defense for conduct that does not violate 1325. *Id.* But this Court concluded in a thorough analysis that Defendants' argument is at odds with the plain language of the statute, which specifically refers to entry into "this state." *See* PI Order 27-28 (rejecting Defendants' contention as "inconsistent with the statute's language"). The Court's conclusion is underscored by the fact that H.B. 83 originally prohibited entry "directly from a foreign nation," but the Idaho legislature removed this language. *See* Dkt. 3-1 at 14-15.

Though Defendants emphasize the header, the statutory header cannot override the plain text of the crime. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 536–37 (2021) ("A title or heading should never be allowed to override the plain words of a text."); *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1105 (9th Cir. 2024) ("While the title of a statute may help clarify an ambiguous word or phrase, it cannot limit the plain meaning of the text.") (internal quotation marks omitted). Nor can an affirmative defense defeat standing, because it does not affect the definition of the substantive crime or obviate police's authority to conduct arrests, but is instead relevant only at the prosecution stage. *See United States v. Davenport*, 519 F.3d 940, 945 (9th Cir. 2008) (discussing difference between a crime's elements and an affirmative defense). And, critically, the standard for pre-enforcement standing requires only that the conduct be "*arguably* proscribed" by the statute. *See Susan B. Anthony List*, 573 U.S. at 162 (emphasis added). Thus, Defendants' efforts to rewrite the statute cannot defeat standing.[5]

Third, Defendants argue that four of the Individual Plaintiffs lack standing to challenge the reentry crime, Mot. 5-6. However, only one plaintiff is required to have standing, *see*

---

[5] Defendants cite *Idaho Federation of Teachers v. Labrador*, No. 23-cv-00353-DCN, 2024 WL 3276835 (D. Idaho July 2, 2024), 2nd Mot. 5, but that case is clearly distinguishable because the Attorney General had issued an opinion and had explained that "the specific conduct Plaintiffs seek to engage in does not fall within the [statute] and will not, therefore, be prosecuted." *Id.* at *9.

4

*Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), and Defendants never dispute J.R.B.M.'s standing to challenge the reentry crime. Additionally, A.M.R. and M.S. also have standing because they can show the requisite threat of future enforcement given their prior immigration history. *See* Dkt. 47 ¶ 25 (discussing A.M.R.'s reentry into the U.S.); *id.* ¶ 27 (similar, as to M.S.); *see also Susan B. Anthony List*, 573 U.S. at 162 (standing requires only that conduct be "*arguably* proscribed" by the statute) (emphasis added).

Defendants also argue that Individual Plaintiffs cannot show a threat of enforcement, Mot. 12, 2nd Mot. 6-7, but the Court correctly concluded the opposite. PI Order 11-12. Contrary to Defendants' argument, Mot. 12, the Court relied not only on the fact that the law was quickly enjoined and could not be enforced, but also on the fact that Defendants have refused to disavow enforcement of the challenged crimes, and that Defendants' briefing states that they intend to enforce these crimes, PI Order 11-12. The Ninth Circuit has recognized that "[i]n challenging a new law . . . either a 'general warning of enforcement' or a 'failure to disavow enforcement' is sufficient to establish a credible threat of prosecution. *Matsumoto v. Labrador*, 122 F.4th 787, 797 (9th Cir. 2024); *see also Valle del Sol*, 732 F.3d at 1015 n.5 ("[W]e have never held that a specific threat is necessary to demonstrate standing.")

As in their preliminary injunction opposition, Defendants' only arguments against IORC's associational standing focus on its members, repeating the challenges to Individual Plaintiffs' standing, Mot. 12-13, but for the reasons explained above, Individual Plaintiffs have standing. Thus, IORC has standing as well.

Defendants also attack the Alliance's standing. Mot. 13-14. Though the Court need not reach the Alliance's standing, *Leonard*, 12 F.3d at 888, the Alliance has organizational standing under *Alliance for Hippocratic Medicine*. Unlike the group at issue in that case, the Alliance is

5

not incurring "advocacy" expenses to oppose H.B. 83—rather, it will have to spend more and divert resources in order to do the work it is already doing, including representing its existing clients, who will be subject to arrest, detention, and prosecution under H.B. 83. Dkt. 47 ¶¶ 23-24. Specifically, it will be more costly and time-consuming to reach the Alliance's existing clients, extremely difficult to secure evidence that can make or break the clients' case, and very challenging to communicate with clients. *Id.* These injuries to the Alliance's "core business activities" are sufficient under *Alliance for Hippocratic Medicine*. 602 U.S. at 395 (an organization has standing where defendant's actions "directly affected and interfered with [the organization's] core business activities"); *see* PI Order at 15 ("If the Alliance's anticipated expenses due to the Act fall under 'business activities,' these allegations may be enough to establish organizational standing.").

Defendants also argue that the County Prosecutors are not proper parties to this suit because, for some of them, no Individual Plaintiff resides in their county. Mot. 14-15; 2nd Mot. 9-10. But this Court granted provisional class certification, allowing Plaintiffs to seek relief on behalf of a statewide class, including individuals who reside in their counties. PI Order 31-39; *see also Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring). Additionally, Plaintiffs need not predict the precise county of future arrest. IORC has members scattered across the state and in nearby states. Dkt. 47 ¶ 10. And each class member and IORC member—and Individual Plaintiffs themselves—can be arrested in any county that they pass through. Accordingly, contrary to Defendants' arguments, 2nd Mot. 10, this case is not comparable to *Seyb v. Members of Idaho Board of Medicine*, No. 24-cv-00244, 2025 WL 963957 (D. Idaho Mar. 31, 2025), which involved a single physician-plaintiff whose regulated activities were confined to the county he practiced in. Here, by contrast, the plaintiff class is spread throughout

the state and may be subject to prosecution in any county they travel through. Thus, as the Court held, Plaintiffs meet the threshold for standing.

**II.     The Court should again reject Defendants' unclean hands argument.**

Defendants renew their unclean hands argument, contending that Individual Plaintiffs may not get relief against a preempted state law because of their violations of federal immigration law. Mot. 15-16. But even assuming that these violations of federal immigration law constitute the requisite unconscionable act—which they do not, *see* Dkt. 40 at 7—the Court correctly concluded that Defendants have not shown that any of the federal immigration violations relates whatsoever to the equitable relationship between Plaintiffs and Defendants for the purposes of this lawsuit—a challenge to the validity of a state law. *See* PI Order 17.[6] Additionally, as the Court explained, the unclean hands doctrine should not be enforced where, as here, to do so would frustrate a substantial public interest. *Id.* at 18 (citing *E.E.O.C. v. Recruit USA, Inc.*, 939 F.2d 746, 753 (1991)). Thus, the Court should again reject Defendants' unclean hands argument.

**III.    Plaintiffs have stated valid claims.**

Defendants argue that Plaintiffs have not stated claims under Rule 12(b)(6), but that rule requires merely that a plaintiff state a plausible claim. *See, e.g.*, *Twombly*, 550 U.S. at 570. The Court already concluded that Plaintiffs have a likelihood of success on their preemption and vagueness claims, so *a fortiori* Plaintiffs have stated valid claims. Indeed, Defendants fail to

---

[6] Defendants argue that the Court misapplied the unclean hands doctrine, Mot. 17, but the Court correctly held that the unclean hands doctrine applies "only for such violations . . . as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933). For the reasons explained above and in the Court's order, PI Order 17-18, Plaintiffs' violations of *federal* immigration law have nothing to do with their relationship with *state* officials, or their claims that these *state* immigration crimes are preempted.

7

even address the unanimous agreement of courts to have considered laws like this. *See* PI Order 23-24 (citing cases invalidating similar laws in Texas, Iowa, and Oklahoma); *see also Fla. Immigrant Coal. v. Uthmeier*, No. 25-21524, 2025 WL 1423357, at *7-11 (S.D. Fla. Apr. 29, 2025).[7]

Defendants' arguments to the contrary lack merit. First, as to preemption, the Court correctly concluded that Plaintiffs have a likelihood of success on the merits of this claim. PI Order 19-26. Contrary to Defendants' argument, Mot. 17, the Ninth Circuit has held preempted the field of "entry, movement, and residence" of noncitizens, *Valle del Sol*, 732 F.3d at 1026, which is exactly the field implicated by these entry and reentry crimes. And, in arguing that these crimes are not conflict preempted, Defendants cite case law and examples from traditional areas of state concern, Mot. 18, but those do not apply where, as here, the State is directly regulating immigration. *See* PI Order 24 (discussing this distinction).

Second, Plaintiffs have stated a valid Commerce Clause claim. Although Defendants zero in on laws that are prohibited under the Commerce Clause because they afford differential treatment to a state's residents and nonresidents, Mot. 19-20, such laws are not the only types of laws that discriminate against commerce. The Commerce Clause also prohibits a law which "overtly blocks the flow of interstate commerce at a State's borders" and is an "attempt by one State to isolate itself from a problem common to many [states] by erecting a barrier against the movement of interstate trade." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 628 (1978). That is exactly what H.B. 83 does, by prohibiting entry into the state by certain persons.

---

[7] While Defendants point out that some of the laws in other states included removal provisions, Mot. 17-18, such a provision is not necessary for a preemption holding. Indeed, Florida's similar law, which was also held preempted, does not include a removal provision. *Fla. Immigrant Coal.*, 2025 WL 1423357, at *1.  The law that the Ninth Circuit held preempted in *Valle del Sol*, 732 F.3d at 1013, and that the Supreme Court held preempted in *Arizona v. United States*, 567 U.S. 387, 393-94 (2012), also did not include a removal provision.

Defendants additionally contest that H.B. 83 has nothing to do with commerce, Mot. 19, but the Supreme Court has concluded that "the federal commerce power surely encompasses the movement in interstate commerce of persons as well as commodities." *See United States v. Guest*, 383 U.S. 745, 758–59 (1966). Finally, while Defendants rely on the *dissent* in *United States v. Texas*, Mot. 19-20, to argue that the conduct regulated by H.B. 83 also violates federal law, H.B. 83 prohibits movement between states, which is not a federal crime.

Finally, as to Plaintiffs' vagueness claim, the Court correctly concluded that Plaintiffs have a likelihood of success on the merits of this claim. PI Order 27-28. Indeed, the statutory title and affirmative defense that Defendants point to, Mot. 4-5, 2nd Mot. 4, only highlight the conflict with the plain text of the entry crime and the resultant confusing nature of the entry crime. Thus, Plaintiffs have stated valid claims.

## CONCLUSION

This Court should deny Defendants' motions to dismiss.

Dated: May 27, 2025

Paul Carlos Southwick (ISB No. 12439)
Emily Myrei Croston (ISB No. 12389)
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
Tel: (208) 344-9750
psouthwick@acluidaho.org
ecroston@acluidaho.org

Respectfully submitted,

/s/ Hannah Steinberg
Hannah Steinberg*
Cody Wofsy*
Spencer Amdur*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
425 California Street, Suite 700
San Francisco, CA 94104
T: (415) 343-0770
hsteinberg@aclu.org
cwofsy@aclu.org
samdur@aclu.org
osarabia@aclu.org

Omar Jadwat*
Grace Choi*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org
gchoi@aclu.org

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system. A true and correct copy of this document has been served via the Court's CM/ECF system on all counsel of record.

*/s/ Hannah Steinberg*
Hannah Steinberg