UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO ORGANIZATION OF RESOURCE COUNCILS; THE ALLIANCE OF IDAHO; A.M.R.; L.M.C.; M.S.; W.G.C.; and J.R.B.M.,<br><br>      Plaintiffs,<br><br>v.<br><br>RAUL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al.,<br><br>      Defendants. | Case No. 1:25-cv-00178-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending are four motions including Plaintiffs A.M.R., L.M.C., M.S., W.G.C., and J.R.B.M.'s Motion to Proceed in Pseudonym (Dkt. 5); Defendants' Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) (Dkt. 44); Certain Defendants' Motion to Dismiss Complaint Under Rule 12(b)(1) and 12(b)(6) (Dkt. 86); and Defendants' Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) (Dkt. 90). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

## BACKGROUND

On March 27, 2025, Idaho's Immigration Cooperation and Enforcement Act (the "ICE Act" or the "Act"), Idaho Code §§ 18-9001 – 9013, went into effect. The Act creates two new criminal

offenses at issue here: "illegal entry from foreign nation" ("Illegal Entry") and "illegal reentry by certain aliens" ("Illegal Reentry") (collectively "the challenged offenses"). I.C. §§ 18-9003, 18-9004. The Act's Statement of Purpose provides that the Act "fulfills Idaho's commitment to support the Trump administration in the identification, detainment, and deportation of dangerous illegal aliens found in Idaho." House Bill 83 "Statement of Purpose." The Act applies to "aliens" as defined by 8 U.S.C. § 1101, which provides an alien is any person who is "not a citizen or national of the United States."[1] I.C. § 18-9002(1); 8 U.S.C. § 1101(a)(3).

Under the Act, an alien commits the offense of Illegal Entry if the alien "enters or attempts to enter this state at any location other than a lawful port of entry or through another manner of lawful entry." I.C. § 18-9003(1). Meanwhile, an alien commits a violation of Illegal Reentry if the alien "enters, attempts to enter, or is at any time found in this state after the person: (a) [h]as been denied admission to or excluded, deported, or removed from the United States; or (b) [h]as departed from the United States while an order of exclusion, deportation, or removal is outstanding." I.C. § 18-9004(1).

The enforcement of both Illegal Entry and Illegal Reentry is limited by an independent crime requirement. Namely, law enforcement may only enforce a violation of either of the challenged offenses "when a person is detained or investigated for suspected commission of an independent crime under title 18, Idaho Code, excluding this chapter, or under chapter 27, title 37, Idaho Code." I.C. §§ 18-9003(3); 18-9004(4). Title 18, referred to in the independent crime requirement, contains eighty-nine different chapters covering a wide range of criminal offenses including, for example, crimes involving violence, theft, public order, and sexual offenses. Chapter

---

[1]    Because the ICE Act refers to "aliens" and relies on the federal definition of that term, the Court likewise uses the term "alien" in its decision to avoid confusion.

27, Title 37 contains the Uniform Controlled Substances Act and, among other things, prohibits the possession, delivery, and manufacture of controlled substances.

Immediately upon the Act becoming effective, Plaintiffs filed a putative class action complaint. Plaintiffs include the Idaho Organization of Resource Councils ("IORC"), an organization whose members include alien, seasonal migrant workers who travel between Idaho and other states; the Alliance of Idaho ("Alliance"), an organization which provides legal services, including to clients who it alleges would be subject to prosecution under the Act; and five aliens, A.M.R., L.M.C., M.S., W.G.C., and J.R.B.M. (collectively the "Individual Plaintiffs"), who travel between Idaho and other states. Plaintiffs allege three claims for relief, including that the challenged offenses are (1) preempted by federal law under the Supremacy Clause; (2) violate the Commerce Clause; and (3) violate the Due Process Clause (Dkt. 1).

With their complaint, Plaintiffs also filed an emergency motion for a temporary restraining order ("TRO"), for provisional class certification, and for a preliminary injunction to preclude the Act's enforcement (Dkts. 1-3). At the same time, they moved for class certification and to proceed anonymously (Dkts. 4, 5). Ultimately, the Court granted Plaintiffs' motion for a preliminary injunction enjoining the enforcement of §§ 18-9003 and 18-9004 and provisionally certifying two classes, including the Entry Class and the Reentry Class (Dkt. 84). In its preliminary injunction decision, the Court ruled that, among other things, the Individual Plaintiffs and IORC have standing, although Alliance's standing is questionable (*id.* at 4-16); the doctrine of unclean hands does not bar Plaintiffs' claims (*id.* at 17-18); and Plaintiffs are likely to succeed on the merits of their preemption and due process claims (*id.* 19-28).

Originally, Plaintiffs asserted their claims against Defendant Raul Labrador, Idaho's Attorney General, and thirteen elected county prosecuting attorneys in Idaho (Dkt. 1). After

Defendants filed their first motion to dismiss (Dkt. 44), Plaintiffs filed an amended complaint asserting their claims against the remaining elected prosecuting attorneys in Idaho (collectively Prosecuting Attorney Defendants) (Dkt. 47; Dkt. 90-1 at 3). Other than adding these defendants and three new paragraphs regarding the Act's legislative history, the allegations and claims in Plaintiffs' amended complaint remain the same as those in their original complaint (*compare* Dkt. 1 *with* Dkt. 47).

After Plaintiffs filed their amended complaint, the original Defendants renewed their motion to dismiss and filed another motion to dismiss on behalf of the newly added Prosecuting Attorney Defendants (Dkts. 86, 90). In support of their motions, Defendants renew many of the same arguments the Court has already addressed in its preliminary injunction decision. Defendants essentially concede this fact (Dkt. 93 at 2 ("Defendants have certainly renewed some of their arguments for preservation purposes."). Meanwhile, Plaintiffs largely rely on the Court's preliminary injunction decision to oppose Defendants' motion. Because the Court addressed many of Defendants' arguments in its preliminary injunction decision, it does not reiterate those rulings to the extent Defendants are simply "renewing" their arguments for "preservation purposes." Rather, the Court incorporates the analysis in its preliminary injunction decision to the extent it is not inconsistent with this decision, and it focuses its analysis on those arguments which are new and not addressed in the preliminary injunction decision.

## ANALYSIS

### A.    Legal Standard

#### 1.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides a defendant may move to dismiss an action for "lack of subject-matter jurisdiction." Courts "have an independent obligation

to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1) because standing is a jurisdictional matter. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing standing and must clearly allege facts demonstrating each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In deciding a Rule 12(b)(1) motion challenging standing, the court must accept all material allegations as true and construe them in the plaintiff's favor. *Chandler v. State Farm Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

### 2. Rule 12(b)(6)

A dismissal pursuant to Rule 12(b)(6) is appropriate where a complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short and plain statement of the claim, showing the plaintiff is entitled to relief and giving the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a claim requires a complaint to have enough factual basis which, if true, states a plausible claim for relief. *Twombly*, 550 U.S. at 556. A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant

has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

## B.    Motions to Dismiss

Defendants have three pending motions to dismiss (Dkts. 44, 86, and 90). Defendants' first motion (Dkt. 44) addresses Plaintiffs' original complaint (Dkt. 1). Defendants acknowledge that Plaintiffs' amended complaint moots this first motion (Dkt. 86-1 at 2). After Plaintiffs filed their amended complaint, Defendants filed a second motion to dismiss on behalf of the original Defendants (*id.*). Defendants' second motion is both substantially identical to their first motion and, also, expressly incorporates the first motion's arguments (*compare* Dkt. 44-1 *with* Dkt. 86-1). Then, Defendants filed a third motion on behalf of the Prosecuting Attorney Defendants newly named in Plaintiffs' amended complaint (Dkt. 90). Because Defendants' arguments in these motions are either duplicative or overlapping, the Court addresses them jointly. To the extent the Court does not address Defendants' renewed arguments, which it previously addressed in its preliminary injunction decision (Dkt. 84), it adopts those rulings here.

### 1.    Individual Plaintiffs' Standing Under *Driehaus*

To establish Article III standing, a plaintiff must show (1) an injury in fact; (2) sufficient causal connection between the injury and the conduct of which he complains; and (3) a likelihood a favorable decision will redress the injury. *Issacson v. Mayes*, 84 F4th 1089, 1095 (9th Cir. 2023). "[A] recurring issue for federal courts is determining when the threat of enforcement creates a sufficient injury for a party to have standing to bring a pre-enforcement challenge to a law." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (citing three-part test for pre-enforcement standing in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). To establish pre-

enforcement standing under *Driehaus*, a plaintiff must show that: (1) he intends "to engage in a course of conduct arguably affected with a constitutional interest"; (2) the challenged statute arguably proscribes the intended future conduct; and (3) the threat of future enforcement is substantial. *Driehaus*, 573 U.S. at 161-64; *see also Thomas v. Anchorage Equal Rights. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (applying principles *Driehaus* outlines).

The Court previously ruled that the Individual Plaintiffs met their burden of establishing standing under the three-prong *Driehaus* test (Dkt. 84 at 5-12). Defendants renew their challenge, arguing again that the Individual Plaintiffs cannot satisfy the *Driehaus* test. In support, Defendants make many of the same arguments they previously raised. (*See* Dkt. 86-1 at 6-12; Dkt. 90-1 at 6-10). As previously noted, to the extent the Court has already addressed Defendants' arguments, it does not address them again here. It does, however, address Defendants' new arguments and additional case law.

### a.    Affected Constitutional Interest

Defendants make two arguments that the Individual Plaintiffs have not identified a "constitutional interest" to satisfy the first prong of the *Driehaus* test. First, Defendants rely on *Kumar v. Koester*, 131 F.4th 746 (9th Cir. 2025), to argue that an alleged violation of the Due Process Clause is not a constitutional interest (Dkt. 86-1 at 8-9). In *Kumar*, two Hindu professors challenged California State University's use of the word "caste" to define race or ethnicity as a protected class. *Id.* at 749-50. The professors alleged the use of this word violated, among other things, the Due Process Clause because it was vague. *Id.* at 748. The Ninth Circuit concluded the professors had satisfied the first *Dreihaus* prong because they alleged an intention to engage in a course of conduct arguably affected with a constitutional interest: namely, they "are practicing

Hindus" and "[p]racticing one's religion is a protected First Amendment activity that satisfies the first prong." *Id.* at 752.

Based on this ruling, Defendants argue that "Plaintiffs must allege a course of conduct that is arguably affected with a constitutional interest" and that they "lack a constitutionally protected right to travel" (Dkt. 86-1 at 8). The Individual Plaintiffs, however, do not rely on a constitutional right to travel in support of their Due Process claim. Rather, they allege that Illegal Entry violates their right under the Fourteenth Amendment's Due Process Clause, which protects against vague criminal penalties (Dkt. 47 at ¶¶ 92-105).

Contrary to Defendants' argument, Plaintiffs' Due Process claim provides a constitutional interest which satisfies the first *Driehaus* prong. The Due Process Clause under the Fourteenth Amendment prohibits a state from "depriving any person of life, liberty, or property without due process of the law," and it protects all persons within the United States, including aliens who are here unlawfully. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). As the Ninth Circuit has ruled, a due process challenge under the "void-for-vagueness" doctrine is a sufficient constitutional interest to establish pre-enforcement standing. *Isaacson*, 84 F.4th at 1098-99 ("A void-for-vagueness challenge is rooted in the Due Process Clause. . . . The district court's suggestion that due process challenges, including vagueness challenges, cannot be reviewed before enforcement . . . is also incorrect. . . . Plaintiffs satisfy the first *Driehaus* prong's requirement."). Accordingly, the Court concludes *Kumar* is inapplicable in this case because it does not address an alleged vague criminal penalty under the Due Process Clause.

Second, Defendants also argue the Court "ignores a key point" in *Valle del Sol v. Whiting*, 732 F.3d 1006, 1012, 1017 (9th Cir. 2013), to conclude that the Individual Plaintiffs have shown a constitutional interest which satisfies the first *Driehaus* prong (Dkt. 86-1 at 10). Specifically,

Defendants argue "*Valle del Sol* does not stand for the proposition that the Supremacy Clause can serve as a basis for satisfying the first *Driehaus* prong" (Dkt. 86-1 at 10). In support, Defendants note that the plaintiff in *Valle del Sol* was a pastor, who "provide[d] shelter to persons who seek sanctuary in her church." 732 F.3d at 1015. Based on this fact, Defendants argue that "the clear import [of *Valle del Sol*] is that the pastor intended to engage in a course of conduct arguably related to her free exercise rights under the First Amendment" (Dkt. 86-1 at 10). Contrary to Defendants' arguments, however, the Ninth Circuit never ruled the pastor's constitutional interest under *Driehaus* was her First Amendment right. Indeed, the Ninth Circuit appears to have excepted the pastor's claims in *Valle del Sol* from a First Amendment analysis. *See* 732 F3.d at 1020 (applying facial vagueness analysis "[o]utside the First Amendment context").

Contrary to Defendants' assertion, courts have routinely reviewed challenges to state criminal laws which allegedly violate the Supremacy Clause. *See, e.g.*, *Kansas v. Garcia*, 589 U.S. 191, 195 (2020) (reviewing appellants' Supremacy Clause challenge against their state prosecution based on preemption by federal immigration laws); *United States v. Texas*, 794 F. Supp. 3d 427, 444 (W.D. Tex. July 21, 2025) ("[B]ecause [plaintiffs] allege that harm results from a statute preempted by federal law and thus violative of the Supremacy Clause, the injury is constitutionally cognizable. That is sufficient to establish injury-in-fact."); *St. Luke's Health System, Ltd., v. Labrador*, 782 F. Supp. 3d 954, 967 (D. Idaho Mar. 20, 2025) (rejecting "the recent suggestion . . . that the statute at issue in a pre-enforcement challenge 'must ostensibly prohibit the exercise of a specific constitutional right'" and concluding that "because [plaintiff's] compliance with [federal law] in these circumstances implicates the Supremacy Clause, that conduct carries a constitutional interest"); *Puente Arizona v. Arpaio*, 76 F. Supp. 3d 833, 850 (D. Ariz. 2015) (finding *Driehaus's* "constitutional interest" requirement is "satisfied when a plaintiff challenges a law on

constitutional grounds," such as the "Supremacy Clause"), *rev'd in part, vacated in part on other grounds*, 821 F.3d 1098 (9th Cir. 2016). Accordingly, the Court rejects Defendants' argument that an alleged violation of the Supremacy Clause does not satisfy the first *Driehaus* prong.

### b. Proscribed Conduct

Defendants also challenge the Individual Plaintiffs' showing under the second *Driehaus* prong, which requires a challenged offense arguably proscribes their conduct. Defendants argue the Individual Plaintiffs do not have standing to challenge Illegal Entry because "none of [them] have alleged that they have entered Idaho at the Canadian border or directly from a foreign country by aircraft." (Dkt. 86-1 at 6). In support, Defendants characterize Illegal Entry as applying in only "two circumstances," i.e., where an alien enters Idaho from Canada or from a foreign country via aircraft but not through a port of entry (*id.* at 5). This characterization of Illegal Entry, however, ignores the statute's plain language, which provides that an alien commits Illegal Entry if he "enters or attempts to enter this state *at any location* other than a lawful port of entry." I.C. § 18-9003(1) (emphasis added). Obviously, "any location" is broader than the Canadian border or an airport. Defendants' strained interpretation of Illegal Entry does not defeat Plaintiffs' standing to challenge Illegal Entry.

### c. Credible Threat of Enforcement

Related to this strained interpretation of Illegal Entry, Defendants also challenge the Individual Plaintiffs' showing under the third *Driehaus* prong, requiring a credible threat of prosecution. In support, Defendants rely on *Idaho Federation of Teachers v. Labrador*, No. 1:23-cv-000353-DCN, 2024 WL 3276835 (D. Idaho July 2, 2024). In that case, the plaintiffs were the university professors and teachers' unions who challenged Idaho's No Public Funds for Abortion Act (NPFAA). *Id.* at *1. The NPFAA provides that no person who receives public funds may use

those funds to promote abortion. *Id.* at *2. The plaintiffs argued that the NPFAA violated their First Amendment right and was unconstitutionally vague. *Id.* After plaintiffs sued, Idaho's Attorney General issued an opinion letter opining that academic speech regarding abortion, even if favorable to abortion, does not fall within the NPFAA and will not be prosecuted. *Id.* Specifically, the opinion letter stated the NPFAA "does not prohibit employees of institutions of higher education from engaging in abortion related speech as part of their academic teaching or scholarship, even if the teaching or scholarship could be viewed as supporting abortion." *Id.* at *10. In other words, the Attorney General disavowed the statute's application in the context of the academic speech for an entire category of individuals, i.e., "employees of institutions of higher education." *Id.*

Defendants argue that "this case is on all fours with *Idaho Federation of Teachers*" because "Defendants have affirmatively declared that Plaintiffs . . . are not subject to prosecution under the ICE Act" (Dkt. 93 at 4). Defendants' argument fails, however. Unlike *Idaho Federation of Teachers*, the Attorney General has not issued a formal opinion letter disavowing the enforcement of the ICE Act against all aliens. Rather, here Defendants have simply offered a strained interpretation of Illegal Entry to undermine the Individual Plaintiffs' standing to challenge the provision. Adopting Defendants' argument that they can disavow a plaintiff's standing to challenge a law would simply and very likely result in piecemeal litigation by other similarly situated aliens who are not named plaintiffs in this case. Accordingly, the Court declines to construe Defendants' interpretation of Illegal Entry as a disavowal of the ICE Act's enforcement.

### d.    Causation

Defendants also argue that the Court should dismiss the Prosecuting Attorney Defendants because the Individual Plaintiffs cannot trace their alleged injuries to these Defendants (Dkt. 86-1

at 15-16; Dkt. 90-1 at 10-11). "To satisfy the causality element for Article III standing, [p]laintiffs must show that the injury is causally linked or 'fairly traceable' to the [defendants'] alleged misconduct." *Wash. Environ. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013). "The line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (Pro, J. concurring). Causation will "not fail simply because it has several links, provided those links are not hypothetical or tenuous and remain plausible." *Wash. Environ. Council*, 732 F.3d at 1141-42.

Defendants argue that the Prosecuting Attorney Defendants "lack any connection" to the Individual Plaintiffs; "there is no substantial threat of enforcement" either from the Prosecuting Attorney Defendants in the counties in which they reside or the other Idaho counties;[2] and for this reason, the Prosecuting Attorney Defendants should be dismissed (Dkt. 86-1 at 16; Dkt. 90-1 at 10). In support, Defendants rely on *Seyb v. Members of Idaho Bd of Med.*, No. 1:24-cv-244-BLW, 2025 WL 963957 (D. Idaho March 31, 2025). In that case, an Idaho physician, who provided medically indicated abortions, challenged Idaho's bans on abortion and named all Idaho's county prosecutors as defendants. *Id.* at *2, 6. Although all county prosecutors had the authority to enforce the abortion bans, it was undisputed that the physician only provided abortions in Ada County and had no intention of providing abortions in any other county. *Id.* at *6. For this reason, the Court stated it was "not convinced that there was a necessary causal link between [the physician's] injury and the other county prosecutors," and it ruled that "the casual link between [the physician's] injury—risk of prosecution—and the [remaining] 43 county prosecutors [was] not sufficiently

---

[2]    The Individual Plaintiffs who reside in Idaho reside in Twin Falls, Jerome, and Cassia Counties (Dkt. 47 at ¶¶ 26, 28-29; Dkt. 86-1 at 15). Defendants' causation challenge does not appear to be related to the Prosecuting Attorney Defendants from these counties (*see, e.g.*, Dkt. 86-1 at 16 (arguing ten Prosecuting Attorney Defendants should be dismissed); Dkt. 90-1 at 10 (arguing thirty-one Prosecuting Attorney Defendants should be dismissed)).

plausible to warrant joining all county prosecutors." *Id.* Accordingly, the Court dismissed all the prosecutors except the Ada County Prosecuting Attorney. *Id.*

*Seyb* is distinguishable from this case. Unlike *Seyb*, where a single physician was acting in Ada County, a Prosecuting Attorney Defendant in any county could conceivably prosecute any Individual Plaintiff who might happen to be traveling in the county. That an Individual Plaintiff may travel outside their county of residence provides a causal link to the other counties in Idaho. Moreover, Defendants admit that the Prosecuting Attorney Defendants' "primary duties are to independently oversee prosecution of crimes committed within the boundaries of their respective counties" (Dkt. 90-1 at 10 n. 3). None of the Prosecuting Attorney Defendants have disavowed the Act or represented that they do not intend to prosecute the challenged offenses. Moreover, the Court has provisionally certified a statewide class (Dkt. 84). Accordingly, the Court concludes that a causal link has been established for purposes of this stage of litigation.

### e.    Individual Plaintiffs' Standing to Challenge Illegal Reentry

Finally, Defendants argue that only one of the five Individual Plaintiffs has standing to challenge Illegal Reentry because four of the Individual Plaintiffs have not alleged that they have illegally reentered the United States (Dkt. 86-1 at 6). Defendants, however, do not dispute that J.R.B.M. has standing to challenge Illegal Reentry; and Plaintiffs implicitly concede L.M.C. and W.G.C. lack standing to challenge Illegal Reentry.

At issue, then, is whether A.M.R. and M.S. have alleged facts adequate to show they could be subject to Illegal Reentry. In support of Plaintiffs' argument that A.M.R. and M.S. have standing to challenge Illegal Reentry, Plaintiffs rely on their amended complaint (Dkt. 92 at 7) (citing Dkt. 47 at ¶¶ 25, 27). Regarding A.M.R., the amended complaint alleges that A.M.R. "signed a document [in 2009] agreeing to be *removed* from the United States" and "entered the United States

again without inspection in 2010" (Dkt. 47 at ¶ 25) (emphasis added). Because A.M.R. clearly alleges she has previously been removed from the United States, she has standing to challenge Illegal Reentry. *See* Idaho Code § 18-9004(a) (criminalizing reentry after removal). Regarding M.S., however, the amended complaint only alleges that M.S. "entered the United States without inspection in March 1992 but left the country in 1998" and her "most recent entry without inspection into the United Sates [sic] was in 2000" (Dkt. 92 at 7) (citing Dkt. 47 at ¶¶ 25, 27). These allegations are insufficient to subject M.S. to Illegal Reentry. Accordingly, the Court finds J.R.B.M. and A.M.R. have standing to challenge Illegal Reentry but M.S., L.M.C., and W.G.C. do not have standing.

### 2.    IORC's Association Standing

Defendants also renew their arguments that IORC lacks association standing (Dkt. 86-1 at 13-14). In support, they argue that the "Individual Plaintiffs lack standing" and that the "IORC never names any member" who would be subject to prosecution for the challenged offenses (*id.* at 14). As this Court previously noted, the IORC has satisfied the test for associational standing (Dkt. 84 at 13) (citing *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (stating test for associational standing). Contrary to Defendants' argument, the Individual Plaintiffs have standing, as discussed above and in the Court's preliminary injunction decision; IORC has alleged Individual Plaintiffs are members (Dkt. 47 at ¶ 16); and the Individual Plaintiffs have each attested they are IORC members (Dkt. 3-4 at ¶ 3; Dkt. 3-5 at ¶ 3; Dkt. 3-6 at ¶ 3; Dkt. 3-7 at ¶ 3; Dkt. 3-8 at ¶ 3). Accordingly, the Court rejects Defendants' renewed argument challenging IORC's associational standing.

### 3.     Alliance's Organizational Standing

At the preliminary injunction stage, the Court deferred resolution of whether Alliance had organizational standing, although it noted Alliance's standing based on the record at that time was "questionable" (Dkt. 84 at 15). The Court noted that an organization may have standing "to sue on [its] own behalf for injuries [it has] sustained." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982)). The organization "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 369. The Ninth Circuit has previously found "organizational standing" when a defendant's behavior has "frustrated [the organization's] mission and caused it to divert resources in response to that frustration of purpose." *Nielsen v. Thornell*, 101 F.4th 1164, 1169-71 (9th Cir. 2024) (explaining "diversion-of-resources" theory of organizational standing), *as amended* (July 8, 2024); *contra Arizona All. for Retired Americans v. Mayes*, 117 F.4th 1165 (9th Cir. 2024) (overruling *Nielsen's* diversion-of-resources theory), *reh'g en banc granted, opinion vacated*, 130 F.4th 1177 (9th Cir. 2025).[3]

This Court has previously acknowledged the nuances of the "diversion-of-resources" theory for organizational standing. *See March for Our Lives Idaho v. McGrane*, 749 F. Supp. 3d 1128, 1138 (D. Idaho 2024) (citing *All. for Hippocratic Med.*, 602 U.S. at 393-95 and noting there is no "categorical rule allowing standing whenever an organization diverts its resources in response to a defendant's actions") (internal quotations omitted). Generally, an "organization's mere desire to act (and in the process spend resources) to oppose a policy cannot confer standing to challenge

---

[3]     An en banc panel of the Ninth Circuit heard oral argument in *Arizona All. for Retired Americans v. Mayes*, Case No. 22-16490, on June 25, 2025, but an en banc opinion has not yet issued. The Ninth Circuit's decision in that case may impact this decision.

[a] policy." *Nielsen*, 101 F.4th at 1170 n.2. Rather, the plaintiff must show a defendant's actions affected and interfered with its "core business activities." *Alliance for Hippocratic Med.*, 602 U.S. at 395.

Alliance's allegations in the amended complaint remain the same as those in the original complaint (*compare* Dkt. 1 at ¶¶ 17-24, 92-94 *with* Dkt. 47 at ¶¶ 17-24, 83-85). Alliance alleges its mission is to "provide[] low-cost immigration legal services" to families in Blaine County, Idaho, and the surrounding communities" (Dkt. 1 at ¶¶ 18-19). Alliance contends the Act would hinder its "ability to fulfill its core mission" by making it more costly to reach clients detained under the Act; require it to hire additional attorneys familiar with state criminal laws; and require it to overhaul existing programs (*id.* at ¶ 22; Dkt. 40 at 6). In other words, Alliance contends the Act makes Alliance's "effective representation impossible" because it "subjects [its] clients to arrest and detention far from the Alliance's offices" (Dkt. 40 at 8).

The Court previously noted that, if Alliance's anticipated expenses due to the Act fall under "business activities," these allegations may be enough to establish organizational standing. *See, e.g.*, *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 664 (9th Cir. 2021) (finding organizations had standing because they diverted resources to help refugee clients counteract new asylum rules). If, however, the expenses are merely "advocacy" expenses incurred to oppose the Act, then the allegations are insufficient to confer organizational standing. *See, e.g.*, *Free Speech Coalition v. Knudsen*, 754 F. Supp. 3d 1037, 1056 (D. Montana 2024) (finding interest group lacked organizational standing because there was "no sense in which [the challenged statute] can be said to directly injure the organization['s] pre-existing core activities, apart from the plaintiffs' response to that [statutory] provision") (internal citations omitted).

Defendants argue Alliance's allegations do not establish standing because "any increased expenses associated with [its] clients are based upon [its] independent decisions as to which clients it chooses to represent" (Dkt. 86-1 at 15). Alliance responds that under the Act "it will be more costly and time-consuming to reach [its] existing clients, extremely difficult to secure evidence that can make or break the clients' case, and very challenging to communicate with clients" and that "these [are] injuries to [its] 'core business activities'" (Dkt. 92 at 8).

The Court agrees that Alliance's allegations appear more akin to business activities than advocacy expenses. Accepting the allegations as true for purposes of Rule 12(b)(6), the Court concludes Alliance has alleged standing. Standing, however, "must be supported at each stage of the litigation in the same manner as any other essential elements of the case, and what suffices at the Rule 12(b)(6) stage may not be sufficient at later stages of the proceedings when the facts are tested." *Syed v. M-I, LLC*, 853 F.3d 492, 499 n.4 (2017) (cleaned up). Anticipated Ninth Circuit authority in *Arizona All. for Retired Americans*, however, may change this analysis going forward.

### 4.    Unclean Hands Doctrine

The Court previously rejected Defendants' argument that the equitable doctrine of unclean hands bars Plaintiffs from asserting their claims (Dkt. 84 at 16-18). Defendants renew this argument based on their continued reliance on *Nat'l Coal. of Latino Clergy, Inc. v. Henry*, No. 07-CV-613-JHP, 2007 WL 4390650, at *1 (N.D. Okla. Dec. 12, 2007) ("*Henry*") (Dkt. 86-1 at 15-17; *see also* Dkt. 90-1 at 11-12). In *Henry*, the district court created "a new, and narrow, prudential limitation on standing," where any "illegal alien, in willful violation of federal immigration law, is without standing to challenge the constitutionality of a state law, when compliance with federal law would absolve the illegal alien's constitutional dilemma." 2007 WL 4390650, at *9. No other court, however, has adopted this new prudential limitation on standing recognized in *Henry*.

Moreover, *Henry* fails to acknowledge that aliens are persons entitled to protection under the Due Process Clause. *See, e.g.*, *Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process by the Fifth and Fourteenth Amendments."). For the reasons explained in its preliminary injunction decision, the Court again rejects Defendants' argument that the unclean hands doctrine bars Plaintiffs' claims.

### 5.    Failure to State a Claim

#### a.    Preemption

Defendants argue Plaintiffs' first claim, asserting that federal law preempts the challenged offenses, fails to state a claim. In support, Defendants argue that the challenged offenses are neither field nor conflict preempted (Dkt. 86-1 at 18-19). In addressing Plaintiffs' motion for a preliminary injunction, the Court concluded that "Plaintiffs have shown they are substantially likely to succeed on the merits of their claim that federal law preempts the challenged offenses of Illegal Entry and Illegal Reentry" (Dkt. 84 at 25). This conclusion foreclosures Defendants' argument that Plaintiffs fail to state a claim under the Supremacy Clause.

#### b.    Dormant Commerce Clause

In their second claim, Plaintiffs alleges that the challenged offenses violate the Commerce Clause because they impermissibly regulate people's entry into Idaho and their movement across state and international borders and, therefore, impose unacceptable burdens on commerce (Dkt. 47 at ¶ 93). Defendant moved to dismiss this claim, arguing that the challenged offenses "do not implicate the dormant commerce clause" (Dkt. 86-1 at 19).

The Constitution provides that Congress may "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. "Although

it is an affirmative grant of power to Congress, the Supreme Court has interpreted the Commerce Clause to impliedly preclude certain state laws that restrain interstate commerce." *Peridot Tree WA, Inc. v. Wash. State Liquor & Cannabis*, Nos. 24-3481, 24-7196, 2026 WL 17170, at *4 (Jan. 2, 2026). "This negative aspect of the Commerce Clause prevents the States from adopting protectionist measures and thus preserves a national market of goods and services." *Id.*

As Plaintiffs note, the Supreme Court has concluded that "the federal commerce power surely encompasses the movement in interstate commerce of persons as well as commodities" (Dkt. 92 at 11) (citing *United States v. Guest*, 383 U.S. 745, 758-59 (1966)). *See also Edwards v. People of State of California*, 314 U.S. 160, 172 (1941) ("[I]t is settled beyond question that the transportation of persons is 'commerce,' within the meaning of that provision."). Regardless, Plaintiffs cite no authority suggesting that the challenged offenses violate the dormant Commerce Clause. While they cite *City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978), that case addresses a state law prohibiting the importation of waste into New Jersey. *Id.* at 618. It does not address a situation like this case.

As the Ninth Circuit has recently noted, courts should use extreme caution "when considering whether to invalidate state laws under the court-inferred dormant Commerce Clause." *Peridot*, 2026 WL 17170, at *5. Absent authority ruling that state regulations of immigration, like the ones at issue here, violate the dormant Commerce Clause, this Court declines to conclude the challenged offenses implicate the dormant Commerce Clause. Accordingly, Plaintiffs' Commerce Clause claim is dismissed for failure to state a claim.

c.    **Vagueness**

Finally, Defendants argue that "Plaintiffs' facial vagueness claim fails on the merits" (Dkt. 86-1 at 21). This argument fails, however, for the reasons discussed in the Court's decision granting Plaintiffs' request for a preliminary injunction (Dkt. 84 at 27).

## C.    Motion to Proceed in Pseudonyms

The Individual Plaintiffs request permission to proceed pseudonymously "because they fear criminal prosecution, social stigma, and retaliation by government and private actors if their identities are revealed (Dkt. 5-1 at 2). Rule 10(a) of the Federal Rules of Civil Procedure provides "the title of the complaint must name all of the parties." Rule 17(a) also provides that "an action must be prosecuted in the name of the real party in interest." "The normal presumption in litigation is that the parties must use their real names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). "This presumption is loosely related to the public's right to open courts and the right of private individuals to confront their accusers." *Id.* (citations omitted).

The Ninth Circuit, however, has identified three situations in which a court may permit a plaintiff to proceed using a pseudonym, including when: (1) identification creates a risk of retaliatory physical or mental harm; (2) anonymity is necessary to preserve privacy in a sensitive and highly personal matter; and (3) disclosure would compel a plaintiff to admit illegal conduct creating a risk of criminal prosecution. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). Further, the Ninth Circuit has ruled that in determining whether to allow a party to proceed anonymously over the opposing party's objection, a court must balance five factors, including: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous

party's fears; (3) the anonymous party's vulnerability to such retaliation; (4) the prejudice to the opposing party; and (5) the public interest. *Kamehameha Sch.*, 596 F.3d at 1042.

Defendants do not oppose Plaintiffs' request to proceed in pseudonym for purposes of the early stages of the litigation (Dkt. 45 at 3). They oppose the request, however, "to the extent [the Individual Plaintiffs] seek to hide their identities from the Court and from Defendants" going forward, arguing they are "entitled to test [the] Individual Plaintiffs' assertions" (*id*). On reply, Plaintiffs simply state that "if the need for limited disclosure to Defendants does arise at a later state of the proceedings, the parties and the Court can determine an appropriate way to handle this issue in a way that protects all parties' interests" (Dkt. 85 at 2).

Here, the Individual Plaintiffs' request to proceed in pseudonym meets at least two of the situations envisioned by the Ninth Circuit: A disclosure of their identities would compel them to admit illegal conduct creating a risk of prosecution, and their identification in the public record may create a risk of harm. For those reasons, the Court will allow the Individual Plaintiffs' identities to remain anonymous for purposes of the public record in this case. To the extent the disclosure of their identities to defense counsel is necessary to proceed in discovery, the Court orders the parties to meet and confer to reach an agreement protecting all the parties' interests.

## ORDER

Based on the foregoing, the Court hereby ORDERS:

1.     Plaintiffs A.M.R., L.M.C., M.S., W.G.C., and J.R.B.M.'s Motion to Proceed in Pseudonym (Dkt. 5) is **GRANTED**.

2.     Defendants' Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) (Dkt. 44); Certain Defendants' Motion to Dismiss Complaint Under Rule 12(b)(1) and 12(b)(6) (Dkt. 86); and Defendants' Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) (Dkt. 90) are **GRANTED**

**IN PART** and **DENIED IN PART**. Specifically, Plaintiffs' Claim Two under the Commerce Clause is **DISMISSED** under Rule 12(b)(6) for failure to state a claim. Defendants' motions to dismiss are **DENIED** in all other respects.

DATED: January 23, 2026

Amanda K. Brailsford
U.S. District Court Judge